**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| IN RE HEARTLAND PAYMENT SYSTEMS, INC. DATA SECURITY BREACH LITIGATION | ) ) ) ) | CIVIL ACTION NO. H-09-MD-02046 |
| ------------------------------------------------- | ) | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) | |

## DEFENDANT HEARTLAND PAYMENT SYSTEMS, INC.'S MOTION TO STAY DISCOVERY DURING THE PENDENCY OF ITS MOTIONS TO DISMISS, AND MEMORANDUM IN SUPPORT THEREOF

The Court holds broad discretion to ensure that discovery proceeds in a just and economical fashion. Pursuant to Fed. R. Civ. P. 26(c), Defendant Heartland Payment Systems, Inc. ("Heartland"), moves respectfully that the Court exercise its discretion to stay discovery during the pendency of its motions to dismiss.

## PRELIMINARY STATEMENT

Under the terms of the Proposed Case Management Order submitted on August 4, 2009, Plaintiffs will file their Master Amended Complaints by September 23, 2009, and Heartland's motions to dismiss will be fully briefed by all parties by December 18, 2009. Prior decisions in the data security breach context demonstrate that Heartland has substantial bases for dismissal of most, and perhaps all, of Plaintiffs' anticipated claims. Accordingly, a stay of discovery is appropriate to save defendant and the Court from the burden of wide-ranging and extremely expensive discovery that may very well prove to be unwarranted, or at the very least will likely become far more streamlined.

The Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* also strongly counsel in favor of a stay. Those cases teach that until Plaintiffs file their

operative complaints and the viability of those complaints is fully tested, Plaintiffs should not have access to discovery to try to conjure up a claim. Accordingly, Plaintiffs should not be afforded access to documents previously produced to government regulators for the purpose of bolstering their pleadings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Heartland is in the business of processing credit and debit card transactions made by consumers, mostly at small retailers and restaurants, that are not large enough to have processing facilities of their own. On January 20, 2009, Heartland announced a criminal attack that resulted in an unauthorized intrusion into its computer processing system, in which third parties apparently gained access to certain transaction information (the "Intrusion"). Heartland's disclosure of the Intrusion triggered a flurry of purported class actions in federal district courts around the country, along with inquiries by regulatory agencies, such as the Federal Trade Commission and the Securities and Exchange Commission. In June of 2009, the Judicial Panel on Multidistrict Litigation (the "JPML") granted Heartland's motion to transfer multiple class actions related to the Intrusion to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. The transferred actions assert claims on behalf of putative classes of financial institutions (the "Financial Institution Cases") and also on behalf of putative classes of consumers (the "Consumer Cases"). As is typical in these data security breach cases, the underlying complaints in the Consumer Cases include, *inter alia*, counts for negligence, breach of contract, and violation of various state consumer protection statutes and other laws, such as data breach notification statutes. Similarly, the underlying complaints in the Financial Institution Cases include, *inter alia*, counts for negligence, negligent misrepresentation, breach of contract, violation of certain state consumer protection statutes, and certain other common-law claims,

-2-

such as unjust enrichment.

On June 25, 2009, the Court set a pretrial status and scheduling conference, which presently is scheduled for August 24, 2009. Heartland conferred with Plaintiffs' counsel, and the parties submitted to the Court a Joint Discovery/Case Management Plan with a Proposed Case Management Order ("Proposed CMO") on August 4, 2009. *See* Docket Entry 14. The Proposed CMO sets forth the parties' proposals on various scheduling and discovery issues, and contemplates that the Court will establish separate litigation tracks, the Financial Institution Track and the Consumer Track, for the two types of cases presently in the MDL.[1] *See* Proposed CMO, § (II)(B).

The Proposed CMO calls for the Consumer and Financial Institution Plaintiffs each to file a Master Amended Complaint by no later than September 23, 2009, with Heartland's motion to dismiss in each Track due by October 23, 2009, and briefing on the motions completed by no later than December 18, 2009. *Id.* §§ (VII)(A), (VII)(C)(1). Under the terms of the Proposed CMO, Plaintiffs' Master Amended Complaints will supersede the previously-filed complaints in "all transferred and subsequently transferred or subsequently consolidated cases." *Id.* § (VII)(A). As outlined in the Proposed CMO, Heartland respectfully submits that it has substantial defenses to Plaintiffs' claims and proposes that a stay of discovery is appropriate during the pendency of its motions to dismiss to conserve the resources of the parties and the Court. *Id.* § (VII)(C)(3).

---

[1] As noted in the Proposed CMO, Heartland has filed a motion with the JPML seeking transfer of a consolidated securities fraud class action related to the Intrusion, *In re Heartland Payment Sys. Inc. Secs. Litig.*, Civ. No.3:09-cv-01043 (D.N.J.), which is supported by counsel for all parties presently in the MDL. Heartland is awaiting a ruling on that motion. The securities action will carry an automatic stay of discovery pending adjudication of Heartland's motion to dismiss, under the Private Securities Litigation Reform Act, *see* 15 U.S.C. § 78u-4(b)(3)(B).

-3-

## ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure allows the Court to stay discovery upon a showing of "good cause" to protect a party from "undue burden or expense." Fed. R. Civ. P. 26(c); *see also* Fed. R. Civ. P. 1 (provisions of the Federal Rules must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). The Court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987); *see also Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990), *cert. denied*, 498 U.S. 895 (1990) (concluding stay was proper where the trial court "sought to resolve an issue that might preclude the need for discovery altogether thus saving time and expense.").

The Court should exercise its discretion to stay discovery during the pendency of Heartland's motions to dismiss. As set forth more fully below, prior precedent in the data security breach context demonstrates that the Court's disposition of the motions is likely to moot the need for discovery or, at the very least, substantially narrow the legal and factual issues presented. Indeed, the Honorable D. Brock Hornby of the District of Maine recently stayed discovery in a data security breach MDL pending resolution of the defendant's motion to dismiss, and later dismissed the plaintiffs' consumer claims (there was no financial track) virtually in their entirety. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 133-35 (D.Me. 2009). Here, a temporary stay will avoid subjecting Heartland to the burden of expensive and wide-ranging discovery on dismissable claims, and will not unfairly prejudice Plaintiffs. Moreover, Plaintiffs should not be afforded discovery until the Court has determined whether their complaints are viable to proceed. To hold otherwise would

undermine the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* by permitting Plaintiffs to obtain discovery in advance of filing their Master Amended Complaints, thus using the discovery process to try to bolster claims that the Court would otherwise find deficient as a matter of law.[2]

## I.    DISCOVERY SHOULD NOT PROCEED UNTIL THE COURT RESOLVES HEARTLAND'S MOTIONS TO DISMISS

### A.    Disposition of the Motions is Likely to Obviate the Need for Discovery

A stay of discovery is appropriate where a defendant has "substantial arguments for dismissal of many, if not all" of the claims asserted. *See Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting motion to stay discovery while motion to dismiss was pending); *see also Von Drake v. Nat'l Broad. Co., Inc.*, No. 3-04-CV-0652, 2004 WL 1144142, at *1-2 (N.D. Tex. May 20, 2004) (same). In case after case in the data security breach context, the court's resolution of the motion to dismiss has resulted in either the wholesale dismissal of the complaint or, at a minimum, an extensive narrowing of the claims presented. *See infra* at 6-10. This case is no exception to that unbroken pattern of precedent, because, as detailed below, Heartland has defenses that cast grave doubt on the viability of all the claims Plaintiffs have asserted to date and will likely present in their Master Amended Complaints. Moreover, many of Heartland's defenses involve threshold legal questions – such as whether Plaintiffs have standing or cognizable injury, or whether certain claims are barred by operation of the law – that should be resolved prior to undertaking discovery. *See DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) (noting that a stay is often appropriate where a motion to dismiss "can resolve a threshold

---

[2] Because of the unique nature of an MDL, Plaintiffs' operative complaints will not be the complaints previously filed, but rather a Master Amended Complaint, not yet filed – and not due to be filed until September 23, 2009. Plaintiffs will then have the ability to amend their complaints as of right while Heartland's motions to dismiss are pending.

issue such as jurisdiction, standing, or qualified immunity"). In one of the most recent MDLs in this data security breach area, *In re Hannaford Bros. Co. Customer Data Security Breach Litigation*, the Rule 12 vulnerability of plaintiffs' claims led the Honorable D. Brock Hornby of the District of Maine to impose a stay of discovery pending the resolution of defendant's motion to dismiss the consumers' consolidated complaint at this very juncture of the MDL proceedings. *See* Order in MDL No. 1954 (D. Me. July 25, 2009), attached hereto as Ex. A, ¶ 7-8 (staying all discovery, including initial disclosures, and providing for a further scheduling conference upon resolution of defendant's motion to dismiss). A similar stay of discovery is appropriate here.

Heartland has particularly strong grounds for seeking dismissal of the Consumer Cases. Courts have held repeatedly that allegations of exposure to increased risk of identity theft do not constitute a cognizable injury, even where consumers allege they were subjected to unauthorized debit or credit card charges, experienced inconvenience, or incurred lost time associated with replacing cancelled cards or monitoring their credit. *See, e.g., Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007) (affirming dismissal of consumer claims for negligence and breach of contract for failure to plead a compensable injury); *Ponder v. Pfizer*, 522 F. Supp. 2d 793, 794, 797-98 (M.D. La. 2007) (in action involving employee data that was "accessed and copied" by unauthorized persons, dismissing claims for violation of state breach notification statute and breach of fiduciary duty because plaintiff did not allege that "someone actually used the disclosed information to his detriment"); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 690-91 (S.D. Ohio 2006) (dismissal for lack of standing); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009) (affirming dismissal of consumers' negligence, gross negligence, and breach of fiduciary duty claims, reasoning that incurring expenses for credit monitoring or undertaking security measures to guard against possible misuse of data does not constitute actual

harm).[3]

　　The allegations presented in the Consumer Cases mirror the types of claims that have

been made in prior cases of this sort, making the reasoning of those decisions applicable here

with equal force.[4] *See also In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417,

2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) (ordering stay of discovery, reasoning that

"first resolving the motions to dismiss is the better course . . . . [a]fter full ventilation of the

viability *vel non* of the complaint, we will all be in a much better position to evaluate how much,

if any, discovery to allow."). Indeed, Heartland's defenses to the Consumer Cases are even

stronger than in the above-cited cases, because Heartland is not even in privity with the

consumers who filed those cases. Instead, Heartland's customers are the retail establishments

and restaurants whose payment cards it processes, not the cardholders – further attenuating any

claims based on contract, or any duties leading to cognizable claims of negligence.

　　Notably, before the Consumer Cases were consolidated before this Court, one of the

consumer complaints was dismissed *sua sponte* for failure to state a claim. *See Hinton v.*

*Heartland Payment Sys., Inc.*, No. 09-594, 2009 WL 704139, at *1-2 (D.N.J. Mar. 16, 2009).

That action, filed by a *pro se* plaintiff, largely duplicated the allegations of the complaints in the

---

[3] *But see Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1126 (N.D. Cal. 2008) (pre-*Iqbal* and with little discussion, holding that consumer's assertion of being subjected to an increased risk of future identity theft was "injury in fact" sufficient to survive motion to dismiss negligence claim); *see In re Hannaford Bros. Co.*, 613 F. Supp. 2d at 131-32, n.128 (declining to follow opinion). The *Ruiz* court later granted summary judgment to the defendant, reasoning that plaintiff failed to demonstrate the appreciable harm necessary to assert a negligence claim under California law. *See Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913-14 (N.D. Cal. Apr. 6, 2009).

[4] *See, e.g.*, Docket Entry 3 at #1 (Watson Compl.), ¶ 20 ("Upon information and belief, millions of consumers had their Personal Financial Information stolen from Heartland's computer system . . . ."); *id.* ¶ 73 (as to negligence count, asserting that plaintiff and class "suffered actual damages including, but not limited to: expenses for credit monitoring, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm."); *id.* ¶ 78 (same as to "actual damages" pled for breach of contract count); Docket Entry 3 at #12 (Swenka Compl.), ¶ 3 ("Defendant's failure to maintain reasonable and adequate security procedures to protect against the theft of Plaintiff's and the Class Members' [personally identifiable information] has put them at an increased and imminent risk of becoming victims of identity theft crimes, fraud, and abuse. In addition, Plaintiff and the Class Members have spent (or will need to spend) considerable time and money to protect themselves as a result of Defendant's conduct.").

actions later transferred to this Court, namely that plaintiff's personal identifying information was "stolen, accessed and/or compromised by third parties while entrusted to [Heartland]," and that he allegedly suffered a "loss of wages and business income" and "distress." *See Hinton* Compl., attached hereto as Ex. B, ¶¶ 1, 10, 13. Plaintiff asserted claims for negligence, breach of contract, breach of fiduciary duty, negligence per se, and violations of the New Jersey Consumer Fraud Act. In dismissing the complaint, the court reasoned that plaintiff failed to "assert that he has suffered an actual or imminent injury in fact" and that his allegations of injury were "mere speculation." *See Hinton,* 2009 WL 704139, at *1-2 (citing, *inter alia, Giordano v. Wachovia Secs.,* No. 06-476, 2006 WL 2177036, at *4 (D.N.J. July 31, 2006)).[5]

Heartland has equally significant defenses to the claims asserted in the Financial Institution Cases. In actions brought by card issuing banks arising from data security breaches, courts consistently have dismissed claims for negligence and breach of contract. For example, in an action arising from a data security breach into the computer system of retailer The TJX Companies, Inc., the United States Court of Appeals for the First Circuit recently affirmed the dismissal of such claims. The court held that the banks' negligence claim was barred by the economic loss doctrine – a defense equally applicable to the consumer claims. *See In re TJX Cos., Inc. Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009). The First Circuit also

---

[5] Likewise, in another pending MDL involving a similar unauthorized intrusion into the computer system of payment processor RBS Worldpay, Inc., the court recently ordered the consumer plaintiffs to "recast their complaint" to "articulate the basis of their claims" before allowing the matter to proceed. *See* Order in *Irwin, et al. v. RBS Worldpay, Inc.,* No. 1:09-cv-33 (N.D. Ga. July 10, 2009), attached hereto as Ex. C, at 1 (characterizing plaintiffs' complaint as a "shotgun" pleading). In particular, the court faulted plaintiffs' complaint for failing to identify "the actual damages suffered by each of the plaintiffs" and because the breach of contract count failed to sufficiently identify the contract to which plaintiffs asserted they were third-party beneficiaries. *Id.* at 2 n.1. Here, the underlying complaints similarly allege plaintiffs' injuries in a conclusory fashion, and do not identify with any specificity the contracts to which plaintiffs assert they are third-party beneficiaries. *See, e.g.,* Docket Entry 3 at #1 (Watson Compl.), ¶ 73 (asserting that plaintiff and class "suffered actual damages including, but not limited to: expenses for credit monitoring, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm."); *id.* ¶ 75 ("Defendant came into possession of Plaintiff's and other members of the Class' Personal Financial Information due to its contracts with the various entities to provide credit card, debit card, and check processing in a secure manner.").

affirmed the dismissal of the breach of contract claim because the banks claimed they were third-party beneficiaries of certain contracts involving the retailer and its "approving" bank that expressly disclaimed third-party beneficiaries. *See id.* at 499; *see also CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, No. 05-1158, 2005 WL 6075375, at *2, 4-5 (Mass. Super. Ct. Dec. 1, 2005) (dismissing negligence and breach of contract counts on same bases).[6]

In litigation arising out of other data security breaches, courts have dismissed issuing banks' claims on similar or related grounds. *See, e.g., Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 179-80 (3d Cir. 2008) (affirming dismissal of issuing banks' negligence count on the basis of the economic loss doctrine under Pennsylvania law); *id.* at 180-83 (affirming dismissal of bank's unjust enrichment claim); *Cumis Ins. Soc., Inc. v. Merrick Bank Corp.*, No. 07-374, 2008 WL 4277877, at *11-12 (D. Ariz. Sept. 18, 2008) (dismissing negligence and negligent misrepresentation claims in action arising from data security breach into payment processor's computer system, reasoning that defendants owed no duty to plaintiffs); *Pa. State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 326-30 (M.D. Pa. 2005) (dismissing issuing banks' negligence count). In sum, as with the Consumer Cases, the allegations presented in the Financial Institution Cases are indistinguishable from those made, and dismissed under Rule 12, in prior data security breach cases.[7] Thus, like the

---

[6] The First Circuit permitted the financial institutions' claims based on the Massachusetts consumer protection statute and negligent misrepresentation to proceed, but stated that the latter claim could well have been dismissed on the face of the complaint given how the case law later developed and accordingly was on "life support" going forward. *See In re TJX Cos., Inc.*, 564 F.3d at 495.

[7] *See, e.g.,* Docket Entry 3 at #2 (Lone Star Bank Compl.), ¶ 14 ("As a result of [the Heartland] breach, confidential information regarding Plaintiffs' customers, and the credit card accounts Plaintiffs established for its customers was compromised. Accordingly, hundreds of banks, including Plaintiff, were forced to contact their customers to inform them of the breach, close their credit card accounts, open new credit card accounts, and re-issue their customers new Visa and MasterCard credit cards."); *id.* ¶ 19 ("Financial institutions, like Plaintiff, have reason to expect Heartland to institute reasonable policies in order to protect this confidential and sensitive financial information from misuse."); *id.* ¶ 38-42 (asserting single count for negligence and alleging that "Defendant's conduct caused injury and damages to Plaintiff and class members.").

-9-

Consumer Cases, there are compelling grounds for staying discovery in the Financial Institution Cases pending resolution of Heartland's motion to dismiss those cases.[8]

**B.    At a Minimum, Disposition of the Motions to Dismiss Will Narrow the Issues Presented, Allowing Discovery to Proceed in a More Efficient Manner**

The above-referenced prior precedent demonstrates that many, if not all, of Plaintiffs' claims will be susceptible to dismissal. But even if the Court grants Heartland's motions to dismiss only in part, the rationale for a stay is compelling. At the very least, the Court's rulings on the motions are likely to narrow significantly the claims presented and clarify which, if any, of Plaintiffs' theories of recovery are potentially viable. In turn, the appropriate scope and duration of discovery will depend on which claims, if any, Plaintiffs are entitled to pursue. With the benefit of the Court's rulings, any discovery required will proceed in a more targeted fashion, tailored to the surviving claims and with an eye toward the particular issues those claims may present for class certification.

The recent result in the *Hannaford* MDL is instructive. There, the court dismissed all of the claims for lack of cognizable injury, except as to the single plaintiff who alleged her issuing bank did not reverse allegedly fraudulent charges made on her account. *See In re Hannaford Bros. Co.*, 613 F. Supp. 2d at 133; *see also id.* at 133-34 (rejecting claims of plaintiffs who alleged "consequential losses," such as costs for overdraft fees or identity theft insurance, lost time, and inconvenience). As to that sole plaintiff, the breach of implied contract, negligence, and Maine Unfair Trade Practices Act counts survived. *See id.* at 133. The claims of that

---

[8] Consistent with the foregoing analysis, in the few MDL cases that we have uncovered where a discovery stay was denied during the pendency of the defendant's motion to dismiss, the denial was pre-*Iqbal* and *Twombly*, and was predicated on the substantial weakness of the motion to dismiss. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2002 WL 88278, at *2-3 (S.D.N.Y. Jan. 22, 2002) (granting defendants' motion to stay only in part, reasoning defendants "[fell] short" of convincing the court that the complaints would be dismissed in their entirety at the Rule 12 stage); *see also In re Vitamin C Antitrust Litig.*, No. MDL 1738, 237 F.R.D. 35, 37 (E.D.N.Y. June 7, 2006) (holding that "merits of the anticipated dismissal motion" did not weigh "particularly heavily in favor of a stay").

964395v1/09313-011255

plaintiff, however, were later mooted because her card issuer reimbursed her for the disputed transactions at issue.[9] *See* Ex. D hereto.  If discovery had proceeded on the plaintiff's claim, it would likely have been far more limited in scope and, insofar as class certification is concerned, more easily focused on issues specific to the class members, if any, with viable claims.

As to the Financial Institution Cases, the court's decisions on the motions to dismiss typically have eliminated the most broadly cast claims, such as for negligence and breach of contract, allowing the parties and the Court to more easily assess the appropriate scope and duration of discovery.  In *TJX*, for example, the negligence and breach of contract claims were dismissed and, following an appeal, the only surviving claims were those for negligent misrepresentation and an "unfair" act or trade practice under Massachusetts Chapter 93A.  Thus, the surviving causes of action focused on affirmative representations made by the defendant and, as to the "unfairness" claim, specific conduct "egregious" enough to violate the statute and practices identified in relevant Federal Trade Commission guidance.  *See In re TJX Cos., Inc.*, 564 F.3d at 495-97.  *See also CUMIS Ins. Soc'y, Inc.*, 2005 WL 6075375, at *2-6 (negligence and breach of contract claims dismissed, with fraud, negligent misrepresentation, and Massachusetts Chapter 93A claims surviving defendant's motion).

### C.    A Stay Will Avoid the Unnecessary Imposition of Burdensome Discovery and is Especially Appropriate Given the Complexity of This Matter

Under the Proposed CMO, in the absence of a stay, discovery will begin immediately and Heartland will quickly incur the significant time and expense associated with discovery in a

---

[9] Consumers are typically reimbursed by their issuing bank for any fraudulent charges appearing on their accounts. *See* 15 U.S.C. § 1643 (placing $50 limit on cardholder liability for unauthorized use of credit card); 15 U.S.C. § 1693g (imposing limitations on debit cardholder liability); Visa U.S.A., Zero Liability, http://usa.visa.com/personal/security/visa_security_program/zero_liability.html (last visited Aug. 10, 2009) (providing for "zero liability" for unauthorized card use, effectively waiving $50 liability imposed by federal law); MasterCard, MasterCard® Zero Liability, http://www.mastercard.com/us/personal/en /cardholderservices /zeroliability.html (last visited Aug. 10, 2009) (same).

multidistrict litigation, including preparing for and defending employee and corporate depositions, taking party and non-party depositions, and responding to numerous interrogatories and document requests propounded by two separate sets of plaintiffs. To the extent that discovery disputes arise and necessitate intervention, discovery will consume the Court's resources as well. A stay, by contrast, would further judicial economy and conserve the resources of all parties. *See Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.") (citation and internal quotations omitted); *see also Parish of Jefferson v. Southern Recovery Mgmt., Inc.*, No. 96-0230, 1996 WL 144400, at *2 (E.D. La. May 27, 1996) (rejecting plaintiffs' argument that discovery should be allowed because the costs would be minimal, noting that where the need for discovery might be eliminated altogether, even minimal costs would be unjustified).

As the Court is aware, discovery costs can be astronomical in complex litigation. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (citing data that discovery accounts for as much as 90 percent of litigation costs when actively employed). The likely cost of discovery is particularly substantial in a MDL matter like this, involving two putative nationwide classes, approximately thirty named plaintiffs, a vast volume of documents, potentially dozens of witnesses, and intricate factual issues concerning the Intrusion. *See Telesca v. Long Island Housing P'ship, Inc.*, No. CV 05-5509, 2006 WL 1120636, at *1-2 (E.D.N.Y. Apr. 27, 2006) (ordering stay of discovery during pendency of motions to dismiss, citing, among other reasons, the complexity of the case); *see also Twombly*, 550 U.S. at 558 (cautioning that basic deficiencies in the complaint "should be exposed at the point of minimum expenditure of time

and money by the parties and the court," especially given the prospect of costly discovery commanding an "*in terrorem* increment of the settlement value") (internal alternations and citations omitted).

### D.　A Temporary Stay Will Not Unfairly Prejudice Plaintiffs

The requested stay will not unfairly prejudice Plaintiffs. *See Spencer Trask Software*, 206 F.R.D. at 368 ("A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue.") (internal citation omitted); *see also In re Graphics Processing*, 2007 WL 2127577, at *5 (concluding there was "no urgent need for immediate discovery" until resolution of motion to dismiss operative complaints in MDL action). As set forth above, the Proposed CMO calls for the filing of the Master Amended Complaints by September 23, 2009, with briefing on Heartland's motions to dismiss completed by December 18, 2009. Such a brief stay of discovery will not cause undue delay, and should any of Plaintiffs' claims survive, discovery will proceed promptly once the Court renders its rulings. *See* Proposed CMO, §§ (VII)(D)(1) (outlining agreed-upon schedule, which would govern discovery after lifting of the stay); (VIII) (setting forth further provisions regarding discovery).

## II.　PLAINTIFFS SHOULD NOT BE PERMITTED TO CIRCUMVENT *TWOMBLY* AND *IQBAL* BY OBTAINING DISCOVERY PRIOR TO FILING THEIR MASTER AMENDED COMPLAINTS

Plaintiffs suggest that allowing discovery to proceed will not burden Heartland, citing their belief that "Heartland has already turned over documents to government regulators who are investigating its conduct related to the data breach at issue in this MDL." Proposed CMO, § (VII)(C)(3). Plaintiffs' proposal to commence discovery before they have even filed their operative complaints flouts the recent holdings of the *Twombly* and *Iqbal* decisions. These decisions strongly favor a general presumption against discovery in cases that are vulnerable to a

motion to dismiss, especially in complex matters such as this where discovery is likely to be wide-ranging and carry great expense. *See Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802-803 (7th Cir. 2008) ("[*Twombly*] teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case."). As the Supreme Court recently emphasized in *Iqbal*, notice pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

*Twombly* and *Iqbal* accordingly teach that a plaintiff should not be afforded access to discovery where doing so would put the plaintiff in a position to try to bolster a pleading that otherwise might well be found legally deficient. As one federal court stated earlier this year:

> Post *Iqbal*, the policy against burdensome discovery in complex cases during the pendency of a motion to dismiss holds fast . . . [These decisions] require district courts to carefully consider the potential discovery needed in complex cases. If the complex case is one susceptible to the burdensome and costly discovery contemplated by *Bell Atlantic* and *Iqbal*, the district court should limit discovery once a motion to dismiss for failure to state a claim has been filed.

*Coss v. Playtex Prods.*, No. 08 C 50222, 2009 WL 1455358, at *3 (N.D. Ill. May 21, 2009). Thus, following *Twombly* and *Iqbal*, courts repeatedly have stayed or, at the very least, restricted discovery during the pendency of a motion to dismiss in complex matters. *See id.* at *4-5 (collecting authorities); *see also Committee for Immigrant Rights of Sonoma County v. County of Sonoma*, No. C 08-4220, 2009 WL 2382689, at *27 (N.D. Cal. July 31, 2009) (imposing stay of discovery pending resolution of certain defendants' motions raising qualified immunity defense, citing *Iqbal* and noting the "disruptions, inconvenience and expense of discovery" that might be avoided); *In re Flash Memory Antitrust Litig.*, No. C 07-0086, 2008 WL 62278, at *5 (N.D. Cal. Jan. 4, 2008) (in consolidated putative class action, denying plaintiffs' request for discovery prior

to filing of operative complaint, emphasizing that the Federal Rules "contemplate pre-complaint discovery only in very limited circumstances"); *In re Graphics Processing*, 2007 WL 2127577, at *5 (staying discovery during pendency of defendants' motions to dismiss MDL complaint).

Further, some of these same courts have rejected class action plaintiffs' suggestion that they should have access to documents produced to the government in a parallel regulatory investigation. For example, in the *Graphics Processing Antitrust* MDL, in imposing a stay of discovery during the pendency of defendants' motions to dismiss the court specifically refused to require defendants to produce documents they had produced to the Antitrust Division of the Department of Justice. The court reasoned that, regardless of the "incremental cost to produce a duplicate set to plaintiffs' counsel," the "compelled act of turning records over to the government pursuant to a subpoena does not mean that everyone else has an equal right to rummage through the same records." *In re Graphics Processing*, 2007 WL 2127577, at *5; *see also In re Flash Memory Antitrust Litig.*, 2008 WL 62278, at *5 (same, emphasizing that "the timing of discovery under the Federal Rules is not a mere formalism that easily gives way to a plaintiff's invocation of efficiency or merely because the marginal costs of duplicating documents already provided to a grand jury may be negligible.").

In short, Plaintiffs' focus on the supposedly minimal burden imposed on Heartland to produce documents it previously produced to regulators misses the point. Under *Twombly* and *Iqbal*, Plaintiffs should be denied any discovery – regardless of the associated burden – until the Court has determined which portions, if any, of the Master Amended Complaints are viable to proceed.

-15-

## CONCLUSION

For the foregoing reasons, Heartland respectfully requests that the Court stay discovery during the pendency of its motions to dismiss.

Respectfully submitted,

/s Neal S. Manne
Neal S. Manne
nmanne@susmangodfrey.com
State Bar No. 12937980
S.D. Adm. No. 10209
Erica W. Harris
eharris@susmangodfrey.com
State Bar No. 00797697
S.D. Adm. No. 20784
David M. Peterson
dpeterson@susmangodfrey.com
State Bar No. 24056123
S.D. Adm. No. 882360
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666

Harvey J. Wolkoff
harvey.wolkoff@ropesgray.com
MA State Bar No. 532880
Douglas H. Meal
douglas.meal@ropesgray.com
MA State Bar No. 340971
Mark P. Szpak
mark.szpak@ropesgray.com
MA State Bar No. 546261
Anne E. Johnson
anne.johnson@ropesgray.com
MA State Bar No. 666361
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000 (telephone)
(617) 951-7050 (facsimile)

*Attorneys for Heartland Payment Systems, Inc.*

## CERTIFICATE OF CONFERENCE

Counsel for Defendant Heartland Payment Systems, Inc. ("Heartland"), including Harvey Wolkoff, Douglas Meal, Anne Johnson, Neal Manne, and Erica Harris, conferred with counsel for Plaintiffs, including Michael Caddell, Joseph G. Sauder, and Richard Coffman for Plaintiffs in the Financial Institution Cases and Ben Barnow for Plaintiffs in the Consumer Cases, regarding the relief requested by this motion. The parties conferred on August 4, 2009 by telephone in preparation for the filing of the Joint Discovery/Case Management Plan and Proposed Case Management Order. *See* Docket Entry 14. As set forth in the Proposed Case Management Order, Plaintiffs intend to oppose a stay of discovery during the pendency of Heartland's motions to dismiss.

/s Neal S. Manne
Neal S. Manne

964395v1/09313-011255

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 17th day of August 2009 with a copy of this document via the Court's CM/ECF system per the Local Rules.

/s Neal S. Manne
Neal S. Manne

964395v1/09313-011255