# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: Heartland Payment Systems Inc. Customer Data Security Breach Litigation | : : : : : | 4:09-md-02046<br><br>MDL No. 2046 |
| _____ | : | Hon. Lee H. Rosenthal |
| This Document Relates to: | : | |
| | : | CLASS ACTION |
| ALL ACTIONS _____ | : | JURY TRIAL DEMANDED |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HEARTLAND PAYMENT SYSTEMS, INC.'S MOTION TO STAY DISCOVERY DURING THE PENDENCY OF ITS MOTIONS TO DISMISS

---

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE.................................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

STATEMENT OF THE FACTS................................................................................3

ARGUMENT.......................................................................................................5

      A.     Standard of Review................................................................5

      B.     Heartland's Motion to Stay All Discovery Should be Denied.................6

                  1.     *Heartland's Anticipated Motions to Dismiss are Unlikely to Result in the Dismissal of Every Claim in Both Tracks.*...........7

                              a.     *Consumer Track Cases.*......................................................8

                              b.     *Financial Institution Track Cases.*..................................11

                  2.     *Plaintiffs Would be Unfairly Prejudiced by a Discovery Stay.* ...................................12

                  3.     *Heartland's Motion to Stay Discovery is Procedurally Improper* ...........................................14

                  4.     *Neither* Twombly *nor* Iqbal *Support Heartland's Request to Stay All Discovery* .................................15

                  5.     *Plaintiffs' Initial Discovery Requests are Focused and Limited*...............................................19

CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .............................................................. 15-18

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) .............................................................. 15-18

*Borneo Energy Sendirian Berhad v. Sustainable Power Corp.,*
No. H-09-0612, 2009 U.S. Dist. LEXIS 70732
(S.D. Tex. Aug. 12, 2009) ............................................................. 8, 9

*Brazos Valley Coalition for Life, Inc. v. City of Bryan Texas,*
421 F.3d 314 (5th Cir. 2005) ............................................................. 1

*Cumis Insurance Society, Inc. v. Merrick Bank Corp.,*
No. CIV 07-374-TUC-CKJ,
2008 U.S. Dist. LEXIS 78451 (D. Ariz. Sept. 18, 2008) ..................................... 2

*Doe v. Chao,*
540 U.S. 614 (2004) .................................................................... 10

*ESN, LLC v. Cisco Systems, Inc.,*
No. 5:08-CV-20, 2008 U.S. Dist. LEXIS 108327
(E.D. Tx. Nov. 20, 2008) ................................................................. 3

*Fanin v. United States Department of Veteran Affairs,*
No. 08-11102, 2009 WL. 1677233, 572 F.3d 868
(11th Cir. June 17, 2009) ............................................................... 10

*In re Flash Memory Antitrust Litigation,*
2007 U.S. Dist. LEXIS 95869 .......................................................... 6, 7

*Ford Motor Company,*
2008 U.S. Dist. LEXIS 34240 ......................................................... 6, 7

*Freund v. Weinstein,*
No. CV 2008-14692009,
U.S. Dist. LEXIS 57991 (E.D.N.Y. July 8, 2009) ......................................... 5

*Glazer's Wholesale Drug Co. v. Klein Foods, Inc.,*
No. 3-08-CV-0774-L, 2008 U.S. Dist. LEXIS 56564
(N.D. Tex. July 23, 2008)...............................................................................3, 5, 6, 7

*In re Graphics Processing Units Antitrust Litigation*,
No. 06-7417, 2007 U.S. Dist. LEXIS 57982
(N.D.Cal. July 24, 2007) ....................................................................................5, 6, 7

*Hammond et al v. The Bank of New York Mellon Corporation et al,*
No. 1:08-cv-06060-RMB-RLE  (S.D.N.Y.) ...........................................................9

*In re Hannaford Brothers Co. Customer Data Sec. Breach Litigation*,
252 F.R.D. 66 (D. Me. 2009) .................................................................................8

*Jones v. Commerce Bancorp, Inc.,*
No. 06-835, 2006 WL. 1409492 (S.D.N.Y. May 23, 2006)..................................10

*Koncelik v. Savient Pharmaceuticals, Inc.,*
No. 08-cv-10262, 2009 U.S. Dist. LEXIS 73607
(S.D.N.Y. Aug. 6, 2009)..........................................................................................6

*Kuhn v. Capital One Finance Corp.,*
No. 05-P-810, 2006 WL. 3007931  855 N.E.2d 790
(Mass. App. Ct. 2006) ...........................................................................................10

*Mayo v. Hartford Life Insurance Co.,*
354 F.3d 400 (5th Cir. 2004)...................................................................................8

*Pa. State Employees Credit Union v. Fifth Third Bank,*
398 F. Supp. 2d 317 (M.D.Pa. 2005) ......................................................................2

*Petroleum Distribs., Inc.,*
No. 3:91-C 1991 U.S. Dist. LEXIS 13951
(D. Conn. July 16, 1991) .........................................................................................3

*Pisciotta v. Old National Bancorp,*
499 F.3d 629 (7th Cir. 2007)..................................................................................10

*Qwest Communs. Corp. v. Herakles, LLC,*
No. 2:07-cv-00393-MCE-KJM, 2007 U.S. Dist. LEXIS 57757
(E.D. Cal. Aug. 7, 2007) ..........................................................................................6

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.,*
825 P.2d 714 (Wash. Ct. App. 1992) .....................................................................10

*Sovereign Bank v. BJ's Wholesale Club, Inc.,*
  533 F.3d 162 (3d Cir. 2008) .............................................................................1

*In re Static Random Access Memory (SRAM),*
  No. 07-1819 ...................................................................................................6

*Stephens v. Omni InsuranceCo.,*
  159 P.3d 10 (Wash. Ct. App. 2007) ...............................................................10

*Stockton Heartwoods v. Bielski,*
  No. 4:04CV1675MLM, 2006 WL. 571983 (E.D. Mo.)......................................10

*In re TJX Cos., supr ; CUMIS Inc. Society, Inc. BJ's Wholesale Club, Inc.,*
  No. 05-1158, 2005 Mass. Super. LEXIS 696
  (Mass. Super. Ct. Dec. 1, 2005) ....................................................................11

*United States ex rel. Gonzalez v. Fresenius Medical Care North America,*
  No. EP-07-CA-247-PR, 2008 U.S. Dist. LEXIS 64636
  (W.D. Tex. Aug. 14, 2008)................................................................................5

*Vanderbrook v. Unitrin Preferred Insurance Co. (In re Katrina Canal Breaches Litigation),*
  495 F.3d 191 (5th Cir. 2007)..........................................................................10

*Von Drake v. National Broadcasting Co.,*
  No. 3-04-CV-0652-R, 2004 U.S. Dist. LEXIS 25090
  (N.D. Tex. May 20, 2004)..........................................................................4, 5, 7

*Witriol v. LEXISNexis Group,*
  No. C05-02392...............................................................................................10

## Statutes

15 U.S.C. § 78u-4(a)(1) .......................................................................................6

28 U.S.C. § 1407(a) .............................................................................................4

Cal. Bus. & Prof. Code § 17200 ...........................................................................2

Fed. R. Civ. P. 1 ..................................................................................................4

Fed. R. Civ. P. 8 ..................................................................................................8

Fed. R. Civ. P. 12(b)(6) ......................................................................................6

Fed. R. Civ. P. 26(c) ........................................................................................5, 7

## STATEMENT OF THE ISSUE

The sole issue to be decided by the Court is whether discovery should be stayed where it is apparent that at least one or more of Plaintiffs' claims will survive the anticipated motions to dismiss, Defendant Heartland Payment Systems, Inc. ("Heartland") has already produced pertinent documents to third parties investigating the Data Breach, Plaintiffs are willing to limit the scope of the initial discovery, and the resolution of certain facts may be relevant to the Court's decision on the motions to dismiss. The standard of review for this issue is abuse of discretion. *See Brazos Valley Coalition for Life, Inc. v. City of Bryan Texas*, 421 F.3d 314, 327 (5th Cir. 2005).

## SUMMARY OF ARGUMENT

Before Plaintiffs filed their consolidated amended complaints or served a single discovery request, Heartland has moved to stay all discovery pending the resolution of its anticipated motions to dismiss. For the reasons set forth below, Heartland's motion should be denied because it has failed to meet its burden of demonstrating the existence of "good cause" to warrant such a stay.

*First,* Heartland is unlikely to prevail on its motions to dismiss all of the counts in both the Financial Institution Track and Consumer Track. Because some or all of the counts in the complaints are likely to survive a motion to dismiss – and given that the discovery with respect to all of these claims will be substantially identical – there is no basis to stay discovery.

1

This is especially true here, where the briefing schedule proposed by the parties provides that the motions to dismiss will not be fully briefed until December 18, 2009. Delaying the start of discovery for at least five months would unfairly prejudice Plaintiffs.

*Second,* Plaintiffs have set forth a narrow list of specific topics below to limit the initial scope of discovery prior to the Court's ruling on Heartland's motions to dismiss. Many of the requested items are copies of materials that Heartland has already produced to governmental agencies (and other entities) that are investigating the Data Breach. Additionally, much of this discovery will come from third parties that have conducted their own audits and/or forensic investigations of the Data Breach. As such, Heartland is in no position to complain that limiting the initial phase of discovery to these narrow topics will require it to incur "the significant time and expense associated with discovery."

*Third,* notwithstanding Plaintiffs' proposal to limit the initial scope of discovery pending the resolution of Heartland's motions to dismiss, to the extent that Heartland has a legitimate concern with respect to discovery (which cannot be resolved among counsel), it is always free to petition the Court for a protective order. Accordingly, Defendant's motion to stay should be denied.

## STATEMENT OF THE FACTS

Defendant Heartland provides processing services that enable consumers to use debit and credit cards (which are issued by various banks, credit unions, and financial institutions) to make purchases from merchants throughout the nation.  Heartland processes the payment transaction between financial institutions, merchants, and consumers (among other parties).

On January 20, 2009, Heartland announced that it had suffered a massive data breach that compromised sensitive consumer financial information, including data from consumer debit cards and credit cards (the "Data Breach").  Heartland's Memorandum of Law in Support of its Motion to Stay ("Def. Mem.") claims that "third parties *apparently* gained access to certain transaction information" in the Data Breach.[1]

Heartland acknowledges in its Memorandum that it has received inquiries from several governmental agencies relating to the Data Breach.[2] More important, on August 17, 2009, the United States Department of Justice announced that it had indicted the key person alleged to be the perpetrator of the Data Breach.  *See* Exhibit A.  According to the indictment, "[b]eginning on or about December 26, 2007, Heartland was the victim of a SQL Injection Attack on its corporate computer network that resulted in

---

[1] Def. Mem. at 2 (emphasis supplied).

[2] *See* Def. Mem. at 2.

3

malware being placed on its payment processing system and the theft of more than approximately 130 million credit and debit card numbers and corresponding Card Data."[3]   It has been reported that this alleged perpetrator intends to plead guilty to related criminal charges.

Pursuant to a June 2009 Order by the Judicial Panel on Multidistrict Litigation ("JPML"), this Court currently is presiding over two separate tracks of cases filed against Heartland relating to the Data Breach.  The first track consists of class action cases brought on behalf of consumers whose sensitive information was compromised in the Data Breach, and who have been injured and have suffered damages as a consequence (the "Consumer Track").  The damages in the Consumer Track include, *inter alia*, out-of-pocket expenses for fraudulent transactions, time spent remedying the effects of the Data Breach, and the increased risk of future identity theft.  The second track consists of class action cases brought on behalf of banks, credit unions, financial institutions and other entities that issued debit cards and credit cards compromised by the Data Breach (the "Financial Institution Track").  The damages suffered by the class members in the Financial Institution Track include the costs of re-issuing compromised debit cards and credit cards and unreimbursed fraudulent expenses absorbed by the plaintiff financial institutions on behalf of their customers.  While the cases in the

---

[3] *See* Exhibit A at ¶ 1(i).

Consumer Track and Financial Institution Track will proceed on separate tracks, Plaintiffs in both cases jointly submit this memorandum.[4]

ARGUMENT

## A.     Standard of Review.

District courts have the authority to stay discovery "for good cause shown." *Von Drake v. NBC*, No. 3-04-CV-0652-R, 2004 U.S. Dist. LEXIS 25090, at *3 (N.D. Tex. May 20, 2004) (citing FED. R. CIV. P. 26(c)).  The party seeking the stay has the burden of demonstrating the existence of good cause. *See, e.g., United States ex rel. Gonzalez v. Fresenius Med. Care North Am.*, No. EP-07-CA-247-PR, 2008 U.S. Dist. LEXIS 64636 (W.D. Tex. Aug. 14, 2008) ("Good cause may exist when the party from whom discovery is sought shows that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay."); *Freund v. Weinstein*, No. CV 2008-14692009 U.S. Dist. LEXIS 57991, at *3 (E.D.N.Y. July 8, 2009) ("A party seeking a stay of discovery pursuant to Fed. R. Civ. P. 26(c) bears the burden of showing good cause.") (citations omitted).

While the Court has the discretion to stay discovery pending the outcome of a motion to dismiss, "the issuance of [a] stay is by no means

---

[4] While the proposed classes and legal theories in the two cases differ substantially, Plaintiffs in the Financial Institution Track and Consumer Track join in this motion because the sought after discovery will substantially overlap.  In particular, the discovery will focus on the same Data Breach, the same affirmative representations by Heartland about its security before the Data Breach, the same conduct by Heartland after the Data Breach (including the same post-breach forensic investigations commissioned by Heartland), and the same PCI compliance and audit reports performed on (and on behalf of) Heartland leading up to the Data Breach.

automatic."[5] *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 U.S. Dist. LEXIS 56564, at *2 (N.D. Tex. July 23, 2008) (citation omitted). "In fact, such a stay is the exception rather than the rule." *Id.* (citing *Ford Motor Co. v. United States Auto Club, Motoring Div., Inc.*, 2008 U.S. Dist. LEXIS 34240 (N.D. Tex. Apr. 24, 2008)). And, because "discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future," they are generally disfavored. *Qwest Communs. Corp. v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2007 U.S. Dist. LEXIS 57757, at *5 (E.D. Cal. Aug. 7, 2007) (citations omitted).

**B.     Heartland's Motion to Stay All Discovery Should be Denied.**

As set forth below, Heartland has failed to carry its burden of demonstrating that good cause exists to warrant a stay of discovery. To the contrary, good cause exists to allow discovery to proceed.

---

[5] A limited exception to this rule is contained in the Private Securities Litigation Reform Act of 1995 ("PSLRA") which, by its terms, applies only to putative class actions brought under the federal securities laws. *See* Def. Mem. at 3 (citing 15 U.S.C. § 78u-4(b)(3)(B)). *See also* 15 U.S.C. § 78u-4(a)(1). As such, this statute is inapplicable to the cases in the Consumer Track and in the Financial Institution Track. Indeed, as non-securities cases decided subsequent to the passage of the PSLRA have recognized, had the Federal Rules of Civil Procedure "contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Ford,* 2008 U.S. Dist. LEXIS 34240, at *2 (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)).

To the extent that the exceptions to the PSLRA's automatic stay are considered with respect to the Consumer Track and in the Financial Institution Track, Plaintiffs should be permitted to conduct the particularized discovery set forth herein. *See Koncelik v. Savient Pharmaceuticals, Inc.*, No. 08-cv-10262, 2009 U.S. Dist. LEXIS 73607, at *3-4 (S.D.N.Y. Aug. 6, 2009) (allowing a partial lifting of discovery stay in a PSLRA case to allow plaintiff to conduct "particularized discovery").

1.   *Heartland's Anticipated Motions to Dismiss are Unlikely to Result in the Dismissal of Every Claim in Both Tracks.*

Heartland argues that its anticipated motions to dismiss, which are not scheduled to be filed until October 23, 2009,[6] will dismiss "most, and perhaps all, of Plaintiffs' anticipated claims"[7] in the yet-to-be filed operative complaints.  This mere conjecture is an insufficient reason to stay discovery. Indeed, courts have routinely denied similar motions to stay discovery that are made "merely because [the] defendant believes it will prevail on its motion to dismiss."  *Glazer's,* 2008 U.S. Dist. LEXIS 56564, at *2.  *Accord, Ford Motor Company,* 2008 U.S. Dist. LEXIS 34240, at *2-3 ("This court declines to stay discovery merely because defendant believes that it will prevail on its motion to dismiss.").[8]

---

[6] *See* Proposed Case Management Order at § (VII)(C)(1).

[7] Def. Mem. at 1.

[8] The only district court case within the Fifth Circuit cited by Heartland that was actually decided in the context of a motion to stay is *Von Drake v. National Broadcasting Co.,* No. 3-04-CV-0652-R, 2004 U.S. Dist. LEXIS 25090 (N.D. Tex. May 20, 2004).  *See* Def. Mem. at 5. *Von Drake* was filed by a *pro se* litigant that the court noted had been "chastised for 'attempting to make a mockery of the federal system,'" *id.* at *4, n.2, and who immediately served discovery requests with the complaint related to "federal tax returns for the past five years" and "copies of felony arrest records."  *Id.* at *2.

In *Glazer's* – which is not cited by Heartland – the same magistrate judge who authored the *Von Drake* opinion distinguished that case "on the facts" because in *Von Drake*, the court reviewed the motion to dismiss and "determined that defendants had substantial arguments in favor of dismissal."  *Glazer's,* 2008 U.S. Dist. LEXIS 56564, at *4.  By contrast, in *Glazer's,* the court denied the motion to stay after determining that "the claims alleged by plaintiffs in the instant case are more sophisticated and the grounds for dismissal less clear cut."  *Id.* The claims asserted by Plaintiffs here are clearly more akin to *Glazer's* than to those of the *pro se* litigant in *Von Drake.*

### a.    *Consumer Track Cases.*

With respect to the Consumer Track cases, Heartland relies heavily on Juge Hornby's decision to stay discovery in *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 252 F.R.D. 66 (D. Me. 2009).[9]  Aside from the fact that there was no parallel Financial Institution Track in the *Hannaford* litigation, this case is readily distinguishable because Judge Hornby entered the stay pursuant to the agreement of the defendants and the court-appointed interim lead counsel who did not oppose a stay of formal discovery, but, in fact, proposed such a stay.  *See* Exhibit B.

Further, at the time Judge Hornby issued the discovery stay on July 25, 2008, there was no indictment related to the Hannaford data breach that had been publicly announced.[10]  And the parties in *Hannaford* had conceded that Maine law should apply to that case.  Here, however, choice-of-law is an issue that will require substantial factual discovery to resolve.[11]  Thus,

---

[9] Heartland cannot credibly cite to the *Hannaford* litigation in support of its request to stay discovery in the Financial Institution Track because, as it acknowledges, there was no financial track in that case.  *See* Def. Mem. at 4.

[10] The indictment relating to the Heartland Data Breach that was made publicly available on August 17, 2009, also references the Hannaford data breach but, upon information and belief, this information was not publicly available in June 2008.

[11] Indeed, there already appears to be a factual question about which state(s)' law(s) will apply under Texas' "most significant relationship" test.  *See, e.g., Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (noting that Texas follows the Restatement's most significant relationship test).  Heartland took the position in the MDL proceedings that the center of gravity in this case is in its computer facilities in Texas.  However, the recent indictment of the alleged perpetrator of the Data Breach in the District of New Jersey suggests that the center of gravity in this case, in fact, may be in New Jersey or another state.  *See* Exhibit A.

Plaintiffs should be allowed to conduct discovery to develop the factual record in that regard.

Heartland's citation to the District of New Jersey's decision summarily dismissing a *pro se* litigant's case against Heartland also fails to provide the necessary "good cause" to justify a stay. *See* Def. Mem. at 7-8 (citing *Hinton v. Heartland Payment Sys.*, 09-594 (MLC), 2009 U.S. Dist. LEXIS 20675 (D.N.J. Mar. 16, 2009)). The plaintiff in *Hinton*, an individual consumer, simultaneously filed a complaint and motion to proceed *in forma pauperis*. *Id.* at *1. The court described the plaintiff's complaint as "rambling," *id.* at *1, and observed that he was "no stranger to federal civil litigation." *Id.* at *4 (citing several other cases filed by this plaintiff). Among other things, the plaintiff sought to recover "$250,000 for 'lost of wages and business income.'" *Id.* at *1. Before Heartland filed a motion to dismiss, the court dismissed the complaint because, *inter alia*, the plaintiff failed to aver that a third party had actually misused his credit card information, and because his request for lost wages and business income was speculative given that he listed himself as "unemployed and homeless" on his *in forma pauperis* application. *Id.* at *2.

Noticeably absent from Heartland's brief are citations to data breach cases where courts have rejected similar attempts to stay discovery pending resolution of a motion to dismiss. For example, in *Hammond et al v. The Bank of New York Mellon Corporation et al,* No. 1:08-cv-06060-RMB-RLE

(S.D.N.Y.), a data breach case on behalf of consumers pending in the
Southern District of New York, Judge Berman expressly rejected the
defendant's request to stay discovery. *See* Exhibit C. Defendants also
conveniently overlook that the court in *In Re: TJX Companies Retail Security
Breach Litig.,* 1:07-cv-10162-WGY (D.Mass.) did *not* stay discovery in either
the consumer or financial institution tracks pending the motions to dismiss –
even though TJX was represented by many of the same counsel representing
Heartland here.

    Also absent are citations to data breach/identity theft cases where the
claims of consumers were not dismissed. *See, e.g., Pisciotta v. Old Nat'l
Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) ("the injury-in-fact requirement
can be satisfied by a threat of future harm or by an act which harms the
plaintiff only by increasing the risk of future harm that the plaintiff would
have otherwise faced, absent the defendant's actions"); *Witriol v. LexisNexis
Group*, No. C05-02392 MJJ, 2006 WL 4725713 at *6 (N.D. Cal. Feb. 10,
2006) (costs associated with monitoring and repairing credit impaired by the
unauthorized release of private information sufficient for allegation of actual
injury and monetary loss).[12]

---

[12] *See also, Doe v. Chao*, 540 U.S. 614, 626 n.10 (2004) (fees associated with running a credit
report qualify as actual damages in action under the Privacy Act); *Fanin v. United States
Dep't of Veteran Affairs*, No. 08-11102, 2009 WL 1677233, *5, 572 F.3d 868 (11th Cir. June
17, 2009) (indicating that abandoned allegations regarding time and money spent in
protecting against identity theft would have constituted actual damages under the Privacy
Act); *Jones v. Commerce Bancorp, Inc.*, No. 06-835, 2006 WL 1409492, at *2 (S.D.N.Y. May
23, 2006) (cancelled insurance policy, lost income from her business, and time spent in
response to breach sufficient pleading for injury); *Stockton Heartwoods v. Bielski*, No.
4:04CV1675MLM, 2006 WL 571983, *3 (E.D. Mo.) (court recognized damage to plaintiff for

b.    *Financial Institution Track Cases.*

Heartland's arguments with respect to staying discovery in the

Financial Institution Track are even less persuasive.  Heartland

acknowledges that in the *TJX* litigation, the First Circuit recently reinstated

the financial institutions' claim based on violations of the Massachusetts

consumer protection statute, and allowed their negligent misrepresentation

claim to proceed.  *See* Def. Mem. at 9, n.6 (citing *In re TJX Cos. Retail Sec.*

*Brach Litig.*, 564 F.3d 489 (1st Cir. 2009)).  Significantly, in every single data

breach case brought by a financial institution that is cited in Heartland's

brief, at least one claim has survived a motion to dismiss.  *See* Def. Mem. at

9-10 (citing *In re TJX Cos., supra; CUMIS Inc. Soc'y, Inc. BJ's Wholesale*

*Club, Inc.,* No. 05-1158, 2005 Mass. Super. LEXIS 696 (Mass. Super. Ct. Dec.

1, 2005) (denying motion to dismiss claims for fraud, negligent

misrepresentation, negligence, violation of Massachusetts consumer

protection act, and subrogation); *Sovereign Bank v. BJ's Wholesale Club,*

*Inc.*, 533 F.3d 162, 168-173 (3d Cir. 2008) (district court erred by dismissing

issuer's breach of contract claim); *Cumis Ins. Soc'y, Inc. v. Merrick Bank*

---

time spent as a result of a defendant's breach of contract, but dismissed the case on other grounds); *Stephens v. Omni Ins.Co.*, 159 P.3d 10, 25 (Wash. Ct. App. 2007) (holding that "time and expense" of investigating possible damage to credit rating is compensable for a consumer protection act violation); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 720 (Wash. Ct. App. 1992) (holding that lost time, outside of litigation, spent dealing with dispute was a compensable under a consumer protection act violation); *Kuhn v. Capital One Fin. Corp.*, No. 05-P-810, 2006 WL 3007931 at *3, 855 N.E.2d 790 (Mass. App. Ct. 2006) (holding that time spent seeking to prevent or undo harm caused by negligence and breach of contract is compensable and that "one 'whose legally protected interests have been endangered by the tortuous conduct of another is entitled to recover expenditures reasonably made or harm suffered in a reasonable effort to avert the harm threatened'") (citing Restatement (Second) of Torts § 919 (1979).

*Corp.*, No. CIV 07-374-TUC-CKJ, 2008 U.S. Dist. LEXIS 78451 (D. Ariz. Sept. 18, 2008) (denying motion to dismiss claims for CAL. BUS. & PROF. CODE § 17200, restitutionary disgorgement, breach of contract, and intentional misrepresentation); *Pa. State Employees Credit Union v. Fifth Third Bank,* 398 F. Supp. 2d 317 (M.D.Pa. 2005) (denying motion to dismiss issuer's breach of contract claim against acquirer).

Since it is apparent that at least one (and likely many) claims asserted by the Financial Institution Plaintiffs will survive the anticipated motion to dismiss, Heartland's motion to stay is nothing more than an effort to delay discovery that inevitably will occur.

### 2.    *Plaintiffs Would be Unfairly Prejudiced by a Discovery Stay.*

Heartland's claim that Plaintiffs would not be prejudiced by a discovery stay is based on its circular argument that (i) most or all of the claims in the complaint are meritless and will be dismissed, and (ii) discovery should be stayed until after the motions to dismiss are decided. Assuming, *arguendo*, that Heartland's argument that Plaintiffs' complaints will be dismissed has merit – which it does not – Plaintiffs would be unfairly prejudiced by never having access to the relevant evidence that undisputedly exists. And, because the motions to dismiss will not be fully briefed until December 18, 2009, Heartland can hardly claim that it is merely seeking a "brief stay" of discovery.[13] *See Glazer's*, 2008 U.S. Dist. LEXIS 56564, at *3 ("For defendant to now suggest that there will be no delay or prejudice if all

---

[13] *See* Def. Mem. at 13.

discovery is stayed for several months while the court considers its Rule 12(b)(6) motion is, at the very least, disingenuous.").

A stay would be particularly inappropriate here where there is an ongoing governmental investigation of the Data Breach and several key former employees of Heartland have left the company. Unnecessarily prolonging the start of discovery will increase the risk that the memories of key witnesses will fade, and make it more difficult to locate the whereabouts of relevant documents and other key former Heartland employees. *See, e.g., ESN, LLC v. Cisco Systems, Inc.*, No. 5:08-CV-20, 2008 U.S. Dist. LEXIS 108327, at *8 (E.D. Tx. Nov. 20, 2008) (denying a motion to stay a case, in part, because the delay sought would mean that "crucial witnesses are more likely to be unavailable, memories will fade, and evidence will be lost during the stay."); *Petroleum Distribs., Inc.*, No. 3:91-CV-00173 (WWE), 1991 U.S. Dist. LEXIS 13951, at *4-5 (D. Conn. July 16, 1991) (denying requested stay, noting that plaintiffs in federal court have the right to "expeditiously vindicate their claims," and recognizing that "stays in proceedings may result in prejudice [] because 'witnesses relocate, memories fade, and persons…are unable to seek vindication or redress for indefinite periods of time on end'") (citations omitted).[14]

---

[14] *See also* 28 U.S.C. § 1407(a) (authorizing the JPML to transfer related actions to a district court upon a finding that, *inter alia*, it will "promote the just and efficient conduct of such actions."); FED. R. CIV. P. 1 (the Federal Rules of Civil Procedure are to be construed to "secure the just, speedy, and inexpensive determination of every action and proceeding.").

### 3. *Heartland's Motion to Stay Discovery is Procedurally Improper.*

Heartland's motion to stay also is procedurally premature. "Among the factors that inform the court's discretion [whether to issue a stay] are: (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake*, 2004 U.S. Dist. LEXIS 25090, at *3 (citations omitted). Here, Plaintiffs have not yet served a single discovery request, Plaintiffs have not filed their respective operative complaints, and Heartland has not filed its motions to dismiss. The scope of Plaintiffs' discovery – as set forth below – is narrow and focused.

More important, Heartland has not demonstrated – much less – addressed – its alleged "burden" to produce the requested documents and information. Heartland did not submit an affidavit or other admissible evidence in support of its motion showing how or why production of the requested discovery would be a burden.

As recognized by courts that have denied motions to stay discovery in similar contexts, the appropriate recourse for Heartland if (i) it has a legitimate objection to a specific discovery request that (ii) cannot be resolved by the parties is to seek a protective order from the Court on that specific discovery issue. *See Glazer's,* 2008 U.S. Dist. LEXIS 56564, at *3-4 ("If plaintiffs wish to challenge objections asserted by defendant to written discovery, or defendant seeks a protective order other than a blanket stay of

all discovery, the parties may file an appropriate motion with the court."). Heartland's request for a blanket stay of all discovery at this preliminary stage of the litigation is premature, overbroad and should be denied.

> **4.** ***Neither* Twombly *nor* Iqbal *Support Heartland's Request to Stay All Discovery.***

Heartland's argument that allowing Plaintiffs to obtain discovery "prior to filing their master amended complaints"[15] would somehow "circumvent *Twombly* and *Iqbal*" is without merit. *See* Def. Mem. at 13. Indeed, the very cases relied heavily on by Heartland – *In re Graphics Processing Units Antitrust Litig.*, No. 06-7417, 2007 U.S. Dist. LEXIS 57982 (N.D.Cal. July 24, 2007) and *In re Flash Memory Antitrust Litig.*, No. 07-0086, 2007 U.S. Dist. LEXIS 95869 (N.D.Cal. Jan. 4, 2008) – both expressly reject the argument that the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) implicitly or explicitly calls for a stay of discovery pending a motion to dismiss.

The court in *In re Graphics Processing Units* explained that "[t]his order does not read *Twombly* to erect an automatic, blanket prohibition on any and all discovery before an anti-trust plaintiff's complaint survives a motion to dismiss." *In re Graphics Processing Units*, 2007 U.S. Dist. LEXIS 57982, at *23. The court in *In re Flash Memory* agreed with this interpretation, stating that the Supreme Court in *Twombly*:

---

[15] To the extent Heartland is truly concerned with Plaintiffs obtaining discovery prior to the filing of their consolidated amended complaints, Plaintiffs would certainly be willing to wait to serve their discovery requests until *after,* Plaintiffs file their amended complaints.

> [D]id not hold, implicitly or otherwise, that discovery in
> antitrust actions is stayed or abated until after a complaint
> survives a Rule 12(b)(6) challenge. Such a reading of that
> opinion is overbroad and unpersuasive.

*In re Flash Memory,* 2007 U.S. Dist. LEXIS 95869, at *23-24.[16]

Heartland's argument also is not supported by the fact that the Northern District of California ultimately decided to stay discovery pending the resolution of the motions to dismiss in *In re Graphics Processing Units* and *In re Flash Memory.* As an initial matter, both of these cases are directly contrary to that court's opinion in *In re Static Random Access Memory (SRAM),* No. 07-1819. As the *In re Flash Memory* court explained, "[i]n the SRAM case, the court apparently ordered the defendants to provide the plaintiffs with all documents produced to the Department of Justice, and did so before requiring the filing of consolidated amended complaints." *In re Flash Memory Antitrust Litig.*, 2007 U.S. Dist. LEXIS 95869, at *21 (citing *In re Static Random Access Memory*).

Both of these decisions are also factually inapposite. The court in *In re Graphics Processing Units*, for example, remarked that that case was not one in which "it is almost certain that the complaint is viable," and, while there were ongoing criminal investigations in that case, the court observed that "there has been no indictment." *In re Graphics Processing Units*, 2007 U.S.

---

[16] Heartland's argument is further undermined by its reliance on *Cumis, supra,* where the court analyzed a data breach complaint under the *Twombly* framework and found that an insurer that reimbursed credit unions for damages suffered as the result of a data breach stated plausible claims. *See* Def. Mem. at 9 (citing *Cumis Ins. Soc'y, Inc. v. Merrick Bank Corp.,* 2008 U.S. Dist. LEXIS 78451, at *14-15 (D. Ariz. Sept. 18, 2008)).

Dist. LEXIS 57982, at *25.  And *In re Flash Memory* is readily

distinguishable because the plaintiffs there sought discovery where the

parties "recognize that a Rule 26(f) conference has not [yet] been

conducted."[17]  *In re Flash Memory Antitrust Litig.*, 2007 U.S. Dist. LEXIS

95869, at *25.  In sum, these cases are factually distinguishable because (i)

Plaintiffs here clearly plead viable claims, (ii) at least one third party has

actually been indicted for his conduct related to the Data Breach, and (iii) the

parties have had their Rule 26(f) conference.[18]

The Supreme Court's recent opinion in *Ashcroft v. Iqbal*, 129 S. Ct.

1937 (2009), does not change this result.  As recognized by this Court in

*Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*, *Iqbal*

"elaborated on the pleading standards discussed in *Twombly*," setting forth "a

procedure for evaluating whether a complaint should be dismissed."  No. H-

09-0612, 2009 U.S. Dist. LEXIS 70732, at *7 (S.D. Tex. Aug. 12, 2009).

---

[17] It is also noteworthy that in *In re Flash Memory Antitrust Litig.*, the Department of Justice intervened in the MDL proceedings "for the purpose of seeking to limit discovery should it interfere with grand jury proceedings."  2007 U.S. Dist. LEXIS 95869, at *18.  In addition, the court, in *In re Flash Memory Antitrust Litig.* – which involved an alleged multi-party conspiracy –  expressed some concern that it would not know which defendants were "definitively named" until the consolidated amended complaint was filed. *Id.* at *20.  *See also id.* at *27 ("Allowing discovery before the filing of the amended consolidated complaints does not allow us to know who the parties are…We do not know at this time what defendants will ultimately be included in the consolidated complaints.").  Here, no government agency has intervened in the litigation  and Heartland is the only named defendant in any of the coordinated actions.

[18] *Compare* Docket Entry No. 14 at 1 ("The parties have conferred several times pursuant to FED. R. CIV. P. 26(f)."), *with* the Joint Case Management Statement filed by the parties in *In re Flash Memory Antitrust Litig.*, 2007 U.S. Dist. LEXIS 95869, at *26 ("Defendants believe it is premature at this time to conduct a meet and confer conference pursuant to Fed. R. Civ. P. 26(f).").

While *Iqbal* clarified the pleading standards set forth in *Twombly* (and made explicit that they apply to all motions to dismiss decided under FED. R. CIV. P. 8), it did not heighten the standard of review for a motion to dismiss.[19] *See Iqbal,* 129 S. Ct. at 1953. Rather, under both *Twombly* and *Iqbal,* "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 127 S. Ct. at 1974)). *Accord Borneo Energy,* 2009 U.S. Dist. LEXIS 70732, at *10 ("In accordance with the pleading principles described in *Twombly* and elaborated on in *Iqbal*, a complaint must allege more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). As will be demonstrated in the consolidated amended complaints and motion to dismiss briefing, Plaintiffs will readily meet the plausibility requirement of *Twombly* and *Iqbal.*

### 5. Plaintiffs' Initial Discovery Requests are Focused and Limited.

While Plaintiffs do not believe that a stay of discovery is appropriate, they are willing to narrow the scope of their initial discovery requests to alleviate Heartland's concern that, absent a stay, it will "immediately" begin incurring expenses for "preparing [] and defending employee and corporate depositions, taking party and non-party depositions, and responding to

---

[19] *See also Iqbal*, 129 S. Ct. at 1950 ("In keeping with these principles [from *Twombly*] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *id.* at 1949 (discussing the "working principles [that] underlie our decision in *Twombly*.").

numerous interrogatories and document requests propounded by two separate sets of plaintiffs."[20]  *See* Def. Mem. at 11-12.  Specifically, Plaintiffs in both Tracks are willing to limit the scope of the initial discovery to the following subjects, pending the Court's resolution of the motion to dismiss:

- Copies of the 2007 and 2008 QSA pre-Data Breach audits and related reports relating to Heartland's computer systems and data security measures.

- Copies of post-Data Breach forensic investigation reports.

- Documents and information pertaining to the Data Breach that have already been provided by Heartland and/or third parties to any governmental body and/or other entity investigating the Data Breach (such as Visa, MasterCard and/or PCI Standards certification body).

- Copies of relevant contracts between Heartland, on the one hand, and Visa, MasterCard, Heartland's acquiring bank(s), and a geographic/industry sample of Heartland's customers, on the other hand.

- Copies of all versions of the Visa and MasterCard regulations in effect, from November 2007 to the present.

- Copies of all documents pertaining to any settlement offer made by Heartland to any third parties regarding the Data Breach.

- Deposition of a Heartland witness or witnesses with knowledge of the Data Breach, the internal Heartland security measures in effect to prevent data breaches of this kind, Heartland's affirmative statements prior to the Data Breach regarding such security measures, and agreements between Heartland and Visa and Heartland and MasterCard.

---

[20] Heartland's purported concern with the number of interrogatories that will be served upon it is undermined by the fact that it has already agreed in the [Proposed] Case Management Order to be subject to up to forty (40) interrogatories in each Track.  *See* Exhibit 1 to Docket Entry No. 14 at § (VII)(D)(1)(b).  Heartland has likewise agreed to the time limits for the depositions of parties.  *Id.* at § (VII)(D)(1)(c).

- Deposition of a witness or witnesses with knowledge of the post-Data Breach forensic investigations, including any related reports, work papers and/or Heartland/investigator communications.

- Deposition of a witness or witnesses with knowledge of the 2007 and 2008 QSA pre-Data Breach audits and related reports, work papers and/or management letters.

These discovery topics are directed to preliminary issues that will likely be relevant to the Court's disposition of the motions to dismiss, such as choice of law issues, and the language contained in pertinent contracts.[21] And, since many of the above discovery topics will be directed towards third parties, Heartland's purported concerns with it incurring "significant time and expense" is unfounded.[22]

## CONCLUSION

Heartland's motion to stay all discovery at this preliminary stage of the case is procedurally premature, would unfairly prejudice Plaintiffs, and is based on the faulty premise that Plaintiffs' complaints are meritless. Respectfully, it should be denied.

/
/
/
/
/

---

[21] As the Court noted at the August 24, 2009 initial case management conference, relevant contracts can, in certain circumstances, be considered by the Court in deciding a motion to dismiss. *See Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007) ("…because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

[22] *See* Def. Mem. at 11.

Dated: August 31, 2009

Respectfully Submitted,

*/s/ Michael A. Caddell*
Michael A. Caddell
mac@caddellchapman.com
Cory S. Fein
csf@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar, #1070
Houston TX  77010
713.751.0400 (phone)
713.751.0906 (fax)

*/s/ Richard L. Coffman*
Richard L. Coffman
Texas Bar No. 04497460
THE COFFMAN LAW FIRM
First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
(409) 833-7700

*/s/ Joseph G. Sauder*
Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 W. Lancaster Avenue
Haverford, PA  19041
610-645-4717 (phone)
610-649-3633 (fax)
JosephSauder@chimicles.com

*Co-Lead Counsel and Liaison Counsel for the Financial Institution Track Plaintiffs*

*/s/ Ben Barnow*
Ben Barnow
Barnow and Associates, P.C.
One N. LaSalle Street, Ste 4600
Chicago, IL  60602
(312) 621-2000

_/s/ Lance A. Harke_
Lance A. Harke
Harke & Clasby, LLP
155 South Miami Ave.
Suite 600
Miami, FL  33130
(305) 536-8220

Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, D.C. 20007

Harold B. Gold
Wisener Nunnally Gold, L.L.P.
625 Centerville Road
Suite 110
Garland, TX  75041
(972) 840-9080

**_Co-Lead Counsel and Liaison
Counsel for the Consumer
Track Plaintiffs_**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 31st day of August 2009 with a copy of this document via the Court's CM/ECF system per the Local Rules.

/s/ Cory S. Fein
Cory S. Fein

22