**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| IN RE HEARTLAND PAYMENT | ) | |
| SYSTEMS, INC. DATA SECURITY | ) | |
| BREACH LITIGATION | ) | CIVIL ACTION NO. H-09-MD-02046 |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| FINANCIAL INSTITUTION TRACK | ) | |
| ACTIONS | ) | |
| | ) | |

---

**DEFENDANT HEARTLAND PAYMENT SYSTEMS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE FINANCIAL INSTITUTIONS' MASTER COMPLAINT**

---

<u>TABLE OF CONTENTS</u>

Page

I.    THE ENTITIES AND THEIR ROLES ...............................................................1

II.   THE INTRUSION AND PLAINTIFFS' CLAIMS FOR RELIEF......................................3

ARGUMENT ...............................................................................................................4

I.    THE MASTER COMPLAINT FAILS TO SATISFY THE *IQBAL* AND *TWOMBLY* PLEADING STANDARD ...............................................................4

II.   PLAINTIFFS' CLAIMS FOR NEGLIGENCE AND NEGLIGENCE *PER SE* MUST BE DISMISSED .......................................................................8

    A.    Texas Law Applies to Plaintiffs' Negligence Claims...............................8

    B.    Heartland Owes No Common-Law Duty to Plaintiffs..........................10

    C.    The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims.......................14

    D.    No Cause of Action for Negligence *Per Se* Exists for Violations of Industry Standards.................................................................17

III.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR NEGLIGENT OR INTENTIONAL MISREPRESENTATION...................................................18

    A.    Plaintiffs Have Not Alleged that Heartland Made Actionable Misrepresentations .......................................................................18

         1.    Plaintiffs Have Not Satisfied the Requirements of Rule 9(b)....................18

         2.    Plaintiffs Have Not Alleged Material Falsity ...........................20

    B.    Plaintiffs Have Not Alleged (Nor Could They) that They Were the Intended or Reasonably Foreseeable Recipients of Heartland's Alleged Misrepresentations .......................................................................21

         1.    Plaintiffs Were Not the Intended Recipients of the Alleged Misrepresentations .......................................................................21

         2.    Plaintiffs Were Not the Reasonably Foreseeable Recipients of the Allegedly False Statements and Omissions For Their Proper Business Purpose.................................................................23

         3.    Heartland Did Not Owe Any Duty of Disclosure to Plaintiffs .................24

TABLE OF CONTENTS
(CONTINUED)

Page

C.  Plaintiffs Cannot Base Negligent or Intentional Misrepresentation Claims Upon the Implied Misrepresentations Alleged Here .................................................25

D.  Plaintiffs Have Not Alleged Reliance on Heartland's Alleged Misrepresentations ...................................................................................................26

    1.  Plaintiffs Have Not Satisfied the Requirements of Rule 9(b)....................26

    2.  Any Reliance Alleged by Plaintiffs Was Unjustified As A Matter of Law ........................................................................................27

E.  Plaintiffs Have Not Alleged that Reliance on Heartland's Alleged Misrepresentations Is the Proximate Cause of Their Damages ............................28

IV.  PLAINTIFFS' CONSUMER PROTECTION CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM ...................................................28

A.  Choice Of Law.....................................................................................................28

B.  Plaintiffs Lack Standing To Bring Claims Under The New Jersey Consumer Fraud Act ...........................................................................................29

    1.  Plaintiffs' Claims Do Not Involve Consumer Transactions That Are Protected By The NJCFA ..........................................................29

    2.  Plaintiffs Are Not Commercial Competitors Of Heartland ......................31

C.  Plaintiffs Fail To State A Claim Under The NJCFA ...........................................31

    1.  Plaintiffs Do Not Allege That HPS Engaged In Unlawful Conduct..........32

        (a)  Plaintiffs Have Not Adequately Alleged That Heartland Made False And Misleading Statements...................................................32

        (b)  Plaintiffs Have Not Adequately Alleged That Heartland Committed Acts of Omission.........................................................33

        (c)  Plaintiffs Have Not Adequately Alleged That Heartland Committed Unconscionable Commercial Practices......................33

    2.  Plaintiffs Have Not Pled A Causal Relationship Between Their Alleged Ascertainable Losses And Heartland's Alleged Unlawful Conduct..........34

V.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ...............34

TABLE OF CONTENTS
(CONTINUED)

Page

A.    Plaintiffs Fail to State a Claim as Third-Party Beneficiaries to Any Contract, and the Contracts Expressly Show They Were Not ...............................................35

    1.    Heartland Contracts with the Acquiring Banks .........................................35

        (a)    Plaintiffs Fail to Allege Adequately that They Are Third-Party Beneficiaries of Heartland's Contracts with the Acquiring Banks, and the Contracts Expressly Show They Were Not.................................................... 35

        (b)    Plaintiffs Fail to Allege Adequately that Heartland Breached Its Contracts With the Acquiring Banks and Caused Plaintiffs Damages as a Result ......................................... 39

        (c)    Plaintiffs' Claim Under Heartland's Contracts with the Acquiring Banks Is Barred By the Contracts' Limitation of Damages Clauses ........................................................... 40

    2.    Heartland Contracts with Its Merchant Customers ...................................41

        (a)    Plaintiffs Fail to Allege Adequately that They Are Third-Party Beneficiaries of the Merchant Agreement, and the Contracts Expressly Show They Were Not.................................................... 41

        (b)    Plaintiffs Fail to Allege Adequately that Heartland Breached The Merchant Agreement and that any Breach Caused Damages....... 43

        (c)    Plaintiffs' Claim Under the Merchant Agreement Is Barred by the Agreement's Limitation-of-Liability Provisions .................... 44

    3.    Heartland's Alleged Contracts with Visa and MasterCard........................44

B.    Plaintiffs Have Failed to State a Claim for Breach of Implied Contract ...............45

CONCLUSION....................................................................................................................48

## TABLE OF AUTHORITIES

Page(s)

CASES

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
    437 F. Supp. 2d 273, 296 (D.N.J. 2006) ............................................................................31

*Adlong v. San Jacinto Methodist Hosp.*,
    No. 02-cv-00847, 2004 WL 811745, at *4 (Tex. App. Apr. 15, 2004) ..................................17

*Alampi v. Pegasus Group, L.L.C.*,
    No. L-929-06, 2008 WL 140952, at *6 (N.J. Super. Jan. 16, 2008)................................46, 47

*Alexander v. CIGNA Corp.*,
    991 F.Supp. 427, 435-36 (D.N.J. 1998)..............................................................................20

*Allgor v. Travelers Ins. Co.*,
    654 A.2d 1375, 1379 (N.J. Super Ct. App. Div. 1995)...........................................................44

*Arc Networks, Inc. v. Gold Phone Card Co.*,
    756 A.2d 636, 637 (N.J. Super. Ct. Law Div. 2000) ...........................................................29

*ASARCO LLC v. Americas Mining Corp.*,
    382 B.R. 49, 74 (S.D. Tex. 2007) ......................................................................................10

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937, 1949 (2009)....................................................................................... *passim*

*Banknorth, N.A. v. BJ's Wholesale Club, Inc.*,
    394 F. Supp. 2d 283, 287 (D. Me. 2005) ............................................................................15

*Banknorth, N.A. v. BJ's Wholesale Club, Inc.*,
    442 F. Supp. 2d 206, 212-14 (M.D. Pa. 2006)....................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)............................................................................................ *passim*

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785, 799 (N.D. Tex. 2009) .......................................................................19

*Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC*,
    No. 03-4317, 2009 WL 2999355 at *38 (D.N.J. 2009) ........................................................20

*Bosland v. Warnock Dodge, Inc.*,
    964 A.2d 741, 749 (N.J. 2009)...........................................................................................31

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
    226 F. Supp. 2d 557, 561 (D.N.J. 2002) .............................................................................30

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Brickey v. Concerned Care of Midwest, Inc.*,
 988 S.W.2d 592, 594 (Mo. Ct. App. 1999)...........................................................................39

*Broadway Maintenance Corp. v. Rutgers State Univ.*,
 90 N.J. 253, 260 (1982) .............................................................................................42, 43, 45

*Brunson v. Affinity Fed. Credit Union*,
 972 A.2d 1112, 1124-25 (N.J. 2009) ...................................................................................11

*Butler v. Acme Markets, Inc.*,
 445 A.2d 1141, 1144 n.1 (N.J. 1982).....................................................................................12

*Campi v. Seven Haven Realty Co.*,
 294 N.J. Super. 37, 43 (N.J. Super. Ct. Law Div. 1996) ......................................................47

*Carvalho v. Toll Bros. & Developers*,
 675 A.2d 209, 212 (N.J. 1996).............................................................................................11

*Cetel v. Kirwan Fin. Group, Inc.*,
 460 F.3d 494, 514 (3d Cir. 2006).....................................................................................29, 30

*Chmieleski v. City Prods. Corp.*,
 660 S.W.2d 275, 289 (Mo. Ct. App. 1983) (Missouri law) ........................................36, 37, 38

*Clement v. Consol. Rail Corp.*,
 130 F.R.D. 530, 538 (D.N.J. 1990).......................................................................................18

*Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*,
 29 S.W.3d 282, 290 (Tex. App. 2000)...................................................................................15

*Cole v. Laughrey Funeral Home*,
 869 A.2d 457, 462-63 (N.J. Super. Ct. App. Div. 2005) ..................................................22, 32

*Corrugated Paper Prods. v. Longview Fibre Co.*,
 868 F.2d 908, 910-11 (7th Cir. 1989) ...............................................................................41, 42

*Cox v. Sears Roebuck & Co.*,
 647 A.2d 454, 462 (N.J. 1994)...............................................................................................32

*CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club*,
 No. 05-1158, 2008 WL 2345865, at *4 (Mass. Super. Ct. June 4, 2008)..........................25, 27

*CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
 No. 05-1158, 2005 WL 6075375, at *2, 4-5 (Mass. Super. Ct. Dec. 7, 2005) .................15, 38

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Cumis Ins. Soc'y, Inc. v. Merrick Bank Corp.*,
No. 07-374, 2008 WL 4277877, at *7, 11-12 (D. Ariz. Sept. 18, 2008) ........................ *passim*

*Deangelo v. Exxon Corp.*,
1999 WL 31014043, at *5 (N.J. Super. Ct. App. Div. Oct. 15, 1999)....................................21

*Directv, Inc. v. Marino*,
No. Civ. 03-5606, 2005 WL 1367232, at *3 (D.N.J. June 8, 2005) ........................................30

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472, 477 (Tex. 1995)...........................................................................................14

*Dravo Corp. v. Robert B. Kerris, Inc.*,
655 F.2d 503, 510 (3d Cir. 1981)............................................................................................42

*DTEX, LLC v. BBVA Bancomer, S.A.*,
512 F. Supp. 2d 1012, 1028 (S.D. Tex. 2007) (Rosenthal, J.)............................................8, 10

*Eaton v. Eaton*,
575 A.2d 858, 862 (N.J. 1990).................................................................................................18

*El Chico Corp. v. Poole*,
732 S.W.2d 306, 311 (Tex. 1987)............................................................................................11

*Eli Lilly & Co. v. Roussel Corp.*,
23 F. Supp. 2d 460, 493 (D.N.J. 1998) ...................................................................................23

*Endre v. Arnold*,
692 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1997)................................................................10

*Executive Bd. of Mo. Baptist Convention v. Windmere Baptist Conf. Ctr.*,
280 S.W. 3d 678, 694 (Mo. Ct. App. 2009).......................................................................36, 37

*Gennari v. Weichart Co. Realtors*,
691 A.2d 350, 367 (N.J. 1997)...................................................................................18, 21, 22

*GlaxoSmithKline Consumer Healthcare, L.P. v. ICL Performance Prods., LP*,
No. 4:07cv2039 HEA, 2009 WL 2151190, at *5 (E.D. Mo. July 16, 2009) ...................36, 38

*Global Container Lines, Ltd. v. Int'l Bldg. Sys. LLC*,
No. H-04-0456, 2006 WL 870447, at *4 (S.D. Tex. Mar. 28, 2006) ......................................15

*Globe Motor Car Co. v. First Fidelity Bank*,
641 A.2d 1136, 1140 (N.J. Super. Ct. Law Div. 1993) .........................................23, 36, 42, 43

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Gourdine v. Felician College*,
2006 WL 2346278, at *7 (N.J. Super. Ct. App. Div. Aug. 15, 2006) ....................................28

*Graff v. Beard*,
858 S.W.2d 918, 920 (Tex. 1993) .............................................................................................11

*Granite State Ins. Co. v. UJEX, Inc.*,
No. 03-1220, 2005 WL 1618792, at *8 (D.N.J. 2005) .............................................................20

*Grauer v. Norman Chevrolet Geo*,
729 A. 2d 522, 524 (N.J. Super. Ct. App. Div. 1998)..............................................................30

*Greater Houston Transp. Co. v. Phillips*,
801 S.W.2d 523, 525 (Tex. 1990)............................................................................................11

*Green v. Gen. Motors Corp.*,
No. A-2831-01T-5, 2003 WL 21730592 at *8 (N.J. Super. Ct. App. Div. 2003) ..................24

*Griffin v. GK Intelligent Sys., Inc.*,
87 F. Supp. 2d 684, 687 (S.D. Tex. 1999) .......................................................................15, 19

*Hayden v. D'Amico*,
2009 WL 3079199, at *6 (N.J. Super. App. Div. Sept. 17, 2009) ...........................................33

*Healthcare Serv., Inc. v. Nat'l Prescription Admins.*,
867 F. Supp. 1223, 1226-27 (E.D. Pa. 1994) ........................................................................42

*Hernandez v. Ciba-Geigy Corp. USA*,
200 F.R.D. 285, 292 (S.D. Tex. 2001)....................................................................................31

*Hernandez v. Westoak Realty & Investment, Inc.*,
771 S.W.2d 876, 881 (Mo. 1989) ...........................................................................................41

*Holder v. Mellon Mortgage Co.*,
954 S.W.2d 786, 792 (Tex. App. 1997)...................................................................................17

*Hou-Tex, Inc. v. Landmark Graphics*,
26 S.W.3d 103, 105 (Tex. App. 2000).....................................................................................15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
613 F. Supp. 2d 108, 126-28 (D.Me. 2009).............................................................................15

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2009 WL 2043604, at *33 (D.N.J. July 10, 2009) ..............................19, 23

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*In re TJX Cos., Inc. Retail Sec. Breach Litig.*,
   246 F.R.D. 389, 398-99 (D. Mass. 2007) ..............................................................16

*In re TJX Cos., Inc. Retail Sec. Breach Litig.*,
   564 F.3d 489, 498-99 (1st Cir. 2009)............................................................ *passim*

*In re Vioxx Prods. Liability Litig.*,
   239 F.R.D. 450, 454 (E.D. La. 2006)....................................................................8

*Inox Wares Pvt. Ltd. v. Interchage Bank*,
   No. 06-4307, 2008 WL 4691906, at *8 (D.N.J. Oct. 22, 2008) .............................46

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
   31 F.3d 1259, 1273 (3d Cir. 1994)......................................................................29

*Jaasma v. Shell Oil Co.*,
   412 F.3d 501, 511 n.8 (3d Cir.2005).....................................................................44

*Joest Vibratech, Inc. v. North Star Steel Co.*,
   109 F. Supp. 2d 746, 749 (N.D. Ohio 2000).....................................................36, 37

*Karu v. Feldman*,
   574 A.2d 420, 425 (N.J. 1990).......................................................................18, 23

*Laclede Inv. Corp. v. Kaiser*,
   596 S.W.2d 36, 42-43 (Mo. Ct. App. 1980) ................................................36, 37, 38

*Lane v. Schmied*,
   2008 WL 351291, at *3 (N.J. Super. Ct. App. Div. Feb. 11, 2008) .......................20

*Lehman Bros. Holdings, Inc. v. Cornerstone Mortg. Co.*,
   No. H-09-0672, 2009 WL 2900740, at *4 (S.D. Tex. Aug. 31, 2009)
   (Rosenthal, J.) .........................................................................................4, 5, 8, 39

*Long v. Forchione*,
   No. L-83-150, 1983 WL 6980, at *3 (Ohio Ct. App. Oct. 28, 1983......................41

*Lucas v. Texas Inds., Inc.*,
   696 S.W.2d 372, 376-77 (Tex. 1984) ...................................................................10

*Maertin v. Armstrong World Indus., Inc.*,
   241 F. Supp. 2d 434, 461 (D.N.J. 2002) ..............................................................24

*Maghie & Savage, Inc. v. P.J. Dick Inc.*,
   No. 08AP-487, 2009 WL 1263965, at *11 (Ohio Ct. App. May 5, 2009) .......36, 38

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*,
   804 N.E.2d 979, 990 (Ohio Ct. App. 2004)................................................36, 37, 38

*Marrone v. Greer & Polman Construction, Inc.*,
   964 A.2d 330, 336 (N.J. Super. Ct. App. Div. 2009)................................................33

*Melder v. Morris*,
   27 F.3d 1097, 1102 (5th Cir. 1994) ................................................20

*Melton v. Borg-Warner Corp.*,
   467 F. Supp. 983, 986-87 (W.D. Tex. 1979) ................................................10

*Metric Inv. Inc. v. Patterson*,
   244 A.2d 311, 315 (N.J. Super. Ct. App. Div. 1968)................................................22

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
   No. 1:07-cv-02519, 2007 WL 4322796, at *3 (D.N.J. Dec. 6, 2007)....................................45

*Nardi v. Stevens Ins. of Tech.*,
   60 F. Supp. 2d 31, 44-45 (E.D.N.Y. 1999) ................................................42

*Owens v. Comerica Bank*,
   229 S.W.3d 544, 547 (Tex. App. 2007)................................................13

*P.V. ex rel. T.V. v. Camp Jaycee*,
   962 A.2d 453, 460 (N.J. 2008)................................................8

*Parker v. Howmedica Osteonics Corp.*,
   No. Civ. A. 07cv2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008)..........................31, 32

*People Express Airlines v. Consol. Rail Corp.*,
   495 A.2d 107, 112-113 (N.J. 1985) ................................................15, 23

*Plath v. Malebranche*,
   351 F. Supp. 2d 1338, 1341 (M.D. Fla. 2005) ................................................8

*Pugh v. Gen. Terrazzo Supplies, Inc.*,
   243 S.W.3d 84, 90-91 (Tex. App. 2007) ................................................15

*Purcell Tire & Rubber Co., Inc. v. Exec. Beechcraft, Inc.*,
   59 S.W.3d 505, 508-09 (Mo. 2001)................................................40

*Rachells v. Cingular Wireless*,
   483 F. Supp. 2d 583, 589 (N.D. Ohio 2007)................................................39

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Randolph v. Dimension Films,*
    630 F. Supp. 2d 741, 744-45 (S.D. Tex. 2009)................................................35, 41

*Reisenfeld & Co. v. Network Group, Inc.,*
    277 F.3d 856, 863 (6th Cir. 2002) ...................................................................36, 37

*Reynolds v. Gonzalez,*
    798 A.2d 67, 77 (N.J. 2002)..................................................................................14

*Roehrs v. Lees,*
    429 A.2d 388, 393 (N.J. Super. Ct. App. Div. 1981)...........................................43

*Ross v. Celtron Int'l Inc.,*
    494 F.Supp.2d 288, 304 (D.N.J. 2007) .................................................................28

*Russell-Stanley Corp. v. Plant Indus., Inc.,*
    595 A.2d 534, 549 (N.J. Super. Ct. Ch. Div. 1991)........................................25, 27

*S&W Enterprises, L.L.C. v. Southtrust Bank of Ala., N.A.,*
    No. Civ.A. 3:98-cv-2668-L., 2001 WL 238095, at *6 (N.D. Tex. Mar. 6, 2001) ..................35

*Saint Barnabas Med. Ctr. v. County of Essex,*
    111 N.J. 67, 77 (1988) ..........................................................................................46

*Saltiel v. GSI Consultants, Inc.,*
    788 A.2d 268, 278 (N.J. 2002)..............................................................................13

*Sandvik, Inc. v. Statewide Sec. Systems, Div. of Statewide Guard Services, Inc.,*
    469 A.2d 955 (N.J. Super. Ct. App. Div. 1983)....................................................44

*Shafer v. H.B. Thomas Co.,*
    146 A.2d 483, 486 (N.J. Super. Ct. App. Div. 1958)............................................13

*Shushany v. All-waste, Inc.,*
    992 F.2d 517, 520 (5th Cir. 1993) ........................................................................26

*Sony Elecs., Inc. v. Grass Valley Group, Inc.,*
    Nos. C-010133 and C-010423, 2002 WL 440749, at *3-4 (Ohio Ct. App. Mar. 22,
    2002) .....................................................................................................................37

*Southwest Props. Ltd v. Brinker Int'l Inc.,*
    No. 05-95-01721-CV, 1997 WL 407750, at *3 (Tex. App. Ct. July 22, 1997).....................22

*Sovereign Bank v. BJ's Wholesale Club, Inc.,*
    427 F. Supp. 2d 526, 533 (M.D. Pa. 2006) ..........................................................15

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162, 179-80 (3d Cir. 2008) ....................................................................15, 17

*Stouts-Brunswick Assocs. Ltd. P'ship v. Bankers Trust Co.*,
    No. CIV 99-3206 WGB, 2004 WL 5231629, at *6 (D.N.J. Dec. 27, 2004).........................27

*The BOC Group, Inc. v. Lummus Crest, Inc.*,
    597 A.2d 1109, 1112 (N.J. Super. Ct. Law Div. 1990) ....................................29, 30

*THPD, Inc. v. Cont'l Imports, Inc.*,
    260 S.W.3d 593, 618-19 (Tex. App. 2008) ........................................................11

*TLC Healthcare Servs., L.L.C. v. Enhanced Billing Servs., L.L.C.*,
    No. L-08-1121, 2008 WL 3878349, at *3 (Ohio Ct. App. Aug. 22, 2008) ...........................40

*Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., L.L.C.,*
    921 A.2d 1100, 1107-08 (N.J. 2007) .................................................................44

*Tractor-Trailer Supply Co. v. NCR Corp.*,
    873 S.W.2d 627, 631 (Mo. Ct. App. 1994)........................................................40

*Trammell Crow Cent. Texas, Ltd. v. Gutierrez*,
    267 S.W.3d 9, 12 (Tex. 2008)........................................................................12

*Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*,
    82 S.W.3d 691, 695 (Tex. App. 2002)...............................................................15

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
    655 A.2d 417, 430 (N.J. 1995) .......................................................................33

*Union Sav. & Loan Co. v. Cook*,
    186 N.E. 728, 731 (Ohio 1933) ......................................................................40

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370, 381 (5th Cir. 2004) ...................................................................19

*United States v. Gonzalez*,
    No. 09-626, 2009 WL 2499004 at *15-17 (D.N.J. Aug. 17, 2009) ...........................3

*Ventura v. Ford Motor Corp.*,
    433 A.2d 801, 806 (N.J. Super. App. Div. 1981) ................................................33

*Walker v. Harris*,
    924 S.W.2d 375, 377 (Tex. 1996)....................................................................12

TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Wanaque Borough Sewerage Authority v. Township of West Milford,*
    144 N.J. 564, 574 (1996) ...........................................................................45

*Weichert Co. Realtors v. Ryan,*
    608 A.2d 280, 284 (N.J. 1992)................................................................46, 47

*Wellenheider v. Rader,*
    227 A.2d 329, 332 (N.J. 1967)................................................................13, 14

*Wendling v. Pfizer, Inc.,*
    2008 WL 833549, at *6 (N.J. Super. Ct. App. Div. Mar. 31, 2008)......................28

*Zavala v. Trujillo,*
    883 S.W.2d 242, 246 (Tex. App. 1994).............................................................18

*Zielinski v. Prof'l Appraisal Assocs.,*
    740 A.2d 1131, 1135-36 (N.J. Super. Ct. App. Div. 1999) ..............................23, 27


**STATUTES**

15 U.S.C. § 1643...............................................................................................3

15 U.S.C. § 1693g.............................................................................................3

28 U.S.C. § 1391(a)(2)......................................................................................9

28 U.S.C. § 1407...............................................................................................8

N.J.S.A. §§ 56:8-1............................................................................................28


**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004)...............................................................41

Federal Rule of Civil Procedure 12(b)(6) ................................................ *passim*

Federal Rule of Civil Procedure 9(b)....................................................... *passim*

James W. Moore, et al., Moore's Federal Practice, § 9.03 (3.d 2003) .........................33

Restatement (Second) of Conflict of Law § 145 ...............................................8, 10

Restatement (Second) of Torts § 552..................................................................26

## PRELIMINARY STATEMENT

In their Master Complaint, Plaintiffs advance a series of claims against Heartland Payment Systems, Inc. ("Heartland") arising from a third-party criminal intrusion into Heartland's payment processing system (the "Intrusion"). Upon inspection, each of Plaintiffs' purported causes of action is solely premised on the occurrence of the Intrusion. The alleged wrongful conduct by Heartland is nowhere stated. The alleged tortious conduct committed by Heartland in relation to Plaintiffs is unarticulated. The alleged basis for asserting any contractual rights against Heartland is unspecified. Plaintiffs' argument is simply this: "the Intrusion happened, therefore you must be liable." Under *Ashcroft v. Iqbal*, such pleading warrants dismissal. *See* Argument at I, *infra*. Moreover, wholly apart from the *Iqbal* deficiencies, each cause of action is fundamentally flawed as a matter of law. *See* Argument at II-V, *infra*.

## PLAINTIFFS' ALLEGATIONS AND CLAIMS

### I.    THE ENTITIES AND THEIR ROLES

Plaintiffs are nine banks and credit unions that issue credit and debit cards (jointly, "payment cards") to their customers. Compl. ¶ 11-19. Payment card issuers like Plaintiffs enter into contracts with card brands such as Visa and MasterCard that entitle them to issue Visa- or MasterCard-branded payment cards to their customers, who in turn can tender the payment cards to merchants to pay for transactions. Compl. ¶ 26. Payment card issuers assume the cost of issuing cards and certain other operating costs, and they earn interest and transaction fees. The transaction fee for use of a payment card is collected in the first instance from the merchant by the merchant's "acquiring bank," which obtains authorization from the issuer for each transaction and credits the merchant's account for the purchase. The acquiring bank retains a portion of the transaction fee for itself and pays the balance to Visa or MasterCard, as appropriate. In turn, Visa or MasterCard keeps a portion for itself and pays the balance to the

card's issuer.  Processors such as Heartland contract with merchants and acquiring banks to handle the actual processing of the transactions.

Visa and MasterCard issue and update private rules and regulations ("Operating Regulations") meant to govern the participation of issuing banks and acquiring banks in the Visa and MasterCard systems.  The Operating Regulations require acquiring banks to include in contracts with merchants and processors provisions under which the merchants and processors agree to abide by the Operating Regulations.  Compl. ¶ 27.  These Operating Regulations purport to outline a series of particularized steps aimed at safeguarding data related to Visa and MasterCard transactions.  *See id.*

Heartland is a Delaware corporation with executive offices in Princeton, New Jersey, engaged in the business of processing payment card transactions.  *Id.* ¶ 10, 25.  Heartland's data processing facilities and personnel are located in Texas.[1]  The merchants who use Heartland's services consist principally of retailers too small to have their own processing facilities.  Johnson Decl., Ex. 1 at 1.  The acquiring banks for the transactions processed by Heartland are KeyBank, with principal offices in Columbus, Ohio, and Heartland Bank (no relationship to Heartland), with principal offices in St. Louis, Missouri.  *Id.* at 23 (the "Acquiring Banks").  The Acquiring Banks are required under their agreements with Visa and MasterCard to comply with the Operating Regulations, as is Heartland, by virtue of its contracts with the Acquiring Banks.  *See* Compl. ¶ 33.

---

[1]  *See* Heartland's 2008 SEC Form 10-K, appended as Ex. 1 to the Declaration of Anne E. Johnson ("Johnson Decl.") submitted herewith, at 3, 30, 40.  Heartland's 10-K and other public filings are cited in the Master Complaint, such that Heartland may cite to their contents without converting this motion into a motion for summary judgment.  *See Randolph v. Dimension Films*, 630 F. Supp. 2d 741, 745 (S.D. Tex. 2009) (Rosenthal, J.) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim.").

## II.    THE INTRUSION AND PLAINTIFFS' CLAIMS FOR RELIEF

On January 20, 2009, Heartland announced the Intrusion.  The Intrusion occurred at some point in 2008, Johnson Decl., Ex. 1, at 28, through the placement in Heartland's "Exchange" system of malicious software used to collect data in transit during the transaction authorization process.  *Id.* at 5, 10-11.  The indictment cited by Plaintiffs indicates that the intruders took several steps to conceal their presence on the Heartland system, including "disguising . . . the Internet Protocol addresses from which their attacks originated," "programming malware . . . to evade detection by anti-virus software and then testing the malware against approximately 20 different antivirus programs," and "eras[ing] computer files that would otherwise evidence its presence on the Corporate Victims' networks."[2]

Plaintiffs baldly assert that Heartland was itself to blame for the Intrusion.  They further assert that payment card account data stolen in the Intrusion was used to make fraudulent charges on their customers' accounts, which caused Plaintiffs to incur losses from reimbursing the fraudulent charges[3] and from the cost of reissuing the compromised payment cards.  Compl. ¶ 78.  Plaintiffs assert claims for negligence, negligence *per se*, negligent and intentional misrepresentation, violation of consumer protection statutes, and breach of contract.  *Id.* ¶ 9.

---

[2] *United States v. Gonzalez*, Cr. No. 09-626, 2009 WL 2499004, at *15-17 (D.N.J. Aug. 17, 2009).

[3] Under federal law and by agreement with the card brands, payment card issuers cover the costs of reimbursing customers for fraudulent charges on those cards.  *See* 15 U.S.C. § 1643 (placing $50 limit on cardholder liability for unauthorized use of credit card); 15 U.S.C. § 1693g (imposing limitations on debit cardholder liability); Visa U.S.A., Zero Liability, http://usa.visa.com/personal/security/visa_security_program/zero_liability.html (last visited Oct. 22, 2009) (providing for "zero liability" for unauthorized card use, effectively waiving $50 liability imposed by federal law); MasterCard, MasterCard® Zero Liability, http://www.mastercard.com/us/personal/en/cardholder services/zeroliability.html (last visited Oct. 22, 2009) (same).

## ARGUMENT

**I.    THE MASTER COMPLAINT FAILS TO SATISFY THE *IQBAL* AND *TWOMBLY* PLEADING STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), Plaintiffs must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Rather, the Master Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and Plaintiffs must "nudge their claims across the line from conceivable to plausible." *See id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As this Court has explained, in accordance with the pleading standards set forth in the Supreme Court's recent decisions in *Iqbal* and *Twombly*:

> A complaint must allege more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level. Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.

*See Lehman Bros. Holdings, Inc. v. Cornerstone Mortgage Co.*, No. H-09-0672, 2009 WL 2900740, at *4 (S.D. Tex. Aug. 31, 2009) (Rosenthal, J.) (internal citations and alterations omitted).

The Master Complaint is deficient in its entirety when judged (as it must be) by this standard. Plaintiffs have not presented factual allegations that plausibly support their claimed entitlement to relief. Instead, they repeatedly urge the Court to accept their *ipse dixit* assertion that, because the Intrusion occurred, Heartland must have done something wrong that makes Heartland liable for Plaintiffs' alleged losses. Plaintiffs, however, at no point plead specific *facts*

-4-

that would allow the Court to "draw the reasonable inference that [Heartland] is liable for the misconduct alleged," – as opposed to the simple truth, that Heartland, like many others, was the victim of a criminal attack.  *See Iqbal*, 129 S.Ct. at 1949.

Plaintiffs begin with the mere fact of the Intrusion.  Compl. ¶¶ 5, 35-39.  Plaintiffs then repeatedly state in conclusory fashion, without supporting facts, that Heartland failed to comply with industry standards for safeguarding payment card data, called the "PCI DSS."[4]  While the PCI DSS contains in excess of 220 separate data security requirements,[5] Plaintiffs nowhere state which particular standards or requirements were breached, or how they were supposedly breached.  Nor do they allege any facts explaining how Heartland's alleged non-compliance purportedly enabled the criminal Intrusion.  Plaintiffs simply blanketly assert that "had Heartland actually been in PCI compliance during the relevant time period, the Data Breach would not have occurred."  Compl. ¶ 117.  This assertion falls woefully short of the pleading standard imposed by *Iqbal* and *Twombly*.  *See Lehman Bros. Holdings*, 2009 WL 2900740, at *5 (dismissing counterclaim where defendant "simply alleged that a contract was breached by a failure properly to service the [subject] loans and to give notice").

Plaintiffs also rely heavily on allegations that Visa conducted an investigation of Heartland and "temporarily" removed the company from a list of PCI-DSS-compliant service providers on March 14, 2009, and that the Acquiring Banks were fined by Visa and MasterCard in connection with the Intrusion.  Compl. ¶ 7.  Plaintiffs do not allege, however, that Visa's "temporary" de-listing of Heartland was premised on factual findings that the company's system

---

[4] The "PCI DSS" is a set of security standards promulgated by the Payment Card Industry Security Standards Council, which in turn are sought to be imposed by Visa and MasterCard on entities that process payment card transactions.  *See, e.g.,* Compl. ¶ 101.

[5] *See* Payment Card Industry Data Security Standards, Version 1.1, released September 2006 and effective until December 31, 2008, *available at* https://www.pcisecuritystandards.org/security_standards/pci_dss_download.html.

was non-compliant at the time of the Intrusion.  Ironically, Plaintiffs quote a statement by a Visa executive that Heartland actually "had validated PCI compliance" prior to the Intrusion, *see id.* ¶ 62, and an excerpt of an interview by one of the Heartland's executives after the Intrusion stating that the company "was PCI compliant . . . [and was] certified in April [2008]," when Plaintiffs allege the Intrusion was in progress, *see id.* ¶ 73.  And again, Plaintiffs at no point allege which particular standards Visa supposedly alleged Heartland had violated, what those particular standards required and how Heartland failed to comply with those standards, or even if a standard were violated, or how Heartland's supposed non-compliance allegedly enabled the criminals to implement the Intrusion.  As a result, the alleged "Visa determination" does nothing to meet Plaintiffs' burden under *Iqbal* and *Twombly* of pleading *facts* to sustain their legal conclusion that Heartland was not compliant with the PCI DSS, which somehow caused the Intrusion.

Similarly, though Plaintiffs proffer the legal conclusion that Heartland "had a duty to put into place internal policies and procedures designed to detect and prevent the unauthorized dissemination" of payment card information, they nowhere allege facts plausibly showing that Heartland breached that alleged duty in a manner that caused the Intrusion.  Plaintiffs nowhere allege that Heartland failed to put in place any particular internal policies and procedures or that Heartland's existing measures were insufficient in any specific way.  Nor do they allege other facts supporting a claim that Heartland failed to take appropriate steps to safeguard payment data.  Instead, Plaintiffs point only to the fact that the Intrusion occurred.  They claim, on that basis alone and without any further factual support, that "Heartland, by and through its above negligent acts and/or omissions, unlawfully breached its duties."  Compl. ¶ 103.  This allegation falls far short of meeting the plausibility threshold that *Iqbal* and *Twombly* require.

Likewise, Plaintiffs allege misrepresentations by Heartland, to the effect that it had "state-of-the-art" security measures and facilities, that it took steps to limit the "sharing of non-public personal information," and that its "network configuration provide[d] multiple layers of security to isolate [its] databases from unauthorized access." *See* Compl. ¶ 4; *see also id.* ¶¶ 45-52. But Plaintiffs offer no supporting factual allegations that the identified statements were false or misleading when made. For example, Plaintiffs point to Heartland's "Merchant Bill of Rights," a segment of the company's website which states that merchants "have the right to . . . encrypted card numbers and secure transactions." *Id.* ¶ 48. Plaintiffs, however, nowhere provide any factual support for the proposition that Heartland failed to provide adequate encryption for payment card transactions. Under *Iqbal* and *Twombly*, the mere fact that Heartland subsequently suffered the Intrusion does not plausibly suggest that its statements about its data security measures must have been false at the time they were made.

Indeed, to the extent the Master Complaint alleges any facts at all, those facts all suggest that Heartland was victimized by a sophisticated criminal cyber-attack by Albert Gonzalez and his alleged co-conspirators, who relied on "unique malware . . . that permitted them to re-access the networks," and who "concealed their efforts to hack into computer networks by programming the malware to evade detection by anti-virus software, and [to] erase computer files that would otherwise evidence their unauthorized presence on the networks." *Id.* ¶ 65.[6] Plaintiffs themselves concede that Gonzalez has been indicted (and has now pled guilty) for hacking into the networks of multiple "other companies," *id.* ¶ 64, and remains the subject of a separate federal indictment for having allegedly perpetrated another major data breach.

---

[6] *See also* Compl. ¶ 39 (alleging that a "Heartland spokesperson described the 'malware' planted by the hackers as containing 'extremely sophisticated code.'"); ¶ 41 (describing "key-logging malware," specifically its ability to "covertly capture anything typed on an infected computer").

In sum, the Master Complaint fails to satisfy the touchstone of *Iqbal* and *Twombly* – that the complaint present "factual allegations that when assumed to be true raise a right to relief above the speculative level." *See Lehman Bros. Holdings, Inc.*, 2009 WL 2900740, at *3. For this important reason, the Master Complaint must be dismissed.

## II.     PLAINTIFFS' CLAIMS FOR NEGLIGENCE AND NEGLIGENCE *PER SE* MUST BE DISMISSED

### A.     Texas Law Applies to Plaintiffs' Negligence Claims

Where diversity actions have been consolidated or centralized for pre-trial purposes pursuant to 28 U.S.C. § 1407, the transferee court will apply the choice-of-law principles of the transferor court. *See, e.g., In re Vioxx Prods. Liability Litig.*, 239 F.R.D. 450, 454 (E.D. La. 2006); Manual on Complex Litigation, Fourth, § 20.132. Here, the transferor districts are the District of New Jersey, the Southern District of Florida, and the Southern District of Texas – all of which are situated in jurisdictions that follow the "most significant relationship" test outlined in Restatement (Second) of Conflict of Law for tort claims (hereinafter, the "Second Restatement").[7]

Under the Second Restatement, the contacts relevant to the choice of law for negligence claims include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See* Second Restatement, § 145. Plaintiffs allege New Jersey law should apply to

---

[7] *See DTEX, LLC v. BBVA Bancomer, S.A.*, 512 F. Supp. 2d 1012, 1028 (S.D. Tex. 2007) (Rosenthal, J.) (noting that Texas follows the §§ 6 and 145 of the Second Restatement); *Plath v. Malebranche*, 351 F. Supp. 2d 1338, 1341 (M.D. Fla. 2005) (observing that "Florida applies the 'significant relationship' test to resolve choice of law issues arising from tort claims," citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980)); *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (embracing the "Second Restatement's most significant relationship standard in tort cases," denoting an adjustment from the "governmental interests" analysis previously applied in New Jersey).

their negligence claims. *See* Compl., Counts II, IV. However, New Jersey is neither the place of incorporation nor the location of the principal offices of any of the named Plaintiffs. Each Plaintiff thus necessarily takes the position that the interests of its home state, the ostensible location of its alleged injuries, *see* Compl. ¶¶ 11-19, are outweighed by the relationship its negligence claims have to New Jersey as Heartland's principal place of business, *see* Compl. ¶ 10.

For purposes of this motion to dismiss, Heartland accepts Plaintiffs' position that the laws of their respective home states should not apply to their negligence claims; however, an analysis of the remaining contacts – particularly "the place where the conduct causing the injury occurred" – requires the application of Texas law, not New Jersey law, to Plaintiffs' negligence claims. Texas is the principal location of Heartland's information technology and security operations for processing payment card transactions, including both the relevant equipment and personnel and the computer network that was impacted by the Intrusion. *See* Johnson Decl., Ex. 1, at 30 (Heartland 2008 Form 10-K, stating that the "primary data center" for HPS Exchange, Heartland's payment processing platform, *see id.* at 3, is located in Allen, Texas, with an alternate processing site in Houston); *see also id.* at 40 (noting presence of an associated facility in Plano, Texas). Thus, Plaintiffs allege venue is proper in this district because it is a district "in which a substantial part of the events or omissions giving rise to the claim occurred." *See* Compl. ¶ 23 (pleading proper venue pursuant to 28 U.S.C. § 1391(a)(2)). Moreover, the JPML transferred these actions to this district in part because "[Heartland] and various plaintiffs maintain that discovery related to the data breach will be found in the Southern District of Texas." *See* Docket Entry No. 1 at 2. Indeed, a recent article authored by one of Plaintiffs' interim co-lead counsel himself notes that the JPML "transferred the litigation to Houston

principally because Heartland's IT operations giving rise to the breach, as well as the related witnesses, are located in Texas."  *See* Johnson Decl., Ex. 2.  Accordingly, the principal situs of the conduct at issue with respect to Plaintiffs' negligence claims is Texas, not New Jersey.

The Second Restatement recognizes that the law of the state where the defendant's conduct occurred often has particular relevance to determining whether the defendant satisfied standards of acceptable conduct, especially where, as here, the purported injury is dispersed among multiple states.  *See* Second Restatement, § 145, cmt. e ("When the injury occurred in two or more states . . . the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law."); *see also id.* (further noting that "when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance").  Applying these principles, courts have held that the law of the situs of the defendant's conduct is properly applied to a tort claim when other jurisdictions' contacts with the claim are comparatively less significant.[8]  Accordingly, Texas law should apply to Plaintiffs' negligence claims.  As shown below, under Texas law (and under New Jersey law as well, for that matter) those claims are subject to dismissal.

B.    Heartland Owes No Common-Law Duty to Plaintiffs

To prevail on a claim for negligence, Plaintiffs must allege that Heartland owes them a legal duty.  *See Lucas v. Texas Inds., Inc.*, 696 S.W.2d 372, 376-77 (Tex. 1984) (actionable negligence claim requires "the existence of a duty on the part of one party to another"); *see also Endre v. Arnold*, 692 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1997) (same).

---

[8] *See, e.g., ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49, 74 (S.D. Tex. 2007) (holding that Arizona law would govern civil conspiracy count, despite other contacts, because Arizona was where "any alleged conspiracy would have occurred"); *see also DTEX*, 512 F. Supp. 2d at 1028 (reasoning that Mexico had the most significant relationship to the claims, in part because "[t]he allegedly tortious acts, the 'conduct which caused the injury,' occurred in Mexico"); *Melton v. Borg-Warner Corp.*, 467 F. Supp. 983, 986-87 (W.D. Tex. 1979) (applying Texas law where conduct causing the injury, *i.e.*, the manufacturing of an allegedly defective product, occurred in Texas though defendants' principal places of business were located elsewhere).

To determine whether a duty exists at common law, Texas courts consider a number of factors, including "risk, foreseeability, and the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *see also Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) (courts may also consider "whether one party has superior knowledge of the risk, and whether a right to control the actor whose conduct precipitated the harm exists"). "[T]he foremost and dominant consideration [is] foreseeability of the risk." *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).[9]   Here, while Plaintiffs conclusorily assert that "it was reasonably foreseeable to Heartland that a breach of security was likely to occur under the circumstances and it would cause damages" to them, *see* Compl. ¶ 101, Plaintiffs put forth no *facts* plausibly supporting their allegation of foreseeability.

Moreover, considerations beyond those of foreseeability counsel against imposing the sweeping common-law duty that Plaintiffs would have this Court be the first to enunciate.  In particular, Texas law does not support the judicial creation of common-law tort duties where the class of plaintiffs that the duty would protect (here, payment card issuing financial institutions) has substantial ability to take action on its own to protect itself against the risk in question.  *See THPD, Inc. v. Cont'l Imports, Inc.*, 260 S.W.3d 593, 618-19 (Tex. App. 2008) (declining to find that defendant owed duty to plaintiff on grounds that plaintiff "was in a much better position to

---

[9] Similar principles apply under New Jersey law, which places "great stock on whether a party owes a duty to another before any considerations of liability may flow." *See Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1124-25 (N.J. 2009) (holding that bank could not be held liable for initiating criminal complaints against an identity theft victim based upon its negligent investigation of the fraud perpetrated by a criminal third party, reasoning that victim was a "total stranger" and policy considerations disfavored imposition of duty); *see also Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996) ("The ability to foresee injury to a potential plaintiff does not in itself establish the existence of a duty, but it is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate.").

guard against any risk of loss" and that the "test of [tort] liability is which party had the better opportunity to evaluate the risk of loss and the cost of avoiding it, and to act upon such a decision") (citations omitted).   Payment card issuers not only *have* the ability, they have *demonstrated* the ability to take action to protect themselves significantly against the risk of payment card data being stolen and misused, as reflected in the provisions of the Operating Regulations (discussed in Point II.C. *infra*) that contemplate issuers having in place significant fraud monitoring programs, as well as the opportunity to recover through Visa and/or MasterCard the costs from the responsible member.   Given their ability to significantly protect themselves against the risk of theft and misuse of payment card data, payment card issuers have no sound reason for asking that a common-law tort duty be judicially created to address that risk.

Further, Plaintiffs' contention that the common law imposes an obligation upon those who come into possession of "sensitive financial information" to safeguard that information against criminal attacks, *see* Compl. ¶ 101, has no case law support in Texas (or in New Jersey). To the contrary, to impose such a duty would ignore the well-established principle that "[g]enerally, a person does not have a duty to protect others from third-party criminal acts."  *See Trammell Crow Cent. Texas, Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008); *see also Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) ("As a general rule, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another.").[10]

Plaintiffs also contend that a common-law duty arises from Heartland's agreements with third parties and from Heartland's alleged implied contracts with Plaintiffs themselves. However, it is well-recognized that the existence of a contractual duty cannot, without more, create a separate duty in tort.  *See Riley v. Champion Int'l Corp*, 973 F. Supp. 634, 644 (E.D.

---

[10] *See also Butler v. Acme Markets, Inc.*, 445 A.2d 1141, 1144 n.1 (N.J. 1982) (similarly noting "general rule" that there "is no duty to control the conduct of a third person as to prevent him from causing harm to another," citing Restatement (Second) of Torts, § 315 (1965)).

Tex. 1997) (plaintiff must "show that the defendant breached a duty arising independent of the fact that a contract exists between the parties.") (citations and alterations omitted); *see also Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278 (N.J. 2002) (under New Jersey law, a party "cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care.").[11]

Finally, Plaintiffs contend that Heartland owes a common-law duty because industry standards exist, *see* Compl. ¶ 101, but both Texas and New Jersey courts have rejected this contention. *See, e.g., Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App. 2007) (holding that banks do not owe a duty to the general public based on industry standards); *see also Wellenheider v. Rader*, 227 A.2d 329, 332 (N.J. 1967) ("[P]roof of an industry custom is not dispositive of the question of duty."); *Shafer v. H.B. Thomas Co.*, 146 A.2d 483, 486 (N.J. Super Ct. App. Div. 1958) (holding that compliance with industry standards can considered in determining whether a defendant was negligent, not whether the defendant had a duty).

In fact, in the only reported decision on this issue in the data breach context, the court dismissed the negligence claims, reasoning that a payment card processor does not owe any duty to the credit unions allegedly injured by a similar unauthorized intrusion. *See Cumis Ins. Soc'y, Inc. v. Merrick Bank Corp.*, No. 07-374, 2008 WL 4277877, at *11-12 (D. Ariz. Sept. 18, 2008). In that case, the plaintiff, an insurer subrogated to the claims of credit unions, sought to recover "millions of dollars in indemnity payments to its credit union insureds for credit and debit card fraud losses," allegedly incurred from an unauthorized intrusion of a payment card processor, CardSystems Solutions. The defendants in the action included CardSystems' acquiring bank,

---

[11]  In any event, even if contractual duties were in and of themselves sufficient to create a common law duty to meet the requirements of the contract (which they are not), as explained *infra* at Point V., Plaintiffs were not intended third-party beneficiaries to Heartland's contracts with third parties, and an implied-in-fact contract was never formed between Plaintiffs and Heartland.  Accordingly, for this independent reason Plaintiffs' common-law duty allegation based on Heartland's alleged contractual duties is deficient.

Merrick Bank. Plaintiff's negligence claim turned on the allegation that the bank guaranteed the processor's compliance with industry rules and regulations and thus had "an ordinary duty of care to take reasonable measures to prevent foreseeable harm." *See id.* at *1, 12. The court held defendant owed no duty to the plaintiff insurer and its insureds, and dismissed plaintiff's negligence and negligent misrepresentation claims. *See id.* at *11-12.[12]

The reasoning of the *Merrick Bank* court is directly on point here. This Court should dismiss the negligence claims (*i.e.,* Counts II and IV) because Heartland owes no common-law duty to Plaintiffs.[13]

      C.      The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims

Plaintiffs' alleged damages in their negligence count consist entirely of "monetary damages" associated with "notifying their customers about the Data Breach, canceling, destroying and replacing credit cards and/or debit cards compromised by the Data Breach and/or absorbing unauthorized charges made on their customers' credit cards and/or debit cards." *See* Compl. ¶ 106. Several courts have held that the economic loss doctrine bars such claims. *See, e.g., In re TJX Cos., Inc. Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009) (affirming dismissal of issuing banks' negligence count on the basis of the economic loss

---

[12] The *Merrick Bank* court also denied a motion for reconsideration of this ruling, in which it reiterated that "[p]laintiff failed to adequately allege a duty owed by Defendants" to sustain its negligence claim. *See* Civ. No. 4:07-cv-374, Docket Entry No. 104 (D. Ariz. Nov. 3, 2008), Order at 3.

[13] Even if plaintiffs could establish that Heartland owed them a duty, they have failed to plead facts showing that their injuries were caused by a breach of that duty. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (element of negligence claim is "proximate cause" which consists of "cause in fact and foreseeability"); *Reynolds v. Gonzalez*, 798 A.2d 67, 77 (N.J. 2002) ("There must be evidence or reasonable inferences therefrom showing a proximate causal relation between defendant's negligence, if found by the jury, and the resulting injury."). Plaintiffs have not pointed to a single action or omission taken by Heartland that enabled the criminal intruders to gain access to its system.

doctrine under Massachusetts law); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 179-80 (3d Cir. 2008) (same under Pennsylvania law).[14]  This Court should do likewise.

Texas applies the economic loss doctrine not only in the traditional contexts where the parties are in privity or where a defective product damages itself,[15] but also to bar recovery in negligence actions where, as here, the plaintiff's claimed injury is purely economic in nature.[16] *See, e.g., Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 105 (Tex. App. 2000) (geological contractor used defendant's software pursuant to a license agreement to select an oil site, but the software contained a defect that resulted in plaintiff's drilling a dry well; court held that the economic loss doctrine barred plaintiff's negligence claim).[17]

---

[14] *See also CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, No. 05-1158, 2005 WL 6075375, at *2, 4-5 (Mass. Super. Ct. Dec. 7, 2005) (same under Massachusetts law); *see also Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 442 F. Supp. 2d 206, 212-14 (M.D. Pa. 2006); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526, 533 (M.D. Pa. 2006).  *But see In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 126-28 (D.Me. 2009); *Merrick Bank Corp.*, 2008 WL 4277877, at *7 (declining to order dismissal on basis of economic loss doctrine under Arizona's narrower construction of the rule); *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 394 F. Supp. 2d 283, 287 (D. Me. 2005).

[15] It is well-recognized that Texas applies the economic loss doctrine to preclude tort claims for economic losses that are "the subject matter of a contract" and to bar claims against the "manufacturer or seller of a defective product where the defect damages only the product itself."  *See Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90-91 (Tex. App. 2007).

[16] While New Jersey does not apply the economic loss doctrine as a complete bar against the recovery of purely economic losses in tort, *see People Express Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 116 (N.J. 1985), Plaintiffs' negligence claims would nonetheless be subject to dismissal even were New Jersey law to apply.  New Jersey precedent emphasizes that a defendant only has a duty to avoid negligently causing economic harm to "particular plaintiffs . . . comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct."  *See id.* at 263.  For the reasons set forth above, *see supra* at Point II.B., Plaintiffs do not adequately allege that Heartland owes them a common law duty.  *See id.* ("We stress that an identifiable class of plaintiffs is not simply a foreseeable class of plaintiffs.").

[17] *Accord  Global Container Lines, Ltd. v. Int'l Bldg. Sys. LLC*, No. H-04-0456, 2006 WL 870447, at *4 (S.D. Tex. Mar. 28, 2006) (collecting authorities); *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 696 (Tex. App. 2002) (barring airplane buyer's negligence-based claims against contractor that repaired plane prior to buyer's purchase); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 290 (Tex. App. 2000) (economic loss doctrine barred negligence claim by excavation business against gas company for carelessly marking gas lines).  As evidenced by these authorities, Texas' broad application of the doctrine is well-established.  *See Memorial Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (observing that, under "Texas's economic loss rule, however, no duty in tort exists when plaintiffs have suffered only economic losses," citing *Hou-Tex*, 26 S.W.3d at 107, and further noting that "[t]he Texas Supreme Court has unequivocally adopted a broad interpretation of the economic loss rule.").

Applying the economic loss doctrine to bar Plaintiffs' claims here is fully consistent with the rationale of the doctrine, *i.e.,* the protection of economic expectations is a matter best left to private ordering by consent, rather than public ordering by operation of law.  Here, the Operating Regulations contain detailed provisions governing the ability of members such as Plaintiffs to recover their losses in the event of an unauthorized disclosure of data caused by a violation of those regulations.  For example, MasterCard's regulations provide that an issuer may file a claim with MasterCard for reimbursement of fraud losses on accounts identified in a MasterCard security alert where such losses are caused by another member's violation of the regulations.[18] Those regulations also provide for the recovery from the responsible member of costs for card reissuance and monitoring of potentially compromised accounts.[19]  Visa's regulations contain an analogous recovery mechanism.[20]

Plaintiffs' contracts with Visa and MasterCard incorporate the Operating Regulations, under which Plaintiffs are required to reimburse their customers for unauthorized charges on their cards, but retain the right to seek directly from Visa and MasterCard reimbursement for losses they claim to have incurred by reason of such unauthorized charges.  By their participation

---

[18] *See* MasterCard Chargeback Guide, at § 5.10.4 (Apr. 24, 2009) , *available at*: http://www.mastercard.com/us/merchant/pdf/TB_CB_Manual.pdf.  Section 5.10.4 of the MasterCard Chargeback Guide sets forth detailed procedures for such a claim.

[19] *See* MasterCard Security Rules and Procedures – Merchant Edition, at § 10.3 (Jul. 31, 2009), *available at*: http://www.mastercard.com/us/merchant/pdf/SPME-Entire_Manual_public.pdf.  Section 10.3 of the MasterCard Security Rules and Procedures outlines how the costs of an "account data compromise" will be allocated across participants in the MasterCard system.  In particular, Section 10.3.4 states that an issuer "whose account data may have been placed at risk because of a possible compromise event can seek reimbursement of costs incurred for the reissuing of cards and monitoring of potentially compromised accounts that remain open."

[20] *See* Visa U.S.A. Inc. Operating Regulations Volume, Vol. II Dispute Resolution Rules, (Nov. 15, 2008), *available at*: http://usa.visa.com/download/merchants/visa-usa-operating-regulations2.pdf.  Section 3.3 of Volume II of the Visa Operating Regulations sets forth the general requirements for such claims and the standards by which they will be determined.  Chapter 4 of Volume II of the Visa Operating Regulations details the ADCR process, which provides for recovery, when, amongst other situations, a violation of the PCI DSS leads to the compromise of data on card's magnetic stripe.  *See also In re TJX Cos., Inc. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 398-99 (D. Mass. 2007) (describing ADCR as a methodology Visa enacted "to provide an efficient and cost-effective method of settling disputes arising out of account data compromises and resultant fraud").

in the Visa and MasterCard systems and their acceptance of the Operating Regulations, then, Plaintiffs have made their bargains regarding the allocation among system participants of the risk of criminal attacks such as the Intrusion. That being so, Plaintiffs should not now be permitted to unilaterally upend the contractually agreed upon allocation of that risk by suing Heartland in tort.

Against the backdrop of this well-developed regime for allocating risk among the various participants in the payment card industry, other courts have dismissed issuing banks' negligence claims as barred by the economic loss doctrine. *See, e.g., Sovereign Bank*, 533 F.3d at 165-66, 179-80 (noting that under Visa's Operating Regulations "a loss resulting from fraudulent charges using stolen data is *allocated to the Issuer*," and describing regulations' "comprehensive provisions for resolving disputes between Visa members," noting that all "Members" of the Visa network, as well as merchants by virtue of their contracts with their acquiring banks, agree to abide by Visa's Operating Regulations); *see also In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498-99 (1st Cir. 2009). This Court should as well.

D. No Cause of Action for Negligence *Per Se* Exists for Violations of Industry Standards

Plaintiffs also assert in Count IV a claim for "negligence *per se*." Claims for negligence *per se* arise only where the plaintiff alleges that the defendant engaged in conduct barred by *statute*. *See Holder v. Mellon Mortgage Co.*, 954 S.W.2d 786, 792 (Tex. App. 1997); *see also Adlong v. San Jacinto Methodist Hosp.*, No. 02-847, 2004 WL 811745, at *4 (Tex. App. Apr. 15, 2004). Here, Plaintiffs do not allege a violation of a statute. Instead, Plaintiffs' claim is premised on the bare bones allegation that "Heartland was required . . . to comply with, *inter alia*, the applicable industry standards[.]" Compl. ¶ 115. Because Plaintiffs do not allege a

-17-

violation of a statute, this Court should dismiss Count IV.[21]

## III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR NEGLIGENT OR INTENTIONAL MISREPRESENTATION

Counts V and VI of the Master Complaint assert claims under New Jersey law for negligent and intentional misrepresentation.[22]  To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that (1) the defendant negligently provided false information, (2) the plaintiff is a reasonably foreseeable recipient of the defendant's statements for its proper business purpose, (3) the plaintiff justifiably relied on the defendant's statements, (4) and the statements are the proximate cause of the plaintiff's damages.  *Karu v. Feldman*, 574 A.2d 420, 425 (N.J. 1990).  The elements of a claim for fraud, or intentional misrepresentation, are the same, except that the plaintiff must also allege scienter.  *Gennari v. Weichart Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997).  The Master Complaint fails to meet these well-established requirements for pleading either misrepresentation claim.

A.    <u>Plaintiffs Have Not Alleged that Heartland Made Actionable Misrepresentations</u>

1.    Plaintiffs Have Not Satisfied the Requirements of Rule 9(b)

Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Where a claim of negligent misrepresentation is based upon the same factual allegations as a fraud claim, plaintiffs are bound to satisfy the requirements of Rule 9(b) for both, even if pled as separate counts.  *Berry v.*

---

[21] Under Texas law, negligence *per se* is not a separate cause of action, but rather is evidentiary, *i.e.,* a means of proving the breach of duty element of a common law negligence claim.  *See Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex. App. 1994).  While New Jersey law recognizes negligence *per se* as a separate cause of action, a negligence *per se* claim exists only where a statute explicitly adopts a common law standard of care for negligence, not for violations of industry standards that have not been promulgated via statute.  *See Eaton v. Eaton*, 575 A.2d 858, 862 (N.J. 1990); *see also Clement v. Consol. Rail Corp.*, 130 F.R.D. 530, 538 (D.N.J. 1990) (failure to comply with a company rule cannot constitute negligence *per se* under New Jersey law).

[22] Plaintiffs have alleged (in the headings of Counts V and VI) that New Jersey law applies to their negligent misrepresentation and intentional misrepresentation claims, evidently contending that New Jersey was where Heartland made the alleged misrepresentations that are the basis for those claims.  For purposes of its motion to dismiss, Heartland does not dispute that New Jersey law governs these particular claims.

*Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 799 (N.D. Tex. 2009); *see also In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06cv5744, 2009 WL 2043604, at *32 (D.N.J. Jul. 10, 2009).   In order to satisfy Rule 9(b), Plaintiffs must allege *how* the statements listed in the Master Complaint were false and misleading and what information Heartland failed to disclose that would have made them not misleading.   *See Griffin v. GK Intelligent Sys.*, *Inc.*, 87 F. Supp. 2d 684, 687 (S.D. Tex. 1999) (Rule 9(b) requires that the plaintiff "explain why the statements were fraudulent"); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) ("Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.") (quoting MOORE'S FEDERAL PRACTICE § 9.03 (3d. 2003)).

Under the heading "Heartland's Representations and Omissions Regarding its Security Measures," Plaintiffs quote a series of statements regarding security practices at Heartland that they claim to have discovered in a company 10-K, a website, and a "Merchant Bill of Rights." Compl. ¶¶ 45-52.   Yet not once do Plaintiffs point to a specific statement and allege *how* the statement was false or misleading.   Plaintiffs even fail to specify when, if at all, they even saw these statements, prior to learning that Heartland had suffered an intrusion.   Moreover, Plaintiffs nowhere plead specific facts that Heartland omitted to disclose, or specify how any such omitted facts made Heartland's affirmative statements misleading.   *See* Compl. ¶¶ 45-52.   For this reason alone, Rule 9(b) mandates that Plaintiffs' negligent and intentional misrepresentation claims be dismissed.

Moreover, with respect to intentional misrepresentations, Plaintiffs also must allege scienter, and in doing so, conclusory allegations "that defendants possess fraudulent intent will

not satisfy Rule 9(b)." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  Plaintiffs allege only that Heartland made affirmative misrepresentations and failed to disclose material facts about its security measures, and that a data security breach subsequently occurred.  These allegations, by themselves, do not suggest "conscious behavior" by Heartland, let alone a Heartland motive to make intentional misrepresentations.   For this separate reason, Plaintiffs' intentional misrepresentation claim must be dismissed under Rule 9(b).

       2.       Plaintiffs Have Not Alleged Material Falsity

Heartland's alleged misrepresentations are all statements of vague opinion and puffery that involve terms such as "significant emphasis," "highest," "state of the art," "superior," and "most trusted."  Compl. ¶¶ 45, 47, 48, 51.  Under New Jersey law, such statements cannot form the basis for claims of negligent or intentional misrepresentation.  *Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC*, No. 03cv4317, 2009 WL 2999355, at *38 (D.N.J. Sept. 22, 2009) (statements that "the houses were built on natural homesites and were a good place to raise children" are mere puffery); *Granite State Ins. Co. v. UJEX, Inc.*, No. 31220, 2005 WL 1618792, at *8 (D.N.J. Jul. 11, 2005) (misrepresentation claims could not be based on estimates that are by nature imprecise and merely expressions of opinion).

Moreover, the statements cited by Plaintiffs are, when distilled, mere predictions that Heartland's security was such that Heartland would not incur an intrusion, in the future.  Such forward looking statements are not actionable.  *Alexander v. CIGNA Corp.,* 991 F. Supp. 427, 435-36 (D.N.J. 1998) ("Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong"); *see also Lane v. Schmied*, 2008 WL 351291, at *3 (N.J. Super. Ct. App. Div. Feb. 11, 2008) (plaintiff home buyer did not

allege a false statement based on seller's comments that she did not expect any future problems with drainage system).

In addition, Plaintiffs have not alleged *material* falsity, given the context in which the statements were made. Specifically, the very same securities filings that are the linchpin of Plaintiffs' misrepresentation claims made clear that, despite all the security measures Heartland had taken, Heartland could still be the victim of a criminal intrusion. *See* Johnson Decl., Ex. 3, Heartland Payment Systems, Inc., 2006 Form 10-K (filed Mar. 9, 2007), at 25 ("Our computer systems could be penetrated by hackers and our encryption of data may not prevent unauthorized use."); *Deangelo v. Exxon Corp.*, 1999 WL 34014043, at *5 (N.J. Super. Ct. App. Div. Oct. 15, 1999) (holding that disclaimers and waivers in document precluded plaintiff from relying on alleged misrepresentations).

> B.    Plaintiffs Have Not Alleged (Nor Could They) that They Were the Intended or Reasonably Foreseeable Recipients of Heartland's Alleged Misrepresentations

Under New Jersey law, a party may claim fraud only if it is the intended recipient of a false statement, and may state a claim for negligent misrepresentation only if it is the reasonably foreseeable recipient of the statement for its proper business purpose. Plaintiffs cannot meet either requisite.

> 1.    Plaintiffs Were Not the Intended Recipients of the Alleged Misrepresentations

In order to be liable for intentional misrepresentation, a defendant must have made the allegedly false statement with the intent that the *plaintiff* rely upon it. *Gennari*, 691 A.2d at 367. Plaintiffs do not base their fraud claim on any statements Heartland made directly to them. Rather, Plaintiffs rely entirely on statements that were made in Heartland's securities filings or

on analysts' calls, Compl. ¶¶ 45, 56, or on its website, Compl. ¶¶ 46-49.[23]  The securities filings

and analysts' calls were made not to payment card issuers, but to prospective or current

stockholders.  Plaintiffs were never the intended recipients.  Indeed, Plaintiffs evidently were not

recipients *at all*, given that the Master Complaint nowhere alleges that, prior to the Intrusion,

Plaintiffs had ever read or even heard any of these statements.[24]  Additionally, the website

statements cited in the Master Complaint (including the "Merchant Bill of Rights") are on their

face directed to the merchants whom Heartland services – not payment card issuers.  Compl. ¶

25.  Again as well, Plaintiffs nowhere claim to have ever read the website statements prior to the

Intrusion.

At best, then, if they ever in fact received those statements, Plaintiffs were no more than

*indirect* recipients of the alleged misrepresentations on which their fraud claim is based.  New

Jersey law permits fraud claims by indirect recipients only if the statements were communicated

for the purpose of being repeated to that party.  *Metric Inv. Inc. v. Patterson*, 244 A.2d 311, 315

(N.J. Super. Ct. App. Div. 1968) (held insufficient that "defendants knew, on the basis of their

prior credit transactions that [the initial recipient of representation] might probably or would to a

substantial certainty repeat the credit information to some third person").  Here, the Master

Complaint could not assert that the alleged misrepresentations were made for the purpose of their

---

[23] The Master Complaint also includes reference to alleged statements by Heartland's officers concerning Heartland's response to the Intrusion, *see, e.g.*, Compl. ¶¶ 7, 70, 73-77, but does not allege that these statements were false or misleading or that Plaintiffs relied upon them.  Regardless, Plaintiffs could not base their misrepresentation claims on statements made *after* the discovery of the Intrusion.  *See, e.g., Cole v. Laughrey Funeral Home*, 869 A.2d 457, 462-63 (N.J. Super. Ct. App. Div. 2005) ("A crucial factor required by *Gennari* not present here is that the alleged misrepresentations (the publication of the obituary, the response to the telephone query concerning a viewing, the recommendation against an open casket and the failure to inform of the private viewing) were all acts done after the contract for funeral services was entered into between Tracy and Laughrey. The misrepresentations alleged here were, therefore, not misrepresentations made to induce the buyer to make the purchase of funeral services from Laughrey.").

[24] *See Southwest Props. Ltd v. Brinker Int'l Inc.*, No. 05-95-01721-CV, 1997 WL 407750, *3 (Tex. App. Ct. 1997) (plaintiff's alleged reliance upon statements in securities filings failed to state an actionable claim where plaintiff did not review the annual report "from the perspective of someone buying stock").

being repeated to Plaintiffs.  As a matter of law, then, the misrepresentations alleged in the Master Complaint cannot support a fraud claim, because Plaintiffs were not the intended recipients.

### 2.    Plaintiffs Were Not the Reasonably Foreseeable Recipients of the Allegedly False Statements and Omissions For Their Proper Business Purpose

Nor can the misrepresentations alleged in the Master Complaint sustain a negligent misrepresentation claim.  While New Jersey does not require privity between parties to a negligent misrepresentation claim, the plaintiff nonetheless must be a reasonably foreseeable recipient of the false information for its proper business purpose.  *Karu*, 574 A.2d at 425.  New Jersey courts have noted that typical negligent misrepresentation claims involve suits by non-clients against professionals such as accountants, attorneys, surveyors and architects, all of whom perform their work knowing and expecting that the client will in turn present their work to others who will rely upon it.  *People Express*, 495 A.2d at 112-13.  The Master Complaint nowhere asserts that, or sets forth any reason why, Heartland should have expected payment card issuers to take guidance from its securities filings, its analysts' calls, or its website – and indeed, Plaintiffs nowhere suggest they ever in fact read these materials and took such guidance.  To the contrary, Plaintiffs recognize that Heartland provides payment processing and other services to *merchants*, Compl. ¶ 25, thus negating the proposition that Heartland supplied this information for the guidance of payment card issuers.  *See, e.g., Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 493 (D.N.J. 1998) (Eli Lilly could not allege a negligent misrepresentation claim based on alleged misrepresentations by a competitor because Eli Lilly was not the reasonably foreseeable recipient of such statements.).[25]  Because Plaintiffs were not reasonably foreseeable

---

[25] New Jersey courts reject negligent misrepresentation claims by parties that receive the representations, even if they rely upon them, if they are not members of the limited group for whose benefit the information was prepared and provided.  *See Zielinski v. Prof'l Appraisal Assocs.*, 740 A.2d 1131, 1135-36 (N.J. Super. Ct. App. Div. 1999)

recipients of Heartland's alleged misrepresentations for their proper business purpose, their claim for negligent misrepresentation should be dismissed.

 3.   Heartland Did Not Owe Any Duty of Disclosure to Plaintiffs

Plaintiffs also base their fraud claim on allegations that Heartland intentionally withheld material facts about its security measures despite a "duty to speak." Compl. ¶ 127. Under New Jersey law, a claim for intentional misrepresentation may be based on fraudulent concealment only where the defendant is under a duty to disclose the allegedly withheld facts. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 461 (D.N.J. 2002). Such a duty to disclose exists in three circumstances: "(1) where a fiduciary relationship exists between the parties, (2) where the transaction itself calls for 'perfect good faith and full disclosure', or (3) where one party 'expressly reposes a trust and confidence in the other.'" *Id.* (citations omitted).

Plaintiffs have not alleged a relationship with Heartland that creates a duty to disclose. Under the authorization process described in paragraph 28 of the Master Complaint, there is *no* direct or substantive communication between Heartland and the Plaintiffs. The absence of any meaningful contact between Heartland and payment card issuers in the authorization process precludes a fiduciary relationship or one of special trust and confidence that created a duty to disclose. In any event, whether or not Plaintiffs and Heartland had direct contact as part of the process, nothing in the Master Complaint plausibly suggests that the transaction authorization process involves anything other than arm's-length relationships between the sophisticated participants in that process. And, in *Maertin*, the district court held that no duty to disclose exists

---

(home purchasers did not state a claim for negligent misrepresentation against appraiser that inspected property and prepared a report for lending institution); *Globe Motor Car Co. v. First Fidelity Bank*, 641 A.2d 1136, 1140 (N.J. Super. Ct. Law Div. 1993) (audited company was not the reasonably foreseeable recipient of inspection done for bank of number of vehicles on premises); *see also In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *33 (D.N.J. July 10, 2009) (plaintiffs – health and welfare funds, third party payors, and consumers – were not "reasonably foreseeable recipients" of misrepresentations to doctors regarding off-label use).

between parties to an arm's length negotiation.  *Id.  Accord Green v. Gen. Motors Corp.*, No. 2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003) (automobile manufacturers had no duty to disclose design defects because no fiduciary relationship existed between the parties, and the manufacturers did not do "anything to encourage plaintiffs to repose special trust or confidence in their advice, thereby inducing plaintiffs' reliance").

      C.     Plaintiffs Cannot Base Negligent or Intentional Misrepresentation Claims Upon the Implied Misrepresentations Alleged Here

Plaintiffs allege in the alternative that "by accepting and agreeing to process the credit cards and/or debit cards issued by Plaintiffs, Heartland impliedly agreed that it would adequately protect the sensitive information contained in these cards as well as comply with applicable standards to safeguard data."  Compl. ¶ 52.  New Jersey law, however, does not permit negligent or intentional misrepresentation claims to be based on passive implied representations.  For example, in *Russell-Stanley Corp. v. Plant Indus., Inc.*, 595 A.2d 534, 549 (N.J. Super. Ct. Ch. Div. 1991), plaintiffs alleged that the "passive approval" of an assignment of leases by the landlord constituted a representation that there was no environmental contamination caused by the prior tenant.  The court held that such "passive approval" did not constitute an implied representation actionable as either an intentional or negligent misrepresentation.  *Id.*

Other courts addressing misrepresentation claims based on implied promises to comply with industry data security standards have rejected such theories.  In *CUMIS Ins. Soc'y, Inc. v. BJ's Wholesale Club*, No. 05-1158, 2008 WL 2345865 (Mass. Super. Ct. June 4, 2008), plaintiffs were an insurance society and credit unions who alleged that they relied on the implied representations of BJ's Wholesale Club that it would comply with Visa's and MasterCard's data security requirements.  The court rejected plaintiffs' implied representation claims, noting that "the regulations upon which the plaintiffs claim to have relied, themselves indicate that the

system is not guaranteed to be foolproof, as they provide for an elaborate dispute resolution procedure and for fines for non-compliance." *Id.* at *4; *see also In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d at 494 ("It would almost surely stretch Massachusetts law too far to say that merely doing credit card transactions with issuing banks . . . is a representation implied by conduct to third parties that the defendants were complying with detailed security specifications of Visa and MasterCard.  The implication is implausible and converts the cause of action into liability for negligence – without the limitations otherwise applicable to negligence claims."). Although *CUMIS* and *TJX* addressed claims under Massachusetts law, Massachusetts, like New Jersey, has adopted the Restatement (Second) of Torts § 552 standard for negligent misrepresentation claims.  Plaintiffs' misrepresentation claims thus cannot be sustained based upon implied representations of the nature alleged in the Master Complaint.

D.　　Plaintiffs Have Not Alleged Reliance on Heartland's Alleged Misrepresentations

In order to state a valid claim under New Jersey law for negligent or intentional misrepresentation, Plaintiffs must allege that they justifiably relied upon Heartland's alleged misrepresentations.  They have not done so.

1.　　Plaintiffs Have Not Satisfied the Requirements of Rule 9(b)

As described in Point III.A.1 *supra*, Rule 9(b) requires that Plaintiffs allege reliance on Heartland's alleged false statements with particularity, including in detail *how* they relied upon Heartland's statements.  *Shushany v. All-waste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993). Plaintiffs, however, nowhere allege what actions they took or refrained from taking based upon Heartland's statements, or what Heartland purportedly gained thereby.  Plaintiffs merely state, in conclusory fashion, that they "justifiably relied."  Compl. ¶ 125.  Such bare statements do not satisfy Rule 9(b).

2.      Any Reliance Alleged by Plaintiffs Was Unjustified As a Matter of Law

Plaintiffs' only allegation of reliance is that "Heartland knew that by virtue of their membership in the Visa and MasterCard Networks, Plaintiffs and the Class members (*i.e.*, issuing banks) relied on Heartland to employ appropriate data security measures."  Compl. ¶ 123. It is unreasonable to think that sophisticated financial institutions with substantial deposits relied on Heartland in deciding whether to issue payment cards that were processed not only by Heartland, but also by numerous other processors, as well as tens of thousands of merchants worldwide.[26]  Even were it plausible that Plaintiffs in fact did rely on Heartland's alleged misrepresentations in this fashion, any such reliance was unreasonable and unjustifiable as a matter of law.[27]  In *Russell-Stanley Corp.*, 595 A.2d at 550, the court held that the plaintiff's alleged reliance upon defendant landlord's approval of the lease assignment as a representation that no environmental contamination existed was unreasonable as a matter of law, given that plaintiff and the prior tenant "entered into an escrow arrangement to fund any [environmental contamination] clean-up."  Here, given that the Visa and MasterCard regulations "provide for an elaborate dispute resolution procedure and for fines for non-compliance" with the industry data security standards, *see CUMIS Ins. Soc'y, Inc.*, 2008 WL 2345865, at *4, Plaintiffs must have entered into and remained in the payment card business fully appreciating and anticipating the risk that data could be compromised, and could not reasonably have done so in reliance on the data security measures taken by any one particular participant in that business.

---

[26] Like the plaintiffs in *CUMIS*, any claim by Plaintiffs that they entered into or remained in the payment card business in reliance on Heartland's misrepresentations regarding its data security measures is fatally belied by Plaintiffs' having remained in that business even after discovering the alleged falsity of Heartland's alleged misrepresentations.  *See CUMIS*, 2008 WL 234585, at *4.

[27] *Stouts-Brunswick Assocs. Ltd. P'ship v. Bankers Trust Co.*, No. Civ. 99-3206, 2004 WL 5231629, at *6 (D.N.J. Dec. 27, 2004) (sophisticated parties could not have justifiably relied on alleged oral representations of defendant regarding right to terminate not expressed within partnership agreement); *Zielinski*, 740 A.2d at 1136 (plaintiff's reliance was unreasonable where plaintiff alleged that the approval of its mortgage contained implicit representations by the appraiser as to the condition of the property).

E.   Plaintiffs Have Not Alleged that Reliance on Heartland's Alleged Misrepresentations Is the Proximate Cause of Their Damages

Under New Jersey law, a plaintiff claiming misrepresentation must allege that its reliance upon defendants' misrepresentations was the proximate cause of its injuries.[28]   Plaintiffs claim damages in the form of the costs to reissue payment cards and to reimburse customers for fraudulent charges.   Compl. ¶ 78.   However, Plaintiffs do not allege that Heartland's *misrepresentations* induced them to incur these costs.   To the contrary, they assert that their damages are "a direct and proximate result of the Data Breach," Compl. ¶ 6, which would have occurred *whether or not* Heartland had made the misrepresentations in question.   Plaintiffs accordingly have not alleged that Heartland's alleged misrepresentations were the proximate cause of their alleged damages.   For this reason as well, the negligent and intentional misrepresentation claims should be dismissed.[29]

## IV.   PLAINTIFFS' CONSUMER PROTECTION CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

A.   Choice Of Law

For the purposes of this motion to dismiss, Heartland accepts Plaintiffs' allegation in Count VII that New Jersey's consumer protection statute is the governing consumer protection statute in this case.   *See* New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1 – 56:8-20.   To Heartland's understanding, Counts VIII – X are pled in the alternative to Count VII, and

---

[28] *Ross v. Celtron Int'l Inc.*, 494 F. Supp. 2d 288, 304 (D.N.J. 2007) (holding that plaintiff could not demonstrate harm as a result of reliance on alleged misrepresentation of stock ownership in securities filings, because the securities filings did not form basis of plaintiff's belief that he was entitled to issuance of stock); *Gourdine v. Felician College*, 2006 WL 2346278, at *7 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (holding that nursing students could not demonstrate damage from reliance on alleged misrepresentation regarding cancelled program because the students ultimately obtained the expected degree and qualifications through placement in another program).

[29] *See Wendling v. Pfizer, Inc.*, 2008 WL 833549, at *6 (N.J. Super. Ct. App. Div. Mar. 31, 2008) (holding that plaintiffs failed to demonstrate a causal connection between allegedly false advertisement for medication and the horse's illness because there was no evidence that "had plaintiffs not relied on the advertisement in their treatment of the horse's condition, 'Always Special' would not have been infested with tapeworms and died from the infestation.").

are intended to come into play only if the NJCFA is not, as Plaintiffs allege, the governing state consumer protection statute as to all Plaintiffs. Accordingly, Counts VIII – X should be dismissed as moot. Moreover, because as shown below Plaintiffs have failed to state a claim under the NJCFA, Count VII should be dismissed as well.

B.     Plaintiffs Lack Standing To Bring Claims Under The New Jersey Consumer Fraud Act

Plaintiffs' effort to claim the presumed benefits of the NJCFA in proceeding against Heartland founders, at the threshold, because the NJCFA is available only to consumers or Heartland's commercial competitors. Plaintiffs are neither.

1.     Plaintiffs' Claims Do Not Involve Consumer Transactions That Are Protected By The NJCFA

The NJCFA is designed to protect "consumers who purchase 'goods or services generally sold to the public at large.'" *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella,* 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997). "The entire thrust of the Act is pointed to products and services sold to consumers in the popular sense." *Cetel*, 460 F.3d at 514 (citing *Arc Networks, Inc. v. Gold Phone Card Co.,* 756 A.2d 636, 637 (N.J. Super. Ct. Law Div. 2000)) (internal quotations omitted). Pursuant to the NJCFA, the New Jersey Division of Consumer Affairs has identified exemplar conduct to which the NJCFA applies, such as "automotive repairs and advertising, delivery of household furniture and furnishings, disclosure of refund policies in retail establishments, home improvement practices, merchandise advertising, the servicing and repair of home appliances and the sale of animals and meat." *Arc Networks*, 756 A.2d at 638. For a corporation to qualify for protection under the NJCFA, the conduct at issue must place the corporation in a "consumer oriented situation." *The BOC Group, Inc. v. Lummus Crest, Inc.*, 597 A.2d 1109, 1112 (N.J. Super. Ct. Law Div. 1990).

-29-

Consistent with the foregoing principles, courts have held that the NJCFA does not apply to transactions involving services or goods not offered generally to consumers at large, or that a typical consumer would not be expected to purchase. *See J & R Ice Cream Corp. v. California Smoothie Licensing Corp.,* 31 F.3d 1259, 1273 (3d Cir. 1994) (sale of a commercial franchise restaurant); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 561 (D.N.J. 2002) (general account management services related to a wholesale purchase of pharmaceutical products); *BOC Group*, 597 A.2d at 1109 (contract for the design, engineering and site operation services offered at a chemical refining process plant). Here, the payment card processing services that Heartland offers are never sold to consumers in the general public, and they certainly are not sold to payment card issuers such as Plaintiffs. Rather, as acknowledged by the Master Complaint, Heartland sells payment card transaction processing services to *merchants*. Compl. ¶¶ 2, 24. Because the NJCFA is not designed to address alleged fraud unless it arises from "products and services sold to consumers in the popular sense," the NJCFA does not apply to the Heartland services described in the Master Complaint. *See Cetel*, 460 F.3d at 514-15 (holding that claims related to the sale of employee insurance plans to small businesses, which were never made available to the general public, were not viable under the NJCFA because the claims did not involve consumer transactions). Moreover, even if the NJCFA applied to these transactions, it would not apply here to Plaintiffs, because they were not the "consumers" of those services. *See Grauer v. Norman Chevrolet Geo*, 729 A. 2d 522, 524 (N.J. Super. Ct. App. Div. 1998) (denying NJFCA claim where plaintiff had not actually purchased one of the defendant's automobiles and was not a *bona fide* consumer); *Directv, Inc. v. Marino*, No. Civ. 03-5606, 2005 WL 1367232, at *3 (D.N.J. June 8, 2005) (holding that a person who never purchased the defendant's television broadcasting service lacked standing under the

NJCFA).

### 2.   Plaintiffs Are Not Commercial Competitors Of Heartland

Plaintiffs blanketly assert that they are commercial competitors of Heartland and, as such, have standing to bring suit against Heartland under the NJCFA.   Compl. ¶ 133.   Nowhere, however, do they offer a single factual allegation to support that assertion.   This type of conclusory pleading is insufficient to state an NJCFA claim, not only under *Iqbal* and *Twombly* (see Point I. *supra*), but under New Jersey law itself.   In *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 296 (D.N.J. 2006), a cigar retailer asserted that it was a commercial competitor of an internet search engine company in an attempt to establish standing under the NJCFA.   The court concluded that the cigar company had merely offered a "conclusory statement" that the two entities were commercial competitors, but alleged no facts to support the claim.   *Id.*   The court then granted summary judgment for the internet search company on the NJCFA claims, because the cigar company lacked standing to bring its claims.   *Id.*   Just as in *800-JR Cigar*, there are no factual allegations in the Master Complaint to suggest that Plaintiffs' businesses of issuing payment cards are in competition with Heartland's payment card transaction processing business.

Because Plaintiffs are neither consumers of Heartland's services nor commercial competitors with Heartland's business, Plaintiffs lack standing to bring claims against Heartland under the NJCFA, and Count VII of the Master Complaint should be dismissed.

### C.   Plaintiffs Fail To State A Claim Under The NJCFA

Apart from its above-discussed standing defects, the Master Complaint falls short of pleading a claim under the NJCFA.   To establish a prima facie claim under the NJCFA, a plaintiff must show: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."   *Bosland v.*

-31-

*Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). All three elements are prerequisites to any suit under the NJCFA, *id.*, and to state a fraud claim under the NJCFA all three elements must be pled with the specificity required under Rule 9(b).[30]

      1.      Plaintiffs Do Not Allege That HPS Engaged In Unlawful Conduct

Actionable unlawful conduct under the NJCFA generally falls into one of three categories: affirmative acts, knowing omissions, and specific regulatory violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). Plaintiffs allege no "specific regulatory violations," but instead attempt to plead the "unlawful conduct" prong of pleading an NJCFA claim by asserting in only the vaguest of terms that Heartland (a) made false and misleading statements, (b) committed "acts of omission," and (c) engaged in unconscionable commercial practices. Compl. ¶ 135. None of these assertions is supported, however, by the factual allegations necessary to plead "unlawful conduct."

      (a)      Plaintiffs Have Not Adequately Alleged That Heartland Made False And Misleading Statements

In order to plead an actionable false and misleading statement under the NJCFA, "the [alleged] misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Cole v. Laughrey Funeral Home*, 869 A.2d 457, 462 (N.J. Super. Ct. App. Div. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997)). As shown above in Point III., Plaintiffs have not pled how Heartland's alleged misrepresentations were false or misleading, or how they induced Plaintiffs to engage in any conduct. Plaintiffs' NJCFA claim thus lacks the

---

[30] "[NJ]CFA claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Parker v. Howmedica Osteonics Corp.*, No. 07cv2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (citing *Naporano Iron & Metal Co. v. Am. Crane Co.*, 79 F. Supp. 2d 494, 510 (D.N.J. 2000)); *see also Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 292 (S.D. Tex. 2001) (applying Rule 9(b) to NJCFA claims under the procedural rules of a Texas federal court).

specificity required by Rule 9(b) insofar as it is based on alleged false and misleading statements. *See Parker*, 2008 WL 141628, at *3.

    (b)    Plaintiffs Have Not Adequately Alleged That Heartland Committed Acts of Omission

"To prove that . . . acts of omission constituted consumer fraud, plaintiff must show that the defendant intentionally concealed the information . . . with the intention that plaintiff would rely on the concealment, and that the information was material to the transaction." *Marrone v. Greer & Polman Construction, Inc.*, 964 A.2d 330, 336 (N.J. Super. Ct. App. Div. 2009) (quoting *Judge v. Blackfin Yacht Corp.,* 815 A.2d 537, 542 (N.J. Super. Ct. App. Div. 2003). The Master Complaint contains nary a reference to a specific act of omission committed by Heartland.  Nor does it allege facts that would show Heartland acted with an intent to conceal information from Plaintiffs.  *See* discussion in Point III., *supra*.  Absent any such allegations, the NJCFA claim also must be dismissed insofar as it is based on intentional omissions.

    (c)    Plaintiffs Have Not Adequately Alleged That Heartland Committed Unconscionable Commercial Practices

For conduct to be an "unconscionable commercial practice," it must involve bad faith or unfair dealing.  *Hayden v. D'Amico*, 2009 WL 3079199, at *6 (N.J. Super. App. Div. Sept. 17, 2009) (citing *Cox*, 647 A.2d at 462).  For example, a mere breach of contract or mere negligence without "substantial aggravating circumstances," does not in and of itself amount to an unconscionable commercial practice for NJCFA purposes.  *Hayden*, 2009 WL 3079199, at *6; *see also Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995) (comparing unconscionable practices to "actual malice," and not negligence, in the defamation context);  *Ventura v. Ford Motor Corp.*, 433 A.2d 801, 806 (N.J. Super. App. Div. 1981) (equating unconscionable commercial practices only to gross negligence).

In asserting their NJCFA claim, Plaintiffs have not alleged nor presented any facts from

which it would be plausible to conclude that Heartland acted in bad faith, engaged in unfair dealing, or had a malicious intent prior to the Intrusion in regard to its data security practices.  To the contrary, the Master Complaint affirmatively *negates* the proposition that Heartland acted unconscionably, as Plaintiffs concede that their claims arise out of Heartland's having been victimized when its "processing system was breached by a hacker" and suspicious files were placed on its system by malicious software that created those files.  Compl. ¶¶ 35, 37.  Thus, far from alleging bad faith, unfair dealing, or a malicious intent, Plaintiffs acknowledge Heartland's "understand[ing] that this incident may be the result of a widespread global cyber fraud operation," and admit that "[Heartland is] cooperating closely with" law enforcement in regard to the Intrusion.  *Id.* ¶ 38.  Accordingly, the Master Complaint fails to allege that Heartland committed unconscionable commercial practices.

> 2.  Plaintiffs Have Not Pled A Causal Relationship Between Their Alleged Ascertainable Losses And Heartland's Alleged Unlawful Conduct

Plaintiffs do not claim that they are merchants who purchased payment card processing services from Heartland and then suffered losses as a result of those transactions.  The Master Complaint is also devoid of specific allegations of purported misrepresentations or acts of omission causing the Intrusion (*see* Point III.E.), or of purported negligent conduct or breaches of contract causing the Intrusion (*see* Point II.B.; Point V.A.1(b)), and therefore it fails to allege facts showing causation of their alleged losses.  As such, Plaintiffs have failed to plead this required element of their NJCFA claim, which must be dismissed for this reason as well.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT

Notwithstanding the conceded absence of any written contract between Plaintiffs and Heartland, Plaintiffs nonetheless allege a claim for breach of contract in Count I, on the theory that they may proceed as third-party beneficiaries of contracts between Heartland and others, and

in Count III on the theory that a contract between Plaintiffs and Heartland is somehow "implied." Both of Plaintiffs' contract theories fail as a matter of law.

> A.    Plaintiffs Fail to State a Claim as Third-Party Beneficiaries to Any Contract, and the Contracts Expressly Show They Were Not

Although Plaintiffs claim to be intended beneficiaries of contracts between Heartland and others, they point to no specific contract in support of this theory. Instead, Plaintiffs' third-party beneficiary claim relies generally on whatever contracts may exist between Heartland and a range of "various entities" – including ("without limitation") Heartland's merchant customers, the Acquiring Banks, and Visa and/or MasterCard. Compl. ¶ 95. This is pure pleading by guesswork – and conclusory guesswork at that – which in itself warrants dismissal of the claim under *Iqbal*.[31]

Moreover, even if the contracts on which Count I is based had been identified with the specificity required by *Iqbal*, that count would still be subject to dismissal. As discussed below, several other courts have rejected attempts in data breach cases to assert third-party beneficiary claims of this nature on facts like those present here. This Court should do the same.

> 1.    Heartland Contracts with the Acquiring Banks

Prior to the filing of the Master Complaint, Heartland supplied Plaintiffs with copies of its agreements with the Acquiring Banks. Plaintiffs failed to cite either agreement in pleading their third-party beneficiary claim, however, because neither supports that claim.

> > (a)    Plaintiffs Fail to Allege Adequately that They Are Third-Party Beneficiaries of Heartland's Contracts with the Acquiring Banks, and the Contracts Expressly Show They Were Not

Heartland's agreements with the Acquiring Banks expressly stipulate that they are

---

[31] Even before *Iqbal* and *Twombly*, courts in the Fifth Circuit refused to "make unwarranted deductions of fact" that plaintiffs were third-party beneficiaries on motions to dismiss. *S&W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*, No. 3:98cv2668-L., 2001 WL 238095, at *6 (N.D. Tex. Mar. 6, 2001).

governed by the laws of Missouri (in the case of Heartland Bank) and Ohio (in the case of

KeyBank), respectively.[32] Under both Missouri and Ohio law, only *intended* third-party

beneficiaries may sue to enforce a contract to which they are not a party. *Executive Bd. of Mo.*

*Baptist Convention v. Windmere Baptist Conference Ctr.*, 280 S.W. 3d 678, 694 (Mo. Ct. App.

2009); *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 863 (6th Cir. 2002) (applying

Ohio law).  And, it must be clear from the "terms of the contract itself"[33] that "the benefit to the

third party was the cause of the creation of the contract," *Chmieleski v. City Prods. Corp.*, 660

S.W.2d 275, 289 (Mo. Ct. App. 1983) (Missouri law),[34] or that the parties entered into the

contract "directly or primarily" for the third party's benefit, *Reisenfeld*, 277 F.3d at 863 (Ohio

law).  Moreover, only a "creditor beneficiary" or a "donee beneficiary" of the contract may

recover.  *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 42-43 (Mo. Ct. App. 1980); *Mark-It*

*Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 804 N.E.2d 979, 990 (Ohio Ct. App.

2004).[35]  In addition, a contractual provision explicitly disclaiming a third party as a beneficiary

will be enforced as written.  *See Maghie & Savage, Inc. v. P.J. Dick Inc.*, No. 08AP-487, 2009

WL 1263965, at *11 (Ohio Ct. App. May 5, 2009); *GlaxoSmithKline Consumer Healthcare, L.P.*

---

[32] Heartland has submitted as Exhibits 4 and 5 to the Johnson Declaration its contracts with the Acquiring Banks. *See Randolph v. Dimension Films,* 630 F. Supp. 2d 741, 744 (S.D. Tex. 2009) (on motion to dismiss defendant may attach, and court may consider, documents referred to in the complaint and central to plaintiff's claim).  Both contracts contain explicit choice-of-law provisions.  See Johnson Decl., Ex. 4, ¶ 4.11 (designating Missouri law), and Ex. 5, ¶ 4.11 (designating Ohio law).

[33] *Executive Bd. of Mo. Baptist Convention*, 280 S.W.3d at 694 (internal quotation omitted); *see also Joest Vibratech, Inc. v. North Star Steel Co.*, 109 F. Supp. 2d 746, 749 (N.D. Ohio 2000) ("the clear terms of the contract").

[34] In other words, the plaintiff must be "a party for whose *primary* benefit the other parties contracted." *Executive Bd. of Mo. Baptist Convention v. Windmere Baptist Conference Ctr.*, 280 S.W. 3d 678, 694 (Mo. Ct. App. 2009) (emphasis added).

[35] "A party is a 'creditor beneficiary' if the performance of the promise satisfies a duty owed by the *promisee* to the beneficiary." *Mark-It Place Foods*, 804 N.E.2d at 990-91 (emphasis added); *see also Laclede Inv. Corp.*, 596 S.W.2d at 43 (similar definition).  "By contrast, a party is a 'donee beneficiary' if performance of the promise is meant to bestow some gratuitous benefit rather than to satisfy a legal obligation." *Mark-It Place Foods*, 804 N.E.2d at 991; *see also Laclede Inv. Corp.*, 596 S.W.2d at 42-43 (similar definition).

*v. ICL Performance Products, LP*, No. 4:07cv2039, 2009 WL 2151190, at *5 (E.D. Mo. July 16, 2009) (citing *L.A.C. v. Ward Parkway Shopping Cent. Co.*, 75 S.W.3d 247, 260 (Mo. 2002)).

Plaintiffs' third-party beneficiary claim fails as a matter of law for three independent reasons. *First,* there is no indication in the "clear terms" of Heartland's contracts with the Acquiring Banks that any "benefit" to Plaintiffs was the "cause of the creation of the contract[s]," *Chmieleski*, 660 S.W.2d at 289; *Joest Vibratech, Inc.*, 109 F. Supp. at 749, or that Heartland and the Acquiring Banks entered into the contracts "directly or primarily" for the benefit of Plaintiffs, *Reisenfeld*, 277 F.3d at 863. Indeed, the contracts do not even *mention* Plaintiffs, nor mention payment card issuers more generally. Courts applying Ohio and Missouri law have denied third-party beneficiary status in the face of much stronger indicia of intent in the language of the contracts to benefit the purported third-party beneficiary. *See, e.g., Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 2002 WL 440749, at *3-4 (Ohio Ct. App. Mar. 22, 2002) (denying third-party beneficiary status even where the construction contract explicitly required that the third party's parts be used in the project); *Executive Bd. of Mo.*, 280 S.W.3d at 695 (denying third-party beneficiary status even though the contract conferred voting power and property rights upon the third party).

*Second*, Plaintiffs do not (and cannot) satisfy the requirement, under both Missouri and Ohio law, that a non-party to a contract must be either a "creditor beneficiary" or a "donee beneficiary" of the contract in order to sue as a third-party beneficiary. *See Laclede*, 596 S.W.2d at 42-43; *Mark-It Place Foods, Inc.,* 804 N.E.2d at 990. Nowhere do Plaintiffs allege, much less allege facts plausibly suggesting, that the *Acquiring Banks* (the alleged promisees) owed a duty to Plaintiffs that Heartland was required to discharge under the terms of Heartland's contracts with the Acquiring Banks. Nor could they have done so. As noted above, Heartland's contracts

with the Acquiring Banks do not even mention Plaintiffs, much less any duty owed by the Acquiring Banks to Plaintiffs, and hence they plainly contain no provision requiring Heartland to discharge such duty.  Plaintiffs therefore are not creditor beneficiaries.  Nor do Plaintiffs allege, and nor do the Acquiring Bank contracts suggest, that the Acquiring Banks intended to bestow a gift on Plaintiffs by Heartland's performance of its contracts with the Acquiring Banks.  Plaintiffs therefore are not donee beneficiaries.  Rather, Plaintiffs are, at most, "incidental" beneficiaries of Heartland's contracts with the Acquiring Banks – mere fellow participants in the payment card industry – who were never intended to have the right to enforce those contracts. *Mark-It Place Foods*, 804 N.E.2d at 990-91; *Laclede*, 596 S.W.2d at 42-43.[36]

*Third*, Plaintiffs' assertion that they are intended beneficiaries of Heartland's contracts with the Acquiring Banks is disclaimed by the contracts themselves, since any undertaking in the contracts to comply with Visa's and MasterCard's data security regulations[37] necessarily incorporates those regulations' explicit disclaimers of issuing banks as third-party beneficiaries thereof.  *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig..,* 564 F.3d at 499 (affirming district court's decision that because the card brands' regulations disclaim issuers as third-party beneficiaries, a contract incorporating those regulations also disclaimed issuers as beneficiaries), *aff'g* 524 F. Supp. 2d 83, 90 (D. Mass. 2007).[38]  Those explicit disclaimers are enforceable against Plaintiffs under both Missouri and Ohio law.  *See Maghie & Savage, Inc.*, 2009 WL 1263965, at *11; *GlaxoSmithKline*, 2009 WL 2151190, at *5; *see also CUMIS Ins. Soc., Inc. v.*

---

[36] Both of these contracts restrict assignment.  Johnson Decl., Exs. 4 & 5, ¶ 4.1.  These restrictions further indicate that the parties did not intend to permit enforcement by third parties such as Plaintiffs.  *See Chmieleski*, 660 S.W.2d at 288.

[37] *See* Johnson Decl., Exs. 4 & 5, ¶ 1.1(f).

[38] *See also* Visa U.S.A. Inc. Operating Regulations, Volume 1 – General Rules, at § 1.2C (Nov. 15, 2008) (current version), *available at:* http://usa.visa.com/download/merchants/visa-usa-operating-regulations.pdf ; MasterCard Rules, at § 3,1 (June 3, 2009) (current version), *available at*: http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf.

*BJ's Wholesale Club, Inc.*, 23 Mass.L.Rptr. 550, at *2 (Mass. Super. Ct. 2005) (holding in data breach case that issuing banks were expressly disclaimed under Ohio law as third-party beneficiaries).

> (b)    Plaintiffs Fail to Allege Adequately that Heartland Breached Its Contracts With the Acquiring Banks and Caused Plaintiffs Damages as a Result

Further, even if Plaintiffs somehow had rights as third-party beneficiaries of Heartland's contracts with the Acquiring Banks, Plaintiffs fail to allege adequately that Heartland breached those contracts or that any such breach caused Plaintiffs' damages.   As for breach of the Acquiring Bank contracts, Plaintiffs allege only that those contracts required Heartland to take "appropriate steps to safeguard the sensitive financial information of the customers of" Plaintiffs, and that Heartland failed to do so.  Compl. ¶¶ 96, 98-99.  Plaintiffs, however, fail to point to any contractual requirement that Heartland supposedly breached, and allege no *facts* plausibly suggesting that Heartland did indeed breach any such requirement.   Such a "bare-bones allegation [of breach of contract] neither provides fair notice of the claim nor of the grounds on which it rests," and for this reason alone Plaintiffs' third-party beneficiary claim, to the extent it relies on Heartland's contracts with the Acquiring Banks, should be dismissed.  *Lehman Bros. Holdings, Inc.*, 2009 WL 2900740, at *5 (dismissing similarly conclusory contract claim under Rule 12(b)(6)); *see Iqbal*, 129 S. Ct. at 1949.

As for causation,[39] Plaintiffs aver in a conclusory fashion that Heartland's alleged breach "directly and/or proximately caused" Plaintiffs "to suffer substantial damages."   Nowhere do Plaintiffs allege *facts*, however, demonstrating that any breach by Heartland caused the Intrusion,

---

[39] Under both Missouri and Ohio law, to state a breach of contract claim, a plaintiff must plead that it suffered damages as a result of the defendant's alleged breach of the contract.  *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 594 (Mo. Ct. App. 1999); *Rachells v. Cingular Wireless*, 483 F. Supp. 2d 583, 589 (N.D. Ohio 2007).

or that the Intrusion in turn caused their claimed damages.  Rather, the best Plaintiffs can offer is a "reported[]" statement by Visa, *one of Heartland's other potential adversaries with regard to the Intrusion*, that in Visa's opinion the data breach would not have occurred had Heartland been vigilant about maintaining PCI compliance.  Compl. ¶¶ 61-62.  Obviously, the fact that Visa – *an organization that includes among its members several of these very same Plaintiffs* – reportedly voiced this opinion no more validates that opinion than the fact that Plaintiffs themselves have expressed the same opinion.  And, of course, Visa's "opinion" is not a valid substitute for specific factual allegations.

      (c)      Plaintiffs' Claim Under Heartland's Contracts with the Acquiring Banks Is Barred By the Contracts' Limitation of Damages Clauses

Count I fails to state a claim under Heartland's contracts with the Acquiring Banks for the further reason that Plaintiffs' claimed damages are barred by the provisions in the contracts expressly limiting remedies.[40]  These provisions state that "damages will be limited to general money damages" not to exceed "the actual damages of the party," and that "[i]n *no* case will the other party be responsible for special, incidental, [or] consequential" damages absent willful breach of the contract.  Johnson Decl., Exs. 4 & 5, ¶ 4.7 (emphasis added).

The damages Plaintiffs seek, to the extent they resulted from Heartland's conduct or omissions at all, are plainly "special" or "consequential," and thus are barred by the above-quoted contractual provisions.   Plaintiffs seek reimbursement for a laundry list of expenses that were not "necessary," or "usual" or "direct" damages from Heartland's alleged failure to have in place the contractually required data security measures:   specifically, costs of re-issuing

---

[40] Express limitation-of-remedy clauses such as the ones in these contracts are enforceable under both Missouri and Ohio law.  *See Purcell Tire & Rubber Co., Inc. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 508-09 (Mo. 2001); *TLC Healthcare Servs., L.L.C. v. Enhanced Billing Servs., L.L.C.*, No. No. L-08-1121, 2008 WL 3878349, at *3 (Ohio Ct. App. Aug. 22, 2008).  Third-party beneficiaries are bound by such clauses; a third party seeking to enjoy the benefits of a contract must also accept its limitations.  *See Union Sav. & Loan Co. v. Cook*, 186 N.E. 728, 731 (Ohio 1933); *Tractor-Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 631 (Mo. Ct. App. 1994).

potentially affected payment cards; costs of notifying Plaintiffs' customers of the criminal Intrusion into Heartland's system; costs incurred from fraudulent payment card charges being made by means of payment card data that was stolen in the Intrusion; and harm to Plaintiffs' reputation and goodwill. Compl. ¶¶ 6, 8, 71, 78. Costs such as these are the very definition of indirect, consequential damages. *See Hernandez v. Westoad Realty & Inv., Inc.*, 771 S.W.2d 876, 880 (Mo. Ct. App. 1989).[41] Accordingly, Heartland's contracts with the Acquiring Banks give Plaintiffs no right to recover such costs, even if they somehow were third-party beneficiaries of those contracts.

### 2. Heartland Contracts with Its Merchant Customers

Because the Master Complaint identifies no particular agreement between Heartland and any specific merchant as the source of Plaintiffs' claimed third-party beneficiary status, Heartland can only address that claim by referring to the standard form of agreement that Heartland enters into when agreeing to provide payment card transaction processing services to its merchant customers. An exemplar (the "Merchant Agreement") is attached to the Johnson Declaration as Exhibit 6.[42] As shown below, the provisions of the Merchant Agreement negate the possibility of Plaintiffs having a valid third-party beneficiary claim thereunder.

> (a) Plaintiffs Fail to Allege Adequately that They Are Third-Party Beneficiaries of the Merchant Agreement, and the Contracts Expressly Show They Were Not

The Merchant Agreement contains an express choice-of-law provision calling for the

---

[41] "[S]pecial damages [are] also referred to as consequential damages and the terms are used interchangeably." 3 Dan B. Dobbs, Law of Remedies § 12.2(3), at 38 (2d ed. 1993). Special or consequential damages are damages that are the "natural" but not the "necessary" result of the defendant's breach of contract, *Long v. Forchione*, No. Civ. A. L-83-150, 1983 WL 6980, at *3 (Ohio Ct. App. Oct. 28, 1983)), that do not arise "usually" from the breach, *Hernandez v. Westoak Realty & Investment, Inc.*, 771 S.W.2d 876, 881 (Mo. 1989), or that arise "indirectly" from it, Black's Law Dictionary (8th ed. 2004).

[42] This exemplar is the version of Heartland's standard form dated September 11, 2007. *See Randolph*, 630 F. Supp. 2d at 744 (under Rule 12(b)(6) court may consider documents central to and referred to in complaint).

-41-

application of New Jersey law without regard to principles relating to conflict of laws. Johnson Decl., Ex. 6, ¶ 14.12. Under the governing New Jersey standard, as in Missouri and Ohio, only *intended* third-party beneficiaries may sue to enforce a contract to which they are not a party. *Corrugated Paper Prods. v. Longview Fibre Co.*, 868 F.2d 908, 910-11 (7th Cir. 1989) (applying New Jersey law). And, again (similar to Missouri and Ohio), in order to establish third-party beneficiary status under the Merchant Agreement, Plaintiffs must allege more than that Heartland and its merchant customers "knew" that Plaintiffs would benefit from that agreement. *Id.* at 912. Plaintiffs must go further to allege that "the benefit to [P]laintiffs was a consequence which the parties *affirmatively sought*." *Id.* (emphasis added). Moreover, as in Missouri and Ohio, only a donee or creditor beneficiary may recover in New Jersey, *Nardi v. Stevens Institute of Technology*, 60 F. Supp. 2d 31, 44-45 (E.D.N.Y. 1999), and explicit contractual disclaimers of third-party beneficiaries will be enforced, *Broadway Maintenance Corp. v. Rutgers, State University*, 90 N.J. 253, 260 (1982).

For three reasons, Plaintiffs have not stated a claim as third-party beneficiaries of the Merchant Agreement under the applicable principles of New Jersey law. *First*, nothing in the Merchant Agreement, nor in the Master Complaint, plausibly suggests that "the benefit to [Plaintiffs] was a consequence which [Heartland and its merchant customers] *affirmatively sought*." Payment card issuers such as Plaintiffs are barely mentioned in the Merchant Agreement and when they are mentioned it is only in passing, such as in relation to chargebacks and requests for sales drafts. *See, e.g.,* Johnson Decl, Ex. 6, at 3.23. Payment card issuers are never once mentioned in the Merchant Agreement in relation to the security of Heartland's computer system. Courts applying New Jersey law have rejected third-party beneficiary claims even where the contracts at issue were much more indicative than the Merchant Agreement of an

intent to benefit the plaintiff.[43]  *Second*, Plaintiffs do not and could not allege that they are either donee or creditor beneficiaries of the Merchant Agreement.  *See Nardi*, 60 F. Supp. 2d at 44-45; Point V.A.1.(a), *supra*.  *Third*, the Merchant Agreement makes clear that Heartland and its merchant clients expressly *disclaimed* any intent for Heartland to be liable to third parties thereunder by providing that Heartland "shall have no liability to Merchant **or any other person** for any loss, liability or damage arising directly or indirectly in connection herewith."  Johnson Decl. Ex. 6, ¶ 8.8 (emphasis added).  *See Broadway Maintenance Corp.*, 90 N.J. at 260 (parties may expressly disclaim liability to a third party).

(b)    Plaintiffs Fail to Allege Adequately that Heartland Breached The Merchant Agreement and that any Breach Caused Damages

Plaintiffs fail also to allege adequately that Heartland breached the Merchant Agreement and that any breach caused the Plaintiffs any damages.   Indeed, the Merchant Agreement's express terms preclude any such breach of contract claim, for Heartland made no promises regarding data security in the Agreement that could form the basis of any breach-of-contract action.  *See* Johnson Decl., Ex. 6, ¶ 8.8 (expressly disclaiming all warranties for processing and other services by Heartland under the contract).  In any event, Plaintiffs' allegations fall on their own, by failing to specify the contractually imposed data security requirement that Heartland allegedly breached, how any such breach caused the Intrusion, or how the Intrusion itself caused their alleged losses.

---

[43] *See Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503, 510 (3d Cir. 1981) (plaintiff-manufacturer was not third-party beneficiary to contract between general contractor and subcontractor that specified installation of units manufactured by plaintiff); *Healthcare Serv., Inc. v. Nat'l Prescription Administrators*, 867 F. Supp. 1223, 1226-27 (E.D. Pa. 1994) (plaintiff, a company engaged in filling medical prescriptions, was not a third-party beneficiary to contract between prescription program administration company and an employer contracting for prescription coverage even though the contract provided for reimbursements to the plaintiff when prescriptions were filled).

       (c)     Plaintiffs' Claim Under the Merchant Agreement Is Barred by the Agreement's Limitation-of-Liability Provisions

Finally, the Merchant Agreement's express terms preclude liability for a failure by Heartland to safeguard payment card data.[44]   *First*, Heartland's "sole liability" under the Merchant Agreement is "to correct" "data in which errors have been caused by" Heartland, and only if the merchant client notifies Heartland of the error within 45 days of the error.  Johnson Decl., Ex. 6, ¶ 8.5.  That provision obviously cannot support the claims Plaintiffs press here. *Second*, for reasons identical to those discussed in Point V.A.1.(c) *supra* in regard to Heartland's contracts with the Acquiring Banks, Plaintiffs' claim under the Merchant Agreement is barred by the agreement's expressly prohibiting "indirect, special . . . incidental, or consequential" damages. [45]  Johnson Decl., Ex. 6, ¶ 8.7.[46]

       3.     Heartland's Alleged Contracts with Visa and MasterCard

Plaintiffs finally resort to mentioning MasterCard and Visa as potential counterparties with whom Heartland may have agreements giving them third-party beneficiary rights, Compl. ¶

---

[44] The Merchant Agreement's limitations of liability apply against Plaintiffs because even though those limitations speak in terms of Heartland and its merchant clients, a third-party beneficiary's rights "depend upon, and are measured by, the terms of the contract between the promisor and the promisee." *Roehrs v. Lees*, 429 A.2d 388, 393 (N.J. Super. Ct. App. Div. 1981).  Of course, that the Merchant Agreement fails to mention payment card issuers in any meaningful way is only further evidence that Heartland and its merchant clients had no intent to confer enforcement rights upon Plaintiffs.

[45] Under New Jersey law, as in Missouri and Ohio, these damages are those which are not the usual result of a contract breach but "may fairly and reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach."  *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 511 n.8 (3d Cir.2005) (quoting *Sandvik, Inc. v. Statewide Sec. Systems, Div. of Statewide Guard Services, Inc.*, 469 A.2d 955 (N.J. Super. Ct. App. Div. 1983)); *see also Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1107-08 (N.J. 2007).  For instance, where a security agency failed to guard plaintiff's factory in breach of its contract, the general damages were the contract price for one month of security service, whereas the value of the goods stolen as a result of the security lapse were consequential damages.  *Sandvik*, 469 A.2d at 955.

[46] Heartland also notes that several Plaintiffs violated the Merchant Agreement's express forum selection clause by filing suit in Texas or Florida.  The clause requires that any action relating to the Merchant Agreement be brought in New Jersey, Johnson Decl., Ex. 6, ¶ 14.13, and this requirement is enforceable against Plaintiffs, *see Allgor v. Travelers Ins. Co.*, 654 A.2d 1375, 1379 (N.J. Super Ct. App. Div. 1995) (enforcing forum selection clause against third-party beneficiary).  Heartland fully reserves its right to enforce this clause upon conclusion of the pre-trial MDL proceedings.

95, but have failed to state a third-party beneficiary claim under those alleged contracts.[47]  To begin with, Plaintiffs themselves assert that the alleged contracts between Heartland and Visa and/or MasterCard "*includ[e] their operating regulations*."  Compl. ¶ 95 (emphasis added).  As discussed in Point V.A.1.(a) *supra*, the regulations under which Visa and MasterCard operate expressly disclaim third-party beneficiaries and thus cannot support any claim by Plaintiffs under Heartland's supposed agreements with Visa and/or MasterCard.  *See  In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d at 499; *Broadway Maintenance Corp.*, 90 N.J. at 260 (explicit disclaimers of third-party beneficiaries are enforceable).  Further, for the same reasons discussed in Point V.A.1.(b) *supra*, even were there no disclaimer of third-party beneficiaries in Heartland's supposed agreements with Visa and MasterCard, Plaintiffs fail to point to any specific requirement that Heartland allegedly breached in those agreements; they allege no *facts* plausibly suggesting that Heartland in fact breached any such specific requirement; and they allege no *facts* plausibly suggesting that any such breach caused the Intrusion or their damages.

B.    Plaintiffs Have Failed to State a Claim for Breach of Implied Contract

Plaintiffs have failed to allege the elements of an implied contract claim, much less pled facts plausibly suggesting those elements are satisfied.[48]  The Court should therefore dismiss Plaintiffs' implied contract claim (Count III of the Master Complaint) in its entirety.

As an initial matter, Plaintiffs do not state whether they allege a contract implied in *law* or one implied in *fact.  See Wanaque Borough Sewerage Auth. v. Township of West Milford*, 144 N.J. 564, 574 (1996) (recognizing both types of implied contract).  Because Plaintiffs' vague pleading fails to put Heartland on notice of the claim asserted against it, Count III should, for this

---

[47] Heartland does not dispute, for purposes of this motion to dismiss, Plaintiffs' allegation that New Jersey law applies to their claims relating to Heartland's alleged contracts with Visa and MasterCard.

[48] Heartland does not dispute, for purposes of this motion to dismiss, Plaintiffs' allegation that New Jersey law applies to their breach of implied contract claim.

reason alone, be dismissed.

In order to state a claim for breach of a contract implied in *law*, a plaintiff must plead facts showing "both that defendant received a benefit and that retention of that benefit without payment would be unjust. " *MK Strategies, LLC v. Ann Taylor Stores Corp.*, No. 1:07-cv-02519, 2007 WL 4322796, at *3 (D.N.J. Dec. 6, 2007) (internal quotation omitted).   The Master Complaint alleges neither element.

As for a contract implied in fact, such a contract requires *all* the elements of an express contract; it "varies from the latter only insofar as the parties' agreement and assent thereto have been manifested by conduct instead of words." *Saint Barnabas Med. Ctr. v. County of Essex*, 111 N.J. 67, 77 (1988).  Thus, "[l]ike express contracts, contracts implied in fact depend on mutual agreement and intent to promise." *Id.*; *see also Alampi v. Pegasus Group, L.L.C.*, No. L-929-06, 2008 WL 140952, at *6 (N.J. Super. App. Div. Jan. 16, 2008).  Also, an implied-in-fact contract, like any contract, "must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty." *Alampi,* 2008 WL 140952, at *6 (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)).

Here, Plaintiffs' allegations do not approach "the line between possibility and plausibility of entitlement to relief" for breach of an implied-in-fact contract.  *Iqbal*, 129 S. Ct. at 1949.  Plaintiffs merely assert that Heartland implicitly promised Plaintiffs it would safeguard payment card data, supporting their assertion with (1) the fact that Heartland processes payment card transactions, Compl. ¶¶ 52, 110; and (2) public statements by Heartland regarding its internal security measures – statements that were not even directed towards Plaintiffs, *see* Compl. ¶¶ 52, 111.  New Jersey requires "an unqualified acceptance to conclude the manifestation of assent" to a contract.  *Weichert*, 608 A.2d at 284; *Inox Wares Pvt. Ltd. v. Interchange Bank*, No. 06-4307,

-46-

2008 WL 4691906, at *8 (D.N.J. Oct. 22, 2008) (internal quotation omitted).  Nowhere do Plaintiffs allege facts plausibly suggesting that Heartland manifested "unqualified acceptance" to bind itself to a legally enforceable contract with Plaintiffs.[49]  Nor have Plaintiffs alleged that *Plaintiffs* ever manifested any intent to enter into a legally binding contract with *Heartland*. *Mutual* assent is required to establish an implied-in-fact contract.  *Saint Barnabas Med. Ctr.*, 111 N.J. at 77.

Plaintiffs also fail to allege the essential element of consideration.  It is black letter New Jersey law that a "contract must be supported by valuable consideration in order to be enforceable . . . [and that f]or consideration to be valid, both sides must get something out of the exchange."  *Campi v. Seven Haven Realty Co.*, 294 N.J. Super. 37, 43 (N.J. Super. Ct. Law Div. 1996) (internal quotations omitted) (citing, inter alia, *Continental Bank of Pa. v. Barclay Riding Acad.*, 93 N.J. 153, 170 (1983)).  Plaintiffs fail to allege that they offered Heartland anything in return for Heartland's alleged implied promise to implement particular data security measures.

Plaintiffs thus have failed to plead the existence of an implied contract.  It is also clear from the face of the Master Complaint that the alleged "implied contract" between Heartland and Plaintiffs, even if formed, would fail for indefiniteness, since Plaintiffs fail to allege facts plausibly suggesting the essential terms of the "implied contract" they contend existed.  Indeed, Plaintiffs allege *only one term* of that supposed contract – a promise by Heartland to take certain unspecified steps to secure payment card data against criminal attacks such as the Intrusion. Such an indeterminate contract is unenforceable as a matter of law.  *Weichert*, 608 A.2d at 284; *Alampi*, 2008 WL 140952, at *6.

---

[49] New Jersey courts have expressly *rejected* implied-in-fact contract claims based on alleged conduct that is much more substantial and suggestive of intent to contract than Plaintiffs have advanced.  *See Alampi,* 2008 WL 140952, at *6 (direct communications by defendants to plaintiffs and joint efforts with defendants towards real estate development did not sufficiently indicate defendants' intent so as to create implied-in-fact contract to create partnership); *see also Saint Barnabas*, 11 N.J. at 77.

Finally, Plaintiffs fail to point to any specific requirement that Heartland allegedly breached in Heartland's implied contract with Plaintiffs; they allege no *facts* plausibly suggesting that Heartland in fact breached any such specific requirement; and they allege no *facts* plausibly suggesting that any such Heartland breach caused the Intrusion or that the Intrusion in turn caused their claimed damages.   For the reasons discussed in Point V.A.1.(b) *supra*, then, Plaintiffs' implied contract claim must be dismissed wholly apart from the other reasons discussed above.

## CONCLUSION

For the foregoing reasons, Heartland respectfully requests that the Court grant its motion to dismiss.

Respectfully submitted,

/s Neal S. Manne
Neal S. Manne
nmanne@susmangodfrey.com
State Bar No. 12937980
S.D. Adm. No. 10209
Erica W. Harris
eharris@susmangodfrey.com
State Bar No. 00797697
S.D. Adm. No. 20784
David M. Peterson
dpeterson@susmangodfrey.com
State Bar No. 24056123
S.D. Adm. No. 882360
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
Harvey J. Wolkoff
harvey.wolkoff@ropesgray.com
MA State Bar No. 532880
Douglas H. Meal
douglas.meal@ropesgray.com
MA State Bar No. 340971

Mark P. Szpak
mark.szpak@ropesgray.com
MA State Bar No. 546261
Anne E. Johnson
anne.johnson@ropesgray.com
MA State Bar No. 666361
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000 (telephone)
(617) 951-7050 (facsimile)

***Attorneys for Heartland Payment Systems, Inc.***

Dated:  October 23, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 23rd day of October 2009 with a copy of this document via the Court's CM/ECF system per the Local Rules.

<u>/s Neal S. Manne</u>
Neal S. Manne