**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| In Re: Heartland Payment | § | |
| Systems, Inc. Customer Data | § | |
| Security Breach Litigation | § | |
| _____ | § | Civil Action No. 4:09-MD-2046 |
| | § | |
| This filing relates to: | § | |
| | § | |
| CONSUMER TRACK ACTIONS | § | |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of December 18, 2009, is made and entered into by and among the following Settling Parties (as defined below) to the above-captioned consolidated action: (i) Julie Barrett, Mark Hilliard, Derek Hoven, Talal Kaissi, Loretta A. Sansom, Scott Swenka, and Phillip Brown ("Representative Consumer Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Ben Barnow, Barnow and Associates, P.C.; Lance A. Harke, Harke & Clasby LLP; and Burton H. Finkelstein, Finkelstein Thompson LLP (together, "Co-Lead Settlement Class Counsel"); and (ii) Heartland Payment Systems, Inc. ("Heartland"), by and through its counsel of record, Harvey J. Wolkoff and Mark P. Szpak, Ropes & Gray LLP. The Settlement Agreement is intended by the Settling Parties fully, finally, and forever to resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

On January 20, 2009, Heartland issued a press release, stating that its processing system had incurred an unauthorized intrusion sometime in 2008 (the "Heartland Intrusion"), and that names, credit/debit card numbers, expiration dates, and other information on certain payment cards processed through Heartland ("Personal Financial Information") appeared to have been accessed as a result of the unauthorized intrusion. According to Heartland, its internal investigation revealed that

the hacker(s) had hidden malicious software in its payment processing system that allowed access to this sensitive consumer data.

The first consumer class action complaint in the nation related to the Heartland Intrusion was filed on January 23, 2009, on behalf of a putative nationwide class of consumers whose Personal Financial Information was alleged to have been negligently, willfully, and/or recklessly allowed to be stolen from Heartland.[1]  A number of other consumer class action lawsuits were filed shortly thereafter.[2]  The lawsuits collectively alleged, *inter alia*, that Heartland's failure to adequately protect consumers' Personal Financial Information violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA"), was negligent, constituted a breach of express and implied contract, and violated various states' data breach notification statutes and consumer fraud and deceptive and unfair trade practices acts.  The lawsuits sought statutory damages, compensatory damages, and injunctive relief stemming from the Heartland Intrusion.

On August 17, 2009, several individuals (the "Hackers") were indicted for hacking into the computer systems of various corporations, including Heartland. According to the Indictment, beginning on or about December 26, 2007, Heartland was the victim of an attack by the Hackers on its corporate computer network that resulted in malware being hidden in its payment processing

---

[1] *Sansom, et al. v. Heartland Payment Systems, Inc.*, No. 3:09cv335 (D.N.J.).

[2] *Brown, et al. v. Heartland Payment Systems, Inc.*, No. 2:09cv86 (M.D. Ala.); *Swenka v. Heartland Payment Systems, Inc.*, No. 2:09cv179 (D. Ariz.); *Brown, et al. v. Heartland Payment Systems, Inc.* No. 4:09cv384 (E.D. Ark.); *Hilliard v. Heartland Payment Systems, Inc.*, No. 1:09cv219 (E.D. Cal.); *Mata v. Heartland Payment Systems, Inc.*, No. 3:09cv376 (S.D. Cal.); *Read v. Heartland Payment Systems, Inc.*, No. 3:09cv35 (N.D. Fla.); *Balloveras v. Heartland Payment Systems, Inc.*, No. 1:09cv2032 (S.D. Fla.); *Leavell v. Heartland Payment Systems, Inc.*, No. 3:09cv270 (S.D. Ill.); *Barrett, et al. v. Heartland Payment Systems, Inc.*, No. 2:09cv2053 (D. Kan.); *McLaughlin v. Heartland Payment Systems, Inc.*, No. 6:09cv3069 (W.D. Mo.); *Merino v. Heartland Payment Systems, Inc.*, No. 3:09cv439 (D.N.J.); *Kaissi v. Heartland Payment Systems, Inc.*, No. 3:09cv540 (D.N.J.); *Rose v. Heartland Payment Systems, Inc.*, No. 3:09cv917 (D.N.J.); *McGinty, et al. v. Heartland Payment Systems, Inc.*, No. 1:09cv244 (N.D. Ohio); *Watson v. Heartland Payment Systems, Inc.*, No. 4:09cv325 (S.D. Tex.); *Anderson, et al. v. Heartland Payment Systems, Inc.*, No. 2:09cv113 (E.D. Wis.).

system, allegedly resulting in the theft of approximately 130 million credit and debit card numbers and corresponding personal information.

Pursuant to the order of the Judicial Panel on Multidistrict Litigation ("JPML") dated June 23, 2009, the JPML transferred all related actions to the United States District Court for the Southern District of Texas ("the Court"). The actions were divided into a "consumer track," consisting of the actions asserting putative class claims on behalf of consumers, and a "financial institution track," consisting of the actions asserting putative class claims on behalf of financial institutions.[3]

Pursuant to the terms set out below, this Settlement Agreement resolves all actions and proceedings asserted or that could have been asserted against Heartland in relation to the Heartland Intrusion by and on behalf of Representative Consumer Plaintiffs and Settlement Class Members (as defined below) in the United States (including the District of Columbia), and any other such actions by and on behalf of putative classes of consumers originating or that may originate in jurisdictions in the United States (including the District of Columbia) against Heartland related to the Heartland Intrusion (collectively, "the Litigation").

## II.   CLAIMS OF THE REPRESENTATIVE CONSUMER PLAINTIFFS AND BENEFITS OF SETTLEMENT

Representative Consumer Plaintiffs believe that the claims asserted in the Litigation, as set forth in the various complaints, have merit. Representative Consumer Plaintiffs and Co-Lead

---

[3] The actions asserting putative class claims on behalf of financial institutions are as follows:  *PBC Credit Union, et al. v. Heartland Payment Systems, Inc.*, No. 9:09cv80481 (S.D. Fla.); *Lone Summit Bank v. Heartland Payment Systems, Inc.*, No. 3:09cv581 (D.N.J.); *Tricentury Bank, et al. v. Heartland Payment Systems, Inc.*, No. 3:09cv697 (D.N.J.); *Amalgamated Bank, et al. v. Heartland Payment Systems, Inc.*, No. 3:09cv776 (D.N.J.); *Lone Star National Bank NA v. Heartland Payment Systems, Inc.*, No. 7:09cv64 (S.D. Tex.); *First Bankers Trust Company, National Bank Association v. Heartland Payment Systems, Inc.*, No. H-09-925 (S.D. Tex.); *Community West Credit Union v. Heartland Payment Systems, Inc.*, No. H-09-1201(S.D. Tex.); *The Eden State Bank v. Heartland Payment Systems, Inc.*, No. H-09-1203 (S.D. Tex.); *Heritage Trust Federal Credit Union v. Heartland Payment Systems, Inc.*, No. H-09-1284 (S.D. Tex.); *Pennsylvania State Employees Credit Union v. Heartland Payment Systems, Inc.*, No. H-09-1330 (S.D. Tex.).

Settlement Class Counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Heartland through motion practice, trial, and potential appeals.  Co-Lead Settlement Class Counsel also have taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation.  Co-Lead Settlement Class Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Litigation.  Co-Lead Settlement Class Counsel believe that the settlement set forth in this Settlement Agreement confers substantial benefits upon the Settlement Class (as defined below).  Co-Lead Settlement Class Counsel have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Heartland denies each and all of the claims and contentions alleged against it in the Litigation, and believes that these claims and contentions are totally without merit.  Specifically, Heartland denies all charges of wrongdoing or liability as alleged against it in the Litigation. Nonetheless, Heartland has concluded that further conduct of the Litigation as it relates to the consumer track would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.  Heartland also has taken into account the uncertainty and risks inherent in any litigation.  Heartland has, therefore, determined that it is desirable and beneficial that the Litigation as it relates to the consumer track be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Consumer Plaintiffs, individually and on behalf of the Settlement Class, by and

through Co-Lead Settlement Class Counsel, and Heartland that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to all Settling Parties, upon and subject to the terms and conditions of this Settlement Agreement, as follows.

**1.     Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1     "Claims" means known claims and Unknown Claims (as defined in ¶ 1.23), actions, allegations, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether contingent or non-contingent, and whether at law or equity.

1.2     "Claims Administration" means the processing of claims received from Settlement Class Members by the Claims Administrator.

1.3     "Claims Administrator" means such claims administrator as may be selected by Heartland and agreed to by Co-Lead Settlement Class Counsel.

1.4     "Co-Lead Settlement Class Counsel" means Ben Barnow, Barnow and Associates, P.C.; Lance A. Harke, Harke & Clasby LLP; and Burton H. Finkelstein, Finkelstein Thompson, LLP.

1.5     "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.6     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 9.1 hereof have occurred and have been met.

1.7     "Eligible Payment Card Account" means an account used to make a transaction that was processed by Heartland between and including December 26, 2007 and December 31, 2008 (the "Settlement Class Period").

1.8     "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review.  Notwithstanding the above, any order modifying or reversing any attorneys' fee award made in this case shall not affect whether the Judgment is "Final" as defined in the preceding sentence, or any other aspect of the Judgment.

1.9     "Judgment" means a judgment rendered by the Court, in the form attached hereto as Exhibit E, or a judgment substantially similar to such form in both terms and cost.

1.10     "Named Plaintiff" means each Person (as defined in ¶ 1.13 herein) who is named as a plaintiff in any pending case in the Litigation and who, prior to the execution of the Settlement Agreement by Co-Lead Settlement Class Counsel, joins in this settlement by affirming in a writing (which will be filed with the Court by the Settling Parties) that he or she, or his or her counsel, approve and join in this settlement.

1.11     "Notice Specialist" means Hilsoft Notifications, Souderton, Pennsylvania, or such other notice specialist as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.12     "Opt-Out Date" means the date by which members of the Settlement Class must mail their requests to be excluded from the Settlement Class in order for that request to be effective.  The postmark date shall constitute the date of mailing for these purposes.

1.13     "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal

representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.14    "Plaintiffs' Counsel" means Co-Lead Settlement Class Counsel and all other attorneys who represent Named Plaintiffs who have joined in this settlement.

1.15    "Related Parties" means an entity's past or present directors, officers, employees, principals, agents, attorneys, predecessors, successors, parents, subsidiaries, divisions and related or affiliated entities, and includes, without limitation, any Person related to such entity who is, was or could have been named as a defendant in any of the actions in the Litigation.

1.16    "Released Sponsoring Banks" means KeyBank National Association and Heartland Bank.

1.17    "Released Claims" shall collectively mean any and all Claims for Losses (as defined herein), including without limitation those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professional Code § 17200 et seq., California Civil Code § 1798.80 – 84 et seq., California Civil Code § 1798.53, Tex. Bus. & Com. § 48.001 et seq., Georgia Code § 10-1-910 et seq., and any similar statutes in effect in any states in the United States; the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.*; the various states' data breach notification statutes; negligence; negligence *per se*; breach of contract; breach of fiduciary duty; breach of confidence; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; and bailment), and also including, but not limited to, any and all claims in any state or federal court of the United States for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any

other form of relief, that either have been asserted or could have been asserted by any Settlement Class Member against any of the Released Persons or any of the Indemnified Persons (as defined below) based on, relating to, concerning or arising out of the allegations, facts, or circumstances alleged in the Litigation or any other allegations, facts or circumstances with respect to the Heartland Intrusion. Without limitation of the foregoing, Released Claims specifically include Claims for Losses (as defined herein) stemming from the Heartland Intrusion that may have been or could have been asserted by any Settlement Class Member against any person or entity (such as, for example and without limitation, any entity that issued credit or debit cards to Settlement Class Members) (collectively, the "Indemnified Persons") that could seek indemnification or contribution from any of the Released Persons in respect of such Claim, except that Released Claims shall not include Claims by any individual Settlement Class Member against any card-issuing financial institution brought on an individual, case-by-case basis for reimbursement or waiver of purportedly fraudulent card charges (or other charges by the card-issuing financial institution in connection with purportedly fraudulent card charges) that such card-issuing financial institution assertedly should have reimbursed or waived but has refused to reimburse or waive. Released Claims shall not include the right of any Settlement Class Member or any Released Person or any Indemnified Person to enforce the terms of the settlement contained in the Settlement Agreement.

1.18    "Released Persons" means Heartland and its Related Parties and the Released Sponsoring Banks and their respective Related Parties.

1.19    "Representative Consumer Plaintiffs" means Julie Barrett, Mark Hilliard, Derek Hoven, Talal Kaissi, Loretta A. Sansom, Scott Swenka, and Phillip Brown.

1.20    "Settlement Class" means all Persons in the United States who had or have a payment card that was used in the United States between and including December 26, 2007 and

December 31, 2008 (the "Settlement Class Period"), and who allege or may allege that they have suffered any of the Losses defined herein.  Excluded from the definition of Settlement Class are Heartland and its officers and directors, and those Persons who timely and validly request exclusion from the Settlement Class.

  1.21 "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

  1.22 "Settling Parties" means, collectively, Heartland and Representative Consumer Plaintiffs, individually and on behalf of the Settlement Class.

  1.23 "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Consumer Plaintiff, does not know or suspect to exist in his favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with and release of the Released Persons, or might have affected his or her decision not to object to and/or to participate in this settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Representative Consumer Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including Representative Consumer Plaintiffs, and any of them, may hereafter discover facts in addition to or different from those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Consumer Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims.  The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the settlement of which this release is a part.

1.24    "United States" as used in this Settlement Agreement includes the District of Columbia.

## 2.    The Settlement

2.1    <u>Actual Damages Fund:</u>  Within ten (10) days following preliminary approval of the settlement, Heartland will place the principal amount of $1,000,000 (the "Initial Funding") into an interest-bearing, escrow account (the "Actual Damages Fund").  The Initial Funding will be used to reimburse Settlement Class Members who are determined to have submitted Valid Claims (as defined and described pursuant to ¶ 2.2).  Interest on the Initial Funding will inure to the benefit of Settlement Class Members as and to the extent provided below.

(a)    In the event the Initial Funding and any interest accrued thereon is exceeded by the aggregate amount to be paid on approved Valid Claims pursuant to ¶ 2.2, Heartland will promptly replenish the Actual Damages Fund initially in the amount of $500,000, and in the event that the Actual Damages Fund is again so exceeded, Heartland will replenish it with an additional $500,000; and in the event that the Actual Damages Fund is again so exceeded, Heartland will replenish it with an additional $400,000, as advances for amounts needed to pay any additional Valid

Claims (the "Replenishment Fundings" and, jointly with the Initial Funding, the "Fundings").  In no event shall the Replenishment Fundings exceed a total of $1,400,000 in the aggregate, i.e., up to but not more than a total of $2,400,000 shall be placed cumulatively in the Actual Damages Fund by means of the Fundings.

(b)     In the event the Initial Funding and any interest accrued thereon is not entirely depleted by the payment of Valid Claims pursuant to ¶ 2.2, the unpaid balance of the Initial Funding and any interest accrued thereon will be transferred to a non-profit organization(s) dedicated to the protection of consumers' privacy rights, with emphasis on advancing the implementation of end-to-end encryption of payment card authorization transactions or similar security enhancements. This *cy pres* provision shall not apply, however, to the Replenishment Fundings, and any unused balance of the Replenishment Fundings shall be returned promptly to Heartland, with the interest accrued thereon. The organization(s) referred to herein will be designated by Heartland and shall be subject to approval by Co-Lead Settlement Class Counsel, which approval shall not be unreasonably withheld.

2.2     Reimbursement of Valid Claims:  Reimbursements to Settlement Class Members from the Actual Damages Fund will be made only for "Valid Claims."  A Valid Claim shall consist of only those "Losses" (as defined in ¶ 2.2 (b)) that a Settlement Class Member claims in accordance with Paragraph 2.2(a) below, and proves by a preponderance of the evidence (i.e., more likely than not to be true), to have directly and proximately resulted from information relative to an Eligible Payment Card Account of such Settlement Class Member having been stolen or placed at risk of being stolen as a result of the Heartland Intrusion, as determined either by the Claims Administrator or, in the event the Claims Administrator's determination is reviewed pursuant to ¶ 2.2(d) below, by the dispute resolution firm appointed pursuant thereto.

(a)    To be eligible for determination as a Valid Claim, a Settlement Class Member's claim for reimbursement of a Loss or Losses (a "Reimbursement Claim") must be submitted by mail on a written form agreed to by the parties and must be supported by documentation showing by a preponderance of the evidence, and a sworn certification attesting, that the claimant is a Settlement Class Member and that his or her or its claim is a Valid Claim. On the claim form, the Settlement Class Member must provide the number and expiration date of the payment card account that is the basis for such claim, for verification by Heartland and/or the Claims Administrator and/or the dispute resolution firm that such account is an Eligible Payment Card Account and evaluation of the claim, and such information shall be deemed confidential and protected as such by Heartland and/or the Claims Administrator and/or the dispute resolution firm, as appropriate.

(b)    A "Loss" or "Losses" shall consist only of: (i) reasonable, unreimbursed, out-of-pocket expenses (specifically, telephone or postage costs, other third-party charges resulting from card cancellations or replacements, unauthorized and unreimbursed account charges, or Identity-Theft-Related Charges (as defined below)) actually incurred by the Settlement Class Member; and, (ii) whether or not the Settlement Class Member has incurred any out-of-pocket expenses as referenced in 2.2(b)(i) above, a reasonable amount for time (calculated at $10 per hour up to five (5) hours) actually expended by the Settlement Class Member to address such a card cancellation, card replacement, unauthorized account charge, or Identity-Theft-Related Charge.  Losses shall in no event include credit monitoring or insurance costs incurred by Settlement Class Members, attorneys' fees, attorneys' costs or attorneys' expenses incurred by Settlement Class Members, or losses resulting from any information having been stolen or placed at risk of being stolen from an entity other than from Heartland.  For purposes of the definition of Losses, an "Identity-Theft-Related Charge" shall mean a charge, other than a charge to the Eligible Payment Card Account of

the Settlement Class Member, incurred as a result of someone's assuming the Settlement Class Member's identity and taking out and using credit or otherwise obtaining monies and other things of value fraudulently in the name of the Settlement Class Member.  Valid Claims shall be limited to $175 per Settlement Class Member, with no more than two Valid Claims allowed per household. However, in the event that the Losses in a Settlement Class Member's Valid Claim include Identity-Theft-Related Charges, up to $10,000 in such Identity-Theft Related-Charges may be included in such Settlement Class Member's Valid Claim, but in no event shall the Settlement Class Member's reimbursement for a Valid Claim exceed $10,000.  All allowable amounts of Valid Claims are subject to the limit on the Actual Damages Fund as set forth in ¶ 2.1.  Losses shall be net of and not include any other recovery by or reimbursement of the Settlement Class Member of the expense in question and shall not include any other type of alleged damage or expense, including, without limitation, exemplary or punitive damages or any alleged losses by reason of alleged mental anguish, emotional distress, or any claimed physical injury.

(c)     In order to be eligible to have a Valid Claim, any Reimbursement Claim must be submitted to the Claims Administrator during the period beginning upon publication of the notice of settlement following preliminary approval and ending August 1, 2011 (the "Final Claim Date"), which is two and a half years from the date of the announcement of the Heartland Intrusion.  Losses must have been incurred prior to the Final Claim Date.  The Claims Administrator's review of Reimbursement Claims, including all requests for review of the denial of Reimbursement Claims, shall commence within sixty (60) days of the Effective Date, and proceed in order of the Claims Administration's receipt of completed claims, as determined by the Claims Administrator.  Payment of Valid Claims shall commence no later than 120 days after all Reimbursement Claims have been finally decided, including any review of Reimbursement Claims and any reimbursement determinations pursuant to pursuant to ¶ 2.2(d), and shall be subject

to pro-rata reduction in the event such amounts together would otherwise exceed the Actual Damages Fund.  However, in the event that the total Reimbursement Claims received and any amounts payable under § 2.2(d) can be calculated and would not exceed $2,400,000, then payment of Valid Claims may commence without awaiting all Reimbursed Claims to have been finally decided, if so requested in writing by Co-Lead Settlement Counsel and approved by Heartland, which approval shall not be unreasonably withheld.

(d)     Any Settlement Class Member whose Reimbursement Claim is denied by the Claims Administrator may request review of the denial and resolution of the Reimbursement Claim through a dispute resolution firm to be agreed upon by the parties, such as JAMS.  Similarly, Heartland shall have the right to request review of the allowance of a Reimbursement Claim through the same dispute resolution process.  Heartland shall bear the costs of the dispute resolution firm, separate and apart from the Fundings, up to a total of $200,000, and Heartland shall contract to do so, so as to provide for dispute resolution for all such requests for review hereunder.  Resolution of any Reimbursement Claim by the dispute resolution firm will commence only after the Final Claim Date and shall be based on the dispute resolution firm's review of the Reimbursement Claim file and any response by Heartland or the Settlement Class Member (as the case may be), and, in those cases in which the dispute resolution firm deems it necessary and appropriate, an oral hearing on the Reimbursement Claim (which shall be by telephone or in person, at the Settlement Class Member's election). There will be no recovery by any Settlement Class Member for exemplary or punitive damages, or for (except as may be provided for below in this paragraph) attorneys' fees, costs or expenses, or for any other amount that does not constitute a Valid Claim as defined above, provided, however, that in the event the Losses included in a Valid Claim as sustained by the dispute resolution firm include Identity-Theft-Related Charges, Heartland shall reimburse the Settlement Class Member for the reasonable attorneys' fees and costs (not including expert fees) incurred

by the Settlement Class Member in connection with such dispute resolution, not to exceed an amount equal to 25 percent of the amount of the Identity-Theft-Related Charges included in such Valid Claim, all subject to the limit on the Actual Damages Fund as set forth in ¶ 2.1 above. Reimbursement Claim determinations by the dispute resolution firm shall be final and not subject to further review.

(e)   Reimbursement Claims shall be submitted to, and reimbursements shall be paid by, the Claims Administrator from the Actual Damages Fund, subject to the terms and conditions set forth herein.

2.3   Within thirty (30) days of the execution of the Settlement Agreement (or such later time as may be agreed to between Heartland and Co-Lead Settlement Class Counsel), an independent expert retained by Heartland will generate a written report setting forth any actions taken or planned to be taken by Heartland since January 20, 2009 to enhance the security of Heartland's computer system ("the Enhancement Actions").  Heartland will permit Representative Consumer Plaintiffs' designated independent expert to review the report. In the alternative, Heartland may, in its discretion, permit Representative Consumer Plaintiffs' designated independent expert to review a copy of Heartland's most recent Payment Card Industry Report on Compliance ("ROC").  Representative Consumer Plaintiffs' designated independent expert shall promptly provide a responsive letter to Co-Lead Settlement Class Counsel stating whether the Enhancement Actions (or the information reflected in ROC, as the case may be) are, in the judgment of Representative Consumer Plaintiffs' designated independent expert, a prudent and good faith attempt by Heartland to minimize the likelihood of intrusion in the future.  Within fifteen (15) days thereafter, Co-Lead Settlement Class Counsel shall provide Heartland with a letter indicating whether they accept the report, or do not accept it; failure to provide such a letter to Heartland shall be deemed acceptance.  The settlement is contingent upon Co-Lead Settlement Class Counsel's

acceptance of the report, which acceptance shall not be unreasonably withheld.  The foregoing terms of this Paragraph shall be completed prior to any hearing on final approval of the settlement, and subject to such confidentiality restrictions as Heartland may reasonably require to protect the security of its computer system, the confidentiality of the ROC or other written report referenced above, or other proprietary information.

2.4      All costs associated with notice to the Settlement Class as required herein and Costs of Claims Administration shall be paid by Heartland.  To the extent that such notice costs exceed $1,500,000.00, however, Heartland shall have the option, in its sole discretion, of rescinding the Settlement Agreement.

2.5      The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the settlement is terminated or cancelled pursuant to the terms of this Settlement Agreement, then this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue.  The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action including, without limitation, the "financial institutions track" proceedings otherwise consolidated with the Litigation in the above-captioned civil action, as to which all of their rights are specifically preserved.

2.6      Heartland agrees that the time for Co-Lead Settlement Class Counsel to file a Master Amended Complaint related to the consumer track plaintiffs shall be treated by them as extended without date.

**3.      Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing**

3.1        As soon as practicable after the execution of the Settlement Agreement, Co-Lead Settlement Class Counsel and counsel for Heartland shall jointly submit this Settlement Agreement to the Court, and, within 7 calendar days after the period for any termination of the Settlement Agreement pursuant to ¶¶ 2.3 [has expired without Co-Lead Settlement Class Counsel having taken such action, Co-Lead Settlement Class Counsel shall file a motion for preliminary approval of the settlement with the Court and apply for entry of an order (the "Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing"), in the form attached hereto as Exhibit A, or an order substantially similar to such form in both terms and cost, requesting, *inter alia*,

(a)        certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.5;

(b)        preliminary approval of the settlement as set forth herein;

(c)        approval of the publication of a customary form of summary notice (the "Summary Notice") in a form substantially similar to the one attached hereto as Exhibit B (in a manner certified by the Notice Specialist to have a reach of not less than approximately 80% of the putative class, targeted to adults with credit or debit cards over 18 years of age, in the United States), and a customary long form of notice ("Notice") in a form substantially similar to the one attached hereto as Exhibit C, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making

claims to the extent contemplated herein, and the date, time, and place of the Final Fairness Hearing;

(d)     appointment of Hilsoft Notifications as Notice Specialist (or such other provider of class action notification service, as may be jointly agreed to);

(e)     appointment of Epiq Systems, Inc. as Claims Administrator; (or such other provider of claims administrative service, as may be jointly agreed to); and

(f)     approval of a Claim Form in a form substantially similar to the one attached hereto as Exhibit D.

The forms of Summary Notice, Notice and Claim Form attached hereto as Exhibits B, C, and D shall be reviewed by the proposed Notice Specialist and Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2     Heartland shall pay for and shall assume the administrative responsibility of providing notice to the Settlement Class in accordance with the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, and the costs of such notice, together with the Costs of Claims Administration, shall be paid by Heartland, subject to the terms set forth herein. Notice shall be provided to Settlement Class Members by publication in print and shall be designed to have a reach of not less than approximately 80% of the putative class, targeted to adults with credit or debit cards over 18 years of age, in the United States through publication of the Summary Notice, and which publication shall run, if approved by the Court, in a range of consumer magazines, newspapers, and/or newspaper supplements to be designated by the Notice Specialist and approved by the Court.  The Claims Administrator shall establish a dedicated settlement website, and shall maintain and update the website throughout the Claim Period, with the forms of Summary Notice, Notice, and Claim Forms approved by the Court, as well as this Settlement Agreement.  The Claims Administrator also will provide copies of the forms of Summary Notice, Notice, and Claim Forms

approved by the Court, as well as this Settlement Agreement, upon request.  Prior to the Final

Fairness Hearing, Co-Lead Settlement Class Counsel and Heartland shall cause to be filed with the

Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

Notice shall be provided in English and/or Spanish, as appropriate.  The forms of Summary Notice,

Notice and Claim Form approved by the Court may be adjusted by the Notice Specialist and/or

Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may

be reasonable and not inconsistent with such approval.

      3.3     Co-Lead Settlement Class Counsel and Heartland shall request that after notice is

given, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the

settlement set forth herein.

      3.4     Co-Lead Settlement Class Counsel and Heartland further agree that the proposed

Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing shall provide,

subject to Court approval, that, pending the final determination of the fairness, reasonableness, and

adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member,

either directly, representatively, or in any other capacity, shall institute, commence, or prosecute

against Heartland any of the Released Claims in any action or proceeding in any court or tribunal.

**4.     Opt-Out Procedures**

      4.1     Each Person wishing to opt out of the Settlement Class shall individually sign and

timely submit written notice of such intent to the designated Post Office box established by the

Claims Administrator.  The written notice must clearly manifest an intent to be excluded from the

Settlement Class.  To be effective, written notice must be postmarked at least twenty-one (21) days

prior to the date set in the Notice for the Final Fairness Hearing.

      4.2     All Persons who submit valid and timely notices of their intent to be excluded

from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall neither

receive any benefits of nor be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

**5.    Objection Procedures**

5.1        Each Settlement Class Member desiring to object to the settlement shall submit a timely written notice of his or her objection.  Such notice shall state:  (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, including (a) proof that they are a member of the Settlement Class (e.g., a letter from their financial institution indicating that their Personal Financial Information had been compromised in the Heartland Intrusion), including documentation of any Losses they claim to have suffered as a result of the alleged theft of their Personal Financial Information, if any, if they are objecting to any portion of the settlement dealing with reimbursement of Losses and for which they believe they would have an existing claim, or (b) an affidavit setting forth, in as much detail as the objector can reasonably provide, that they received a letter from their financial institution indicating that their Personal Financial Information had been compromised in the Heartland Intrusion, including the approximate date of said receipt; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; and (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation).   In order to be an effective objection, such

notice shall also identify, by case name, court, and docket number, all other cases in which the objector (directly or through counsel) or the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement, or has been a named plaintiff in any class action or served as lead plaintiff class counsel.  To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Southern District of Texas, P.O. Box 61010, Houston, TX 77208, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith upon one of Co-Lead Settlement Class Counsel (Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602), and counsel for Heartland (Harvey J. Wolkoff, Ropes & Gray LLP, One International Place, Boston, MA, 02110).  Counsel for Heartland may request that the objector's payment card number and expiration date be provided to the Claims Administrator, for the purposes described in Paragraph 2.2(a) above, with notice to Co-Lead Settlement Class Counsel of such request.

**6.    Releases**

6.1        Upon the Effective Date, each Settlement Class Member, including Representative Consumer Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Consumer Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in, any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2      Upon the Effective Date, Heartland shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Consumer Plaintiffs, each and all of the Settlement Class Members, Co-Lead Settlement Class Counsel, and all other Plaintiffs' Counsel who have consented to and joined in the settlement, from all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement.  Any other Claims or defenses Heartland may have against such Persons, including without limitation any Claims based upon or arising out of any retail, banking, debtor-creditor, contractual or other business relationship with such Persons, that are not based upon or do not arise out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, are specifically preserved and shall not be affected by the preceding sentence.

6.3      Notwithstanding any term herein, Heartland does not, by operation of this settlement, release any Claims it or its Related Parties may have based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Claims asserted against it in the "financial institution track" of the consolidated proceedings in the United States District Court for the Southern District of Texas, Claims based on its rights and duties under existing contracts with respect to fees, charges, penalties, assessments, fines, and allocations of loss by and all other obligations to payment card associations, and Claims based upon or arising out of any precompliance or compliance or noncompliance proceedings or any other proceedings under payment card association rules.

6.4      Notwithstanding any term herein, Heartland shall not have, or been deemed to have, released, relinquished, or discharged any Representative Consumer Plaintiff, Settlement Class Member, or Plaintiffs' Counsel who has consented to and joined in the settlement, from any claim

based on or arising out of any act of fraud, misrepresentation, or other misconduct in connection with the submission of any claim pursuant to the settlement set forth in this Settlement Agreement, or any claim against any of them based on or arising out of any failure to abide by the terms of the Settlement Agreement.

6.5     Notwithstanding any term herein, neither Heartland nor its Related Parties  shall have or shall be deemed to have released, relinquished or discharged any Claim or defense against any Person other than Representative Consumer Plaintiffs, each and all of the Settlement Class Members, Co-Lead Settlement Class Counsel, and all other Plaintiffs' Counsel who have consented to and joined in the settlement.  Persons not released by Heartland or its subsidiaries, divisions or affiliates of any Claim or defense include, without limitation, the Released Sponsoring Banks and their respective Related Parties.

**7.     Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses, and Incentive Awards to Representative Consumer Plaintiffs and Named Plaintiffs**

7.1     The Settling Parties did not discuss attorneys' fees, costs, and expenses, or incentive awards to Representative Consumer Plaintiffs and Named Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that Heartland would pay reasonable attorneys' fees, costs,  and expenses, and incentive awards to Representative Consumer Plaintiffs and Named Plaintiffs as may be agreed to by Heartland and Co-Lead Settlement Class Counsel, and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court.  Heartland and Co-Lead Settlement Class Counsel then negotiated and agreed as follows:

7.2     Heartland has agreed to pay, subject to Court approval, up to the amount of $725,000.00 to Co-Lead Settlement Class Counsel for attorneys' fees, and up to $35,000.00 to Co-Lead Settlement Class Counsel for reasonable costs and expenses, subject to reasonable

documentation.   Co-Lead Settlement Class Counsel, in their sole discretion, to be exercised reasonably, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.  If any Plaintiff's Counsel disagrees with the allocation of fees and/or costs he or she has been awarded, they may, after fourteen (14) days of the receipt of said award, file a motion with the Court seeking an adjustment in said award.  Co-Lead Settlement Class Counsel shall have fourteen (14) days to file a response to any such motion.

      7.3       Heartland has agreed to pay incentive awards, subject to Court approval, up to the amount of $200.00 for each Representative Consumer Plaintiff, and $100.00 for each of the other Named Plaintiffs.

      7.4       Within twenty (20) days of the Effective Date, Heartland shall pay the attorneys' fees, costs, and expenses, and incentive awards to Representative Consumer Plaintiffs and Named Plaintiffs, as set forth above in ¶¶ 7.2 and 7.3, to an account established by Co-Lead Settlement Class Counsel.  Co-Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses to Representative Consumer Plaintiffs and Named Plaintiffs consistent with ¶¶ 7.2 and 7.3.

      7.5       The amount(s) of any award of attorneys' fees, costs, and expenses, and incentive awards to Representative Consumer Plaintiffs and Named Plaintiffs, is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  No order of the Court or modification or reversal or appeal of any order of the Court concerning the amount(s) of any attorneys' fees, costs, or expenses, and incentive awards to Representative Consumer Plaintiffs and Named Plaintiffs awarded by the Court to Co-Lead Settlement Class Counsel shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.     Administration of Claims**

8.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.2.  Co-Lead Settlement Class Counsel and Heartland shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate.  The Claims Administrator's determination of the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.2(d).

8.2     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

8.3     No Person shall have any claim against the Claims Administrator, Heartland, or Co-Lead Settlement Class Counsel based on distributions of benefits made substantially in accordance with the Settlement Agreement and the settlement contained herein, or further order(s) of the Court.

**9.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1, hereof;

(b)     Heartland has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 9.3 hereof;

(c)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

(d)     the Judgment has become Final, as defined in ¶ 1.8, hereof.

9.2     If all of the conditions specified in ¶ 9.1 hereof are not satisfied, then the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 hereof, unless Co-Lead Settlement Class Counsel and counsel for Heartland mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within seven (7) days after the deadline established by the Court for Persons to request exclusion from the Settlement Class, Co-Lead Settlement Class Counsel shall furnish to counsel for Heartland a complete list of all timely and valid requests for exclusion (the "Opt-Out List").  Heartland, in its sole discretion, shall have the option to terminate this Settlement Agreement if the aggregate number of Persons who submit valid and timely requests for exclusion from the Settlement Class exceeds 2,500 Persons eligible to be Settlement Class Members.

9.4     In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation, and shall jointly request that all scheduled litigation deadlines shall be reasonably extended by the Court so as to avoid prejudice to any Settling Party or litigant, which extension shall be subject to the decision of the Court, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any

statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, and expenses awarded to Co-Lead Settlement Class Counsel shall constitute grounds for cancellation or termination of the Settlement Agreement.

### 10.    Miscellaneous Provisions

10.1    The Settling Parties:  (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and any applicable requirements under the Class Action Fairness Act of 2005, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.3    Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons, in any civil, criminal, or administrative

proceeding in any court, administrative agency, or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    Representative Consumer Plaintiffs shall be entitled to reasonable confirmatory discovery from Heartland to be conducted by Co-Lead Settlement Class Counsel.  The period for confirmatory discovery shall begin no sooner than, and completed within ninety (90) days after, the date of preliminary approval of the settlement.  Heartland shall cooperate in good faith to make such confirmatory discovery possible.  At the conclusion of confirmatory discovery, Co-Lead Settlement Class Counsel shall, based upon all facts known to them, determine in good faith whether in their opinion the settlement is fair, reasonable and adequate.  If Co-Lead Settlement Class Counsel determine that the settlement is not in their opinion fair, reasonable and adequate, Co-Lead Settlement Class Counsel shall terminate the Settlement and give notice to Heartland of such termination within ten (10) days after confirmatory discovery concludes.  In such case, the settlement shall be null and void, and the parties shall return to their original positions.  Heartland may defer incurring costs for notice under ¶ 3.2, and/or providing such notice under ¶ 3.2, until the period for Co-Lead Settlement Class Counsel to terminate the settlement pursuant to this paragraph has expired without Co-Lead Settlement Class Counsel taking such action.

10.5    All documents and materials provided by Heartland in confirmatory discovery shall be treated as confidential and returned to Heartland within sixty (60) days of the Effective Date.

10.6    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.7     This Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties, or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such document.  Except as otherwise provided herein, each party shall bear its own costs.

10.8     Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized by the Representative Consumer Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate.

10.9     Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.10     The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.11     The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.12     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.13     This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Texas, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and

governed by, the internal, substantive laws of the State of Texas without giving effect to that State's choice of law principles.

10.14     As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.15     All dollar amounts are in United States dollars.

10.16     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Counsel for Heartland Payment Systems, Inc.*

_____
Harvey J. Wolkoff
Mark P. Szpak
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
Telephone: (617) 951-7000
hwolkoff@ropesgray.com
mszpak@ropesgray.com

*Co-Lead Settlement Class Counsel*

_____
Ben Barnow
Barnow and Associates, P.C.
1 North LaSalle, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
b.barnow@barnowlaw.com


_____
Lance A. Harke
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, FL 33130
Telephone: (305) 536-8220
lharke@harkeclasby.com


_____
Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone:  (202) 337-8000
bfinkelstein@finkelsteinthompson.com

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Counsel for Heartland Payment Systems, Inc.*

*Co-Lead Settlement Class Counsel*

_____
Harvey J. Wolkoff
Mark P. Szpak
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
Telephone: (617) 951-7000
hwolkoff@ropesgray.com
mszpak@ropesgray.com

_____
Ben Barnow
Barnow and Associates, P.C.
1 North LaSalle, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
b.barnow@barnowlaw.com

_____
Lance A. Harke
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, FL 33130
Telephone: (305) 536-8220
lharke@harkeclasby.com

_____
Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8000
bfinkelstein@finkelsteinthompson.com