## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re: Heartland Payment | § | |
| Systems, Inc. Data | § | |
| Security Breach Litigation[1] | § | |
| _____ | § | Civil Action No. 4:09-MD-2046 |
| | § | |
| This filing relates to: | § | |
| | § | |
| CONSUMER TRACK ACTIONS | § | |

**Representative Consumer Plaintiffs' Memorandum of Law
in Support of Certification of a Settlement Class, Preliminary Approval of
Settlement, Publication of Notice, and Scheduling of a Final Fairness Hearing**

---

[1] Heartland contends that the term "Customer" should be removed from the caption of these proceedings, as the data at issue is not data of Defendant's customers; Representative Consumer Plaintiffs do not oppose this request.

## Table of Contents

I.     The Litigation………………………………………………………………1

II.    The Settlement……………………………………………………………3

III.   Preliminary Approval of the Settlement is Appropriate………………………5

IV.    The Requirements for Certification of a Settlement Class Are
       Satisfied ………………………………………………………………………..7

       A.  The Settlement Class Meets All the Requirements
           for Class Certification Pursuant to Rule 23(a) of the Federal
           Rules of Civil Procedure………………………………………………..9

           1. The Class is Sufficiently Numerous Because Joinder of All
              Members of the Class is Impracticable…………………………………...10

           2. There are Questions of Law and Fact Common to the Settlement Class………11

           3. Representative Consumer Plaintiffs' Claims are Typical of
              Those of the Proposed Settlement Class…………………………………12

           4. Rule 23's Adequacy Requirement is Satisfied…………………………...13

       B.  The Proposed Settlement Class Meets the Requirements
           of Rule 23(b)(3) ………………………………………………………..14

V.     Notice………………………………………………………………………18

 A.    Contents of the Notice………………………………………………...…19

           1.  Opting Out………………………………………………………19

           2.  Objections………………………………………………………20

 B.    Scope of the Notice………………………………………………………...21

VI.    Preliminary Approval of the Settlement is Appropriate………………………22

Conclusion………………………………………………………………………24

i

## Table of Authorities

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) …………………………………………………...………*passim*

*Bennett v. Behring Corp.*,
96 F.R.D. 343 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) …………………………..18

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ……………………………………………………………10

*Davis v. Southern Bell Tel & Tel. Co.*,
No. 89-2839, 1993 WL 593999, at *1 (S.D. Fla. Dec. 23, 1993) ………………………...8, 13, 16

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) ……………………………………………………………13

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981) …………………………………………………………...15

*Garner v. Healy*,
184. F.R.D. 598 (N.D. Ill. 1999) …………………………………………………………8

*Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp.*,
57 F.R.D. 555 (N.D. Ill. 1972) ………………………………………………………13, 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) …………………………………………………………..12

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) …………………………………………………………….12

*In re AmeriFirst Sec. Litig.*,
139 F.R.D. 423 (S.D. Fla. 1991) ………………………………………………………..10

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) …………………………………………………………….22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) …………………………………………………………….8

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999) …………………………………………………………9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
202 F.R.D. 12 (D.D.C. 2001) …………………………………………………………....17

*In re Lupron Mktg. and Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) …………………………………………………...…11, 15

*In re Plastic Cutlery Antitrust Litig.*,
No. 96-CV-728, 1998 WL 135703, at *1 (E.D. Pa. Mar. 20, 1998) ……………………………17

*In re Prudential Sec. Ltd. P'ship Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) …………………………………………………………....8

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) …………………………………………………………14

*In re Shell Oil Refinery*,
155 F.R.D. 552 (E.D. La. 1993) …………………………………………...…5, 6, 22

*In re Universal Access Inc.*,
209 F.R.D. 379 (E.D. Tex. 2002) …………………………………………………...7

*In re Warfarin Sodium*,
212 F.R.D. 231 (D. Del. 2002) …………………………………………………………16

*Joiner v. E&H Plastics Co.*,
No. 92 C 1635, 1993 WL 565994, at *1 (N.D. Ill. Oct. 1, 1993) ………………………………13

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) …………………………………………………………7

*Klay v. Humana HealthCare, Inc.*,
382 F.3d 1241 (11th Cir. 2004) …………………………………………………………..8

*Kreuzfeld A.G. v. Carnehammar*,
138 F.R.D. 594 (S.D. Fla. 1991) …………………………………………………………....11

*McCastle v. Rollins Envtl. Servs. of Louisiana, Inc.*,
456 So. 2d 612 (La. 1984) …………………………………………………………..7, 8

*McNamara v. Bre-X Minerals, Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002) …………………………………………...…5, 6, 9, 22

iii

*Medine v. Washington Mut., F.A.*,
185 F.R.D. 366 (S.D. Fla. 1998) …………………………………………………………………7

*Miller v. Mackey Int'l, Inc.*,
452 F. 2d 424 (5th Cir. 1971) …………………………………………………………………...10

*Peters v. National R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) ………………………………………………………………18

*Sargent v. Genesco, Inc.*,
75 F.R.D. 79 (M.D. Fla. 1977) ………………………………………………………………15

*Singer v. AT&T Corp.*,
185 F.R.D. 681 (S.D. Fla. 1998) …………………………………………………………12, 13

*Twigg v. Sears, Roebuck & Co.*,
153 F.3d 1222 (11th Cir. 1998) ………………………………………………………………...18

*Tylka v. Gerber Prods. Co.*,
178 F.R.D. 493 (N.D. Ill. 1998) ………………………………………………………………...16

*Walco Invest., Inc. v. Thenen*,
168 F.R.D. 315 (S.D. Fla. 1996) ………………………………………………………………10

*Williams Foods, Inc. v. Eastman Chem. Co.*,
2001-2 Trade Cases (CCH) ¶ 73,414, 2001 WL 1298887 (D. Kan. Aug. 8, 2001) ……………22

*Zeffiro v. First Pennsylvania Banking & Trust Co.*,
96 F.R.D. 567 (E.D. Pa. 1983) ………………………………………………………………13

*Zeidman v. Jay Ray McDermott & Co.*,
651 F.2d 1030 (5th Cir. 1981)………………………………………………………………10, 11

## Statutes

28 U.S.C. § 1715…………………………………………………………………………………...19

## Rules

Fed. R. Civ. P. 23……………………………………………………………………………...*passim*

iv

**Treatises and Secondary Authorities**

Manual for Complex Litigation………………………………….………………*passim*

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*…………………...…..*passim*

Plaintiffs Julie Barrett, Mark Hilliard, Derek Hoven, Talal Kaissi, Loretta A. Sansom, Scott Swenka, and Phillip Brown ("Representative Consumer Plaintiffs"), individually and on behalf of the putative Settlement Class, by and through Ben Barnow, Barnow and Associates, P.C., Lance A. Harke, Harke & Clasby, LLP, and Burton H. Finkelstein, Finkelstein Thompson LLP (Interim Co-Lead Counsel for the Consumer Track and proposed "Co-Lead Settlement Class Counsel"), hereby submit this Memorandum of Law in Support of their Motion for Certification of a Settlement Class, Preliminary Approval of Settlement, Publication of Notice, and Scheduling of a Final Fairness Hearing.[2]

## I.        The Litigation.

This multidistrict litigation stems from a January 20, 2009, press release issued by Heartland stating that its processing system had incurred an unauthorized intrusion sometime in 2008 (the "Heartland Intrusion"), and that names, credit/debit card numbers, expiration dates, and other information on certain payment cards processed through Heartland ("Personal Financial Information") were placed at risk of being accessed as a result of the unauthorized intrusion. According to Heartland, its internal investigation revealed that the hacker(s) had hidden malicious software in its payment processing system that allowed them to gain access to this consumer data.

Numerous class action complaints were filed related to the Heartland Intrusion on behalf of consumers across the nation whose Personal Financial Information was alleged to have been

---

[2] All terms, as used herein, shall have the same meaning as those defined in the Settlement Agreement. [D.E. #57]

negligently, willfully, and/or recklessly allowed to be stolen from Heartland.[3]  The lawsuits collectively alleged, *inter alia*, that Heartland's failure to adequately protect consumers' Personal Financial Information violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA"), was negligent, constituted a breach of express and implied contract, and violated various states' data breach notification statutes and consumer fraud and deceptive and unfair trade practices acts.  The lawsuits sought statutory damages, compensatory damages, and injunctive relief.

On August 17, 2009, several individuals (the "Hackers") were indicted for hacking into the computer systems of various corporations, including Heartland. According to the Indictment, beginning on or about December 26, 2007, Heartland was the victim of an attack by the Hackers on its corporate computer network that resulted in malware being hidden in its payment processing system, allegedly resulting in the theft and/or exposure of approximately 130 million credit and debit card numbers and corresponding personal information.

Pursuant to the order of the Judicial Panel on Multidistrict Litigation ("JPML"), all related actions were transferred to the United States District Court for the Southern District of Texas ("the Court").  The actions were divided into a "Consumer Track," consisting of actions asserting

---

[3] *Sansom, et al. v. Heartland Payment Systems, Inc*., No. 3:09cv335 (D.N.J.); *Brown, et al. v. Heartland Payment Systems, Inc*., No. 2:09cv86 (M.D. Ala.); *Swenka v. Heartland Payment Systems, Inc*., No. 2:09cv179 (D. Ariz.); *Brown, et al. v. Heartland Payment Systems, Inc*. No. 4:09cv384 (E.D. Ark.); *Hilliard v. Heartland Payment Systems, Inc*., No. 1:09cv219 (E.D. Cal.); *Mata v. Heartland Payment Systems, Inc*., No. 3:09cv376 (S.D. Cal.); *Read v. Heartland Payment Systems, Inc*., No. 3:09cv35 (N.D. Fla.); *Balloveras v. Heartland Payment Systems, Inc*., No. 1:09cv2032 (S.D. Fla.); *Leavell v. Heartland Payment Systems, Inc*., No. 3:09cv270 (S.D. Ill.); *Barrett, et al. v. Heartland Payment Systems, Inc*., No. 2:09cv2053 (D. Kan.); *McLaughlin v. Heartland Payment Systems, Inc*., No. 6:09cv3069 (W.D. Mo.); *Merino v. Heartland Payment Systems, Inc*., No. 3:09cv439 (D.N.J.); *Kaissi v. Heartland Payment Systems, Inc*., No. 3:09cv540 (D.N.J.); *Rose v. Heartland Payment Systems, Inc*., No. 3:09cv917 (D.N.J.); *McGinty, et al. v. Heartland Payment Systems, Inc*., No. 1:09cv244 (N.D. Ohio); *Watson v. Heartland Payment Systems, Inc*., No. 4:09cv325 (S.D. Tex.); *Anderson, et al. v. Heartland Payment Systems, Inc*., No. 2:09cv113 (E.D. Wis.).

2

putative class claims on behalf of consumers, and a "Financial Institution Track," consisting of actions asserting putative class claims on behalf of financial institutions.[4]

## II.    The Settlement.

After an extended period of arms-length settlement negotiations conducted between the parties, Representative Consumer Plaintiffs have reached a proposed settlement with Heartland. The Settlement Agreement [D.E. #57] is intended to resolve all consumer claims arising from the Heartland Intrusion and, in short, provides for reimbursement of certain losses allegedly suffered by Settlement Class Members stemming from the Heartland Intrusion.  Heartland has denied, and continues to deny, each and all of the claims and contentions alleged against it in the Litigation.  The Settling Parties agree, for purposes of this settlement of the consumer claims only, to the certification of the proposed Settlement Class.

Co-Lead Settlement Class Counsel and counsel for Heartland have engaged in vigorous advocacy and extensive arms-length settlement negotiations.  The Settling Parties have entered into the present Settlement Agreement, which provides, *inter alia*, for:

(1) An initial Actual Damages Fund of $1,000,000 for reimbursement of a Loss or Losses incurred by Settlement Class Members (with the interest accruing thereon inuring to the benefit of Settlement Class Members) that more likely than not to have stemmed from the Heartland Intrusion, which, depending on the amount of Valid Claims submitted by Settlement Class Members, may be funded by Heartland with an additional $1,400,000, for a total of $2,400,000 available to Settlement Class Members for Reimbursement Claims [Settlement Agreement at ¶ 2.1];

(2) In the event the initial $1,000,000 of the Actual Damages Fund is not entirely depleted by the payment of Valid Claims, the unpaid balance of the Initial Funding and any interest accrued thereon will be transferred to a non-profit organization(s) dedicated to the protection of consumers' privacy rights, with emphasis on advancing the implementation of end-to-end encryption of payment card authorization transactions or similar security enhancements, to be designated by Heartland, subject

---

[4] The settlement at issue here, however, only involves the Consumer Track, and neither implicates nor includes the Financial Institution Track.

to approval by Co-Lead Settlement Class Counsel, such approval not to be unreasonably withheld [Settlement Agreement at ¶ 2.1(b)];

(3) Valid Claims for a Loss or Losses incurred by Settlement Class Members include:  (i) reasonable, unreimbursed, out-of-pocket expenses (specifically, telephone or postage costs, other third-party charges resulting from card cancellations or replacements, unauthorized and unreimbursed account charges, or Identity-Theft-Related Charges[5]) actually incurred by the Settlement Class Member; and (ii) whether or not the Settlement Class Member has incurred any out-of-pocket expenses, a reasonable amount for time (calculated at $10 per hour up to five (5) hours) actually expended by such Settlement Class Member to address such a card cancellation, card replacement, unauthorized account charge, or Identity-Theft-Related Charge [Settlement Agreement at ¶ 2.2(b)];

(4) Valid Claims shall be limited to $175 per Settlement Class Member and two Valid Claims per household, but in the event that the Losses in a Settlement Class Member's Valid Claim include Identity-Theft-Related Charges, said Settlement Class Member shall be eligible to make a claim for up to $10,000 in such Identity-Theft Related Charges [Settlement Agreement at ¶ 2.2(b)];

(5) For any Settlement Class Member whose Reimbursement Claim is denied, independent review will be made available through a dispute resolution firm, and Heartland shall bear the costs of the dispute resolution process, separate and apart from the Actual Damages Fund, up to a total of $200,000; where the disputed Losses claimed by the Settlement Class Member include Identity-Theft-Related charges, and to the extent such Losses are upheld by the dispute resolution firm, Heartland shall reimburse the Settlement Class Member for the reasonable attorneys' fees and costs (not including expert fees) incurred by the Settlement Class Member in connection with such dispute resolution, not to exceed an amount equal to 25 percent of the amount of the Identity-Theft-Related Charges [Settlement Agreement at ¶ 2.2(d)];

(6) Review of the actions taken or planned to be taken by Heartland since January 20, 2009, to enhance the security of its computer system by an independent expert retained by Representative Consumer Plaintiffs, and accepted by that expert and Co-Lead Settlement Class Counsel as a prudent and good faith attempt by Heartland to minimize the likelihood of intrusion in the future [Settlement Agreement at ¶ 2.3];

---

[5] "For purposes of the definition of Losses, an 'Identity-Theft-Related Charge' shall mean a charge, other than a charge to the Eligible Payment Card Account of the Settlement Class Member, incurred as a result of someone's assuming the Settlement Class Member's identity and taking out and using credit or otherwise obtaining monies and other things of value fraudulently in the name of the Settlement Class Member."  Settlement Agreement at ¶ 2.2(b).

(7) All costs associated with notice to the Settlement Class, to be paid by Heartland, separate and apart from the Actual Damages Fund, up to an amount of $1,500,000, and, additionally, Costs of Claims Administration [Settlement Agreement at ¶ 2.4]; and

(8) Payment by Heartland of attorneys' fees in the amount of $725,000, and up to $35,000 for reasonable costs and expenses, and Representative Consumer Plaintiff and Named Plaintiff incentive awards in the amount of $200 and $100, respectively, separate and apart from the Actual Damages Fund [Settlement Agreement at ¶ 7.2, 7.3].

All Plaintiffs, including the seven (7) Representative Consumer Plaintiffs, in each of the seventeen (17) pending Consumer Track cases support the settlement.  *See* Notice of Filing of Join-in Forms [D.E. #74].  In light of the challenge and expense of continued litigation, Representative Consumer Plaintiffs and their counsel believe that the proposed settlement is an excellent result for the Settlement Class.

Representative Consumer Plaintiffs submit that the settlement is not only within the range of fair, adequate and reasonable under the relevant facts, but is in fact fair, adequate and reasonable, and should be preliminarily approved by the Court concurrent with certification of the requested Settlement Class.

## III.    Preliminary Approval of the Settlement is Appropriate.

"Approval of a class action settlement involves a two-step process.  First, the Court makes a preliminary fairness evaluation of the proposed terms of the settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a final fairness hearing, at which arguments and evidence may be presented in support of and in opposition of the settlement."  *McNamara v. Bre-X Minerals, Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see also In re Shell Oil Refinery*, 155

5

F.R.D. 552, 555 (E.D. La. 1993) (same).  These procedures are likewise discussed in the *Manual for Complex Litigation*, § 21.632 (4th ed. 2009):

> First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. . . .  The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) [*i.e.*, numerosity, commonality, typicality, and adequacy of representation] and at least one of the subsections of Rule 23(b). . . .   The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing.

Further, Rule 23(e) requires judicial approval of class action settlements.

The Settling Parties hereby request that the Court grant preliminary approval of the settlement, such that notice may be made to Settlement Class Members to afford them the opportunity to opt-out of or object to the settlement.  Fed. R. Civ. P. 23(e)(1), (5).  At the final approval hearing, the Court will be asked to make a determination as to whether the settlement is "fair, reasonable, and adequate" under all the circumstances.  Fed. R. Civ. P. 23(e)(2).  The Settlement Agreement has already been filed, in accordance with Fed. R. Civ. P. 23(e)(3).

As set forth below, a court should grant preliminary approval if the proposed settlement falls within the range of possible approval and has no obvious deficiencies, warranting notice to the Settlement Class, so that Settlement Class Members have an opportunity to evaluate and, where appropriate, comment on the proposed settlement.  *See McNamara v. Bre-X, supra; In re Shell Oil Refinery, supra*.  As illustrated below, the proposed settlement readily meets this standard. Therefore, Representative Consumer Plaintiffs and Co-Lead Settlement Class Counsel respectfully move the Court for entry of an order:

(1) preliminarily approving the settlement set forth in the Settlement Agreement;

(2) certifying the Settlement Class;

6

(3)  appointing Julie Barrett, Mark Hilliard, Derek Hoven, Talal Kaissi, Loretta A. Sansom, Scott Swenka, and Phillip Brown as Class Representatives;

(4)  appointing Ben Barnow, Barnow and Associates, P.C., Lance A. Harke, Harke & Clasby, LLP, and Burton H. Finkelstein, Finkelstein Thompson LLP, as Co-Lead Settlement Class Counsel;

(5)  appointing Hilsoft Notifications, of Souderton, Pennsylvania, as the Notice Specialist;

(6)  approving the proposed Notice Plan substantially in the form and in the manner set forth therein, and authorizing dissemination of the notice;

(7)  appointing a claims administrator selected by Heartland and approved by Co-Lead Settlement Class Counsel as Claims Administrator; and

(8)  setting a date for the Final Fairness Hearing to consider entry of a final order approving the Settlement Agreement and the request for attorneys' fees, costs, and expenses.

## IV.    The Requirements for Certification of a Settlement Class Are Satisfied.

Federal courts have long held that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way, such as those alleged in this case.  *See In re Universal Access Inc.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) (certifying securities litigation where "Defendants engaged in a uniform series of acts and/or omissions directed in a uniform manner to all putative class members."); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 722 (11th Cir. 1987) (class action certified for securities and common law fraud claims); *Medine v. Washington Mut., F.A.*, 185 F.R.D. 366, 371 (S.D. Fla. 1998) (class action certified for securities and common law fraud, breach of fiduciary duty, unfair and deceptive trade act claims); *see also McCastle v. Rollins Envtl. Servs. of Louisiana, Inc.*, 456 So. 2d 612, 616–17 (La. 1984) ("When a 'common character' of rights exists, a class action is superior to other available adjudicatory methods for the purposes of promoting the basic aims and goals of a procedural device: (1) effectuating

7

substantive law; (2) judicial efficiency; and (3) individual fairness.").  Moreover, consumer

actions in particular can be especially well-suited for class action treatment.  *See, e.g., Davis v.*

*Southern Bell Tel & Tel. Co.*, No. 89-2839, 1993 WL 593999, at *1 (S.D. Fla. Dec. 23, 1993)

(certifying consumer class action based on omissions and misrepresentations regarding inside

telephone wiring maintenance and repair services); *Garner v. Healy*, 184. F.R.D. 598 (N.D. Ill.

1999) (granting class certification of consumer fraud action relating to a product sold/advertised

as an automobile "wax"); *Klay v. Humana HealthCare, Inc.*, 382 F.3d 1241, 1255 (11th Cir.

2004) (certifying nationwide class suing under RICO statute given common character of alleged

conspiracy).

 "The settlement class device has been recognized throughout the country as the best, most

practical way to effectuate settlements involving large numbers of claims," where the claims are

small. *In re Prudential Sec. Ltd. P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995); s*ee also In*

*re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir.

1995) (holding that courts should favor the use of devices, including settlement classes, that

foster negotiated conclusions to class actions).  In fact, a settlement class in complex litigation

"actually enhances absent class members' opt-out rights because the right to exclusion is

provided simultaneously with the opportunity to accept or reject the terms of a proposed

settlement." *In re Prudential*, 163 F.R.D. at 205.

 Lastly, where, as here, a court is deciding on the certification question in the context of a

proposed settlement class, questions regarding the manageability of the case for trial purposes do

not have to be considered.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997)

("Confronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."); *MacNamara v. Bre-X*, 214 F.R.D. at 427 (same, citing *Amchem*); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 418 (S.D. Tex. 1999) (same, citing *Amchem*).  The remaining elements under Rule 23, however, continue to apply in settlement-only certification situations.  *Amchem*, 521 U.S. at 619.  As demonstrated below, a review of Rule 23's prerequisites to class certification and relevant case law illustrate that this case readily satisfies Rule 23, serves the policies that support it, and should be certified for settlement purposes.

Here, Representative Consumer Plaintiffs seek certification of the following Settlement Class:

> [A]ll Persons in the United States who had or have a payment card that was used in the United States between and including December 26, 2007 and December 31, 2008 (the "Settlement Class Period"), and who allege or may allege that they have suffered any of the Losses defined herein.  Excluded from the definition of Settlement Class are Heartland and its officers and directors, and those Persons who timely and validly request exclusion from the Settlement Class.

Settlement Agreement at ¶ 1.17.

## A. The Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.

In order to proceed with a class action settlement, it is necessary for a court to certify the class for purposes of settlement.  Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11:22, 22:15 (2009).  Federal Rule of Civil Procedure 23(a) has four prerequisites to class certification:

1. The class must be so numerous that joinder of all members is impracticable;

2. There must be questions of law or fact common to the class;

9

3.  The claims of the representative parties must be typical of the claims of the class; and

4.  The representative parties must fairly and adequately protect the interests of the class.

Courts commonly refer to these prerequisites as:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *See Walco Invest., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  In addition to each of Rule 23(a)'s prerequisites, Rule 23 also requires that one of the provisions of its subsection (b) be satisfied.  Representative Consumer Plaintiffs propose certification of the Settlement Class pursuant to Rule 23(b)(3).

As an initial matter, resolution of Representative Consumer Plaintiffs' current motion is limited to ascertaining whether the prerequisites of Rule 23 are satisfied.  *See In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991).  Accordingly, the question for the Court is solely whether Representative Consumer Plaintiffs have established that the requirements of Rule 23 are met in this litigation, not whether Representative Consumer Plaintiffs have stated a cause of action, and certainly not whether Representative Consumer Plaintiffs could ultimately prevail on the merits.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986); *Miller v. Mackey Int'l, Inc.*, 452 F. 2d 424, 427 (5th Cir. 1971).

In this case, Representative Consumer Plaintiffs' proposed class satisfies all the criteria for certification pursuant to Rule 23, and thus, certification for the purpose of settlement.

### 1.   *The Class is Sufficiently Numerous Because Joinder of All Members of the Class is Impracticable.*

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.  To demonstrate numerosity, "plaintiff[s] need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members."  *Zeidman v. Jay*

10

*Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).  Here, the Personal Financial

Information of approximately 130 million individuals was allegedly associated with the

Heartland Intrusion and, thus, the Settlement Class is clearly so numerous that joinder of all

members is impractical.

### 2.   *There are Questions of Law and Fact Common to the Settlement Class.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The

commonality prerequisite, however, does not require that all factual and legal questions be

common to all class members.  "The threshold of 'commonality,' is not high." *In re Lupron*

*Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).  Rather, the proper inquiry

is "whether there exists at least *one* issue affecting all or a significant number of proposed class

members."  *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991).

Representative Consumer Plaintiffs submit that the questions of law and fact common to the

Settlement Class include, *inter alia*:

a.   whether Heartland violated FCRA when it allowed third parties to access Representative Consumer Plaintiffs' and Settlement Class Members' Personal Financial Information;

b.   whether Heartland took reasonable measures to safeguard Representative Consumer Plaintiffs' and Settlement Class Members' Personal Financial Information;

c.   whether Heartland owed a duty to Representative Consumer Plaintiffs and Settlement Class Members to protect their Personal Financial Information;

d.   whether Heartland breached its duty to exercise reasonable care in allegedly storing Representative Consumer Plaintiffs' and Settlement Class Members' Personal Financial Information when storing that information on its computer network and in its physical possession;

e.   whether Heartland breached a duty by allegedly failing to keep Representative Consumer Plaintiffs' and Settlement Class Members' Personal Financial Information secure;

11

    f.   whether Heartland failed to properly give notice pursuant to the various states' data breach notification statutes;

    g.   whether Heartland's conduct constitutes a violation of various states' various consumer fraud and unfair and deceptive trade practices statutes; and

    h.   whether Representative Consumer Plaintiffs and Settlement Class Members have sustained damages, and if so, the proper measure of those damages.

The same legal and factual questions exist for each member of the Settlement Class, and the resolution of these issues will resolve them for all Settlement Class Members.  Therefore, the commonality prerequisite is satisfied.

### 3.  *Representative Consumer Plaintiffs' Claims are Typical of Those of the Proposed Settlement Class.*

Rule 23(a)(3) requires that the class representatives' claims or defenses be typical of the claims or defenses of the proposed class.  This typicality requirement is satisfied where "there is a common nucleus of facts and potential legal remedies among all class members."  *Manual for Complex Litigation*, § 21.132, p. 251 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).  The class representative and class members need not have identical factual and legal claims.  Rather, the typicality requirement is satisfied if the class representatives show that their interests are aligned with the class members' interests and their claims arise from the same events and are premised on the same legal theories as the class members' claims.  *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory."); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998) ("Typicality turns solely on whether the plaintiff and the class have an interest in prevailing on similar claims.  The

12

typicality requirement does not demand factual homogeneity.  Therefore, the existence of factual differences does not defeat typicality."); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members").[6]

The claims of Representative Consumer Plaintiffs are typical of the claims of the members of the Settlement Class, as they all allegedly had their Personal Financial Information compromised, and their claims arise from the same course of uniform conduct stemming from the Heartland Intrusion.  Because Representative Consumer Plaintiffs' claims "are based on injuries caused by conduct affecting the class as a whole," their claims easily satisfy the typicality requirement.  *Davis v. Southern Bell Tel. & Tel. Co.*, 1993 WL 593999, at *5 (S.D. Fla. 1993); *see also Zeffiro v. First Pennsylvania*, 96 F.R.D. 567, 569 (E.D. Pa. 1983) ("The relative simplicity of the typicality requirement may be summed up as follows; [sic] a plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.").

### 4. *Rule 23's Adequacy Requirement is Satisfied.*

Rule 23(a)(4)'s adequacy prerequisite has two elements: (1) class counsel must possess the competence to undertake the particular litigation, and (2) class representatives must not have interests antagonistic to the class.  *See, e.g.*, *Joiner v. E&H Plastics Co.*, No. 92 C 1635, 1993 WL 565994, at *4 (N.D. Ill. Oct. 1, 1993).  In class actions generally, adequacy of representation can be presumed.  *See Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D.

---

[6] Just as the differences in the factual nature of the claims do not affect typicality, neither do differences in the amount of damages.  *See Zaffiro v. First Pennsylvania Banking & Trust Co.*, 96 F.R.D. 567 (E.D. Pa. 1983) (where the representative plaintiff and the other class members share an interest in prevailing on similar legal claims, differences in the amount of damages claimed or availability of certain defenses against class representative does not render claims atypical).

555, 565-66 (N.D. Ill. 1972) ("Absent any conflict between the interests of the representative and other [class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the Class may be assumed."). Both components of the adequacy of representation prerequisite are met here.

The interests of Representative Consumer Plaintiffs here do not conflict with the interests of the Settlement Class, as they all seek relief from the theft and/or exposure of their Personal Financial Information. Further, as demonstrated by the efforts of Co-Lead Settlement Class Counsel to date, and the other Plaintiffs' counsel supporting this settlement, they have competently and vigorously protected the interests of Representative Consumer Plaintiffs and Settlement Class Members, and will continue to do so. Representative Consumer Plaintiffs' attorneys, and proposed Co-Lead Settlement Class Counsel in particular, are highly experienced in class action litigation, especially in the area of data breaches, and possess the requisite skill, ability and experience to represent the Settlement Class.

**B. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).**

"In addition to the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, the party seeking to obtain class certification must demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005). Rule 23(b)(3) authorizes class actions to proceed where the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory

14

Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron*, 228 F.R.D. at 92 (citing *Amchem*, 521 U.S. at 615). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 91 (*citing Amchem*, 521 U.S. at 623). The Settlement Class satisfies the requirements of Rule 23(b)(3).

Common questions predominate over any individual issues that may exist, including, *inter alia*:  whether Heartland's conduct in the events leading up to and during the Intrusion and concurrent alleged theft and/or exposure of the Personal Financial Information was improper; whether this conduct violated the laws set forth in the various complaints; and whether the conduct caused damage to members of the Settlement Class.  "The standard to be applied in determining whether common questions predominate is . . . whether common or individual questions will be the object of most of the efforts of the litigants and the court." *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 84 (M.D. Fla. 1977).  "Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions *predominate* over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); s*ee generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992).  If each Settlement Class Member were to pursue his or her individual suit against Heartland, *i.e.*, absent settlement, much of the evidence necessary to support the individual claims would be identical in each case.  After resolution of the common

question of Heartland's liability, an assessment of each Settlement Class Member's respective damages is all that would remain.[7]

In consumer class actions, courts have long recognized that where the plaintiffs allege that the defendant engaged in a common course of conduct, individualized inquiries are not required and thus are not legally relevant to the predominance inquiry.  *See Southern Bell Tel & Tel. Co.*, 1993 WL 593999; *Garner v. Healy*, 184. F.R.D. 598 (N.D. Ill. 1999); *see also Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 499 (N.D. Ill. 1998) (finding that common issues predominated in common law fraud case where class members were subjected to "standardized conduct") (citation omitted).

The same result should be reached in this case, given that all Settlement Class Members would offer the same proofs on liability, thus making this case ideal for settlement class certification.  Any individual issues that might arise here would not predominate over the overwhelming number of common legal and factual issues, and Representative Consumer Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).

Additionally, a class action is superior to other available methods, as the amount of damages incurred by each Settlement Class Member is insufficient to justify the costs of pursuing an individual action.  In *Amchem*, the Supreme Court stated that the requirement of superiority in Rule 23(b)(3), like that of predominance, ensures that resolution by class-wide litigation will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other

---

[7] It is well-established that differences in the amount of damages to be awarded each class member do not preclude class certification.  *See, e.g., In re Warfarin Sodium*, 212 F.R.D. 231, 249 (D. Del. 2002) (necessity for individual damage calculations does not defeat predominance or class certification).

undesirable results."  521 U.S. at 615 (citation omitted).  As noted above, courts regularly certify consumer class actions, recognizing that such claims are particularly amenable to class treatment.

Settling this case as a class action will achieve economies for both the litigants and the Court, avoiding possibly hundreds of thousands of individual adjudications that would overwhelm the court system.  Moreover, if certification is denied, these numerous individual lawsuits "would be needlessly duplicative, expensive, and time-consuming, especially in light of the predominance of common questions."  *In re Plastic Cutlery Antitrust Litig.*, No. 96-CV-728, 1998 WL 135703, at *9 (E.D. Pa. Mar. 20, 1998); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 30-31 (D.D.C. 2001) (absent certification, individual lawsuits would unnecessarily waste judicial resources).  Requiring individual Settlement Class Members to file their own lawsuits under the facts and allegations in this case would result in unnecessary duplication, with parties, witnesses and courts being required to repeatedly litigate the same legal and factual issues.  Also, class treatment limits the potential for inconsistent rulings on the key legal issues presented.

Finally, individuals will have little or no interest in controlling the litigation here.  *Cf.* Rule 23(b)(3).  The economic reality of cases such as this, where the alleged individual damage amounts at stake involve a relatively small amount compared to the cost of litigating the claims, is that individuals are precluded from having any discernible interest in controlling the prosecution of separate actions.  *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 21.14 (1992) (individuals only have an interest in prosecuting individual claims that are large enough to justify expending attorneys' fees and litigation costs).  The alternative to a class action is untenable:  no recourse for thousands of persons for whom the economic realities

of pursuing an individual action against Heartland would, for all intents and purposes, foreclose the possibility of seeking relief.

## V.     Notice

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . ." Fed R. Civ .P. 23(e)(1)(B). And, pursuant to Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances."   The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen*, 417 U.S. at 173–74).   Further, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained.").

The proposed Notice Plan has been specifically tailored to meet the standards set forth above.

18

## A.  Contents of the Notice.

The notice will include:  the definition of the Settlement Class and other identifying information; a fair summary of the parties' respective litigation positions; the general terms of the settlement as set forth in the Settlement Agreement; instructions for opting out of or objecting to the settlement; the process and instructions for making a claim; and the date, time, and place of the Final Fairness Hearing.  *See* Attachment A to the Notice Plan; the Notice Plan can be found as Exhibit 2 to the Affidavit of Cameron R. Azari, Esq., On Settlement Notice Plan and Notices ("Azari Aff."), which accompanies this memorandum as Exhibit A.  The date that the Court sets for the Final Fairness Hearing should permit sufficient time for publication of the notice to be implemented, and take into consideration that the Class Action Fairness Act ("CAFA") requires that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C.A. §1715(b)]".[8] 28 U.S.C.A. §1715(d).  Heartland served its original CAFA notice of the proposed settlement on the various federal and state officials on December 23, 2009, and will supplement its original notice consistent with the statute.

### 1.  *Opting Out.*

Any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice ("notice of exclusion") clearly manifesting his or her intent to be excluded from the Settlement Class. Settlement Agreement at ¶ 4.1. The notice of exclusion must be mailed to the Post Office Box designated by the Claims Administrator and

---

[8] The Settling Parties respectfully submit that, should the Court's schedule permit, the Final Fairness hearing be set no earlier than (6) months from the date of preliminary approval, so as to allow for completion of the steps outlined above.

19

must be postmarked at least twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing. *Id.*

### 2. Objections.

Any member of the Settlement Class who wishes to object to the settlement must submit a timely written notice of his or her objection, which must set forth the reasons for the objection, and further state whether the objector intends to appear at the Final Fairness Hearing.[9]  *Id.* at ¶ 5.1.  To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Southern District of Texas twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and also served on counsel for the Settling Parties.  *Id.*  Counsel for Heartland may request that the objector's payment card number and expiration date be provided to the Claims Administrator to verify that the objector is a member of the Settlement Class, with notice to Co-Lead Settlement Class Counsel of such request.

---

[9] The objection also must provide:  (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, including (a) proof that they are a member of the Settlement Class (e.g., a letter from their financial institution indicating that their Personal Financial Information had been compromised in the Heartland Intrusion), including documentation of any Losses they claim to have suffered as a result of the alleged theft of their Personal Financial Information, if any, if they are objecting to any portion of the settlement dealing with reimbursement of Losses and for which they believe they would have an existing claim, or (b) an affidavit setting forth, in as much detail as the objector can reasonably provide, that they received a letter from their financial institution indicating that their Personal Financial Information had been compromised in the Heartland Intrusion, including the approximate date of said receipt; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; and (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation).  Settlement Agreement at ¶ 5.1.

**B.**      **Scope of the Notice.**

The Notice Plan was created with the aim of reaching the greatest number of Settlement

Class Members practicable, and is estimated to reach "81.4% of Adults with a Credit/Debit

Payment Card on average an estimated 2.5 times each."  Affidavit of Cameron R. Azari, Esq.,

On Settlement Notice Plan and Notices ("Azari Aff.") at ¶ 6. The Summary Notice will be

published seven (7) times in various leading daily newspapers and consumer magazines.  Azari

Aff. at ¶ 15–16.  Banner advertisements will be utilized on various online media networks,

including *24/ Real Media*, *Yahoo.com*, and *MSN.com*.  Azari Aff. at ¶ 18.

The Settlement Class will receive additional notice through an informational press release,

which will be issued to approximately 4,490 major press outlets, and through a settlement

website.  Azari Aff. at ¶ 21.  The settlement website:

> will allow Settlement Class Members to obtain additional information and documents
> about the settlement, including the Detailed Notice, Claim Forms, and Settlement
> Agreement, as well as other documents and information deemed necessary.  A translated
> Spanish version of the Notice will be available on the website.

Azari Aff. at ¶ 22.  A toll free telephone number will also be established, which will provide

Settlement Class Members with answers to frequently asked questions, and will include the

option of speaking to a live operator during regular business hours regarding questions about the

settlement and its benefits.  Azari Aff. at ¶ 23.

As the Azari Affidavit states, "[t]he Notice Plan will provide the best notice practicable

under the circumstances of this case, and conforms to all aspects of [Rule] 23 and comports with

the guidance for effect notice articulated in the latest edition of the *Manual for Complex*

*Litigation 4th.*"  Azari Aff. at ¶ 29.

**VI.     Preliminary Approval of the Settlement is Appropriate.**

The standard for preliminary approval of a class settlement is set forth in *In re Shell Oil Refinery*:

> In deciding whether there is good cause to issue notice to the class and to proceed with a fairness hearing, the court must determine that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval."

155 F.R.D. at 555 (citing *Manual for Complex Litigation*, *Second* § 30.44 (1985).  *See e.g.*,

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.24-11.25 (3d ed. 1992); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)); *accord McNamara v. Bre-X*, 214 F.R.D. at 427 n.2 ("Additionally, the purpose of the preliminary approval is to detect any *obvious* defects that will preclude final approval of the settlement, and the purpose of initial certification is so that *notice* may be sent to the proposed class.") (*citing Manual for Complex Litigation*, *Third*, pp. 236-37) (emphasis in original).  Representative Consumer Plaintiffs submit that the proposed settlement plainly meets the requirements for preliminary approval.

Where, as here, the proposed settlement is the result of serious arm's length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, and does not grant preferential treatment to Representative Consumer Plaintiffs or other segments of the Settlement Class, courts generally grant preliminary approval and direct that notice of a formal fairness hearing be given to Settlement Class Members. *See Williams Foods, Inc. v. Eastman Chem. Co.*, 2001-2 Trade Cases (CCH) ¶ 73,414, 2001 WL 1298887 (D. Kan. Aug. 8, 2001); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *Manual*

*for Complex Litigation* at § 30.41 (noting that where the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted").

That there were serious, informed and non-collusive negotiations held in arriving at the proposed settlement is beyond dispute.  The Settling Parties were well-versed in the relative strengths and weaknesses of their cases.  There are also no obvious flaws in the settlement or distribution plan, and no segment of the proposed settlement class is unduly favored over any other.  The settlement provides innovative relief, and its terms examine and reasonably provide for reimbursing Settlement Class Members for any losses they have already suffered, or may suffer in the future, in addition to the relief provided by the enhanced security measures being implemented by Heartland.

Representative Consumer Plaintiffs submit that the total benefits being provided to the Settlement Class are in excess of $4,850,000, which includes the reimbursement of Losses suffered by Settlement Class Members in connection with the Heartland Intrusion, the anticipated costs of notice, the anticipated costs of the dispute resolution process provided for resolving contested Settlement Class Member claims, and the attorneys' fees, costs, and expenses, and incentive awards that will be requested by proposed Co-Lead Settlement Class Counsel, all of which falls within the range of possible recoveries.  This figure includes the $2,400,000 in benefits being made available to those claiming to have been affected by the Heartland Intrusion.  For the above reasons, Representative Consumer Plaintiffs submit that the Court should grant preliminary approval of the settlement.

**Conclusion**

WHEREFORE, based on foregoing, Representative Consumer Plaintiffs respectfully request that the Court enter an Order:[10]

(a) granting class certification of a Settlement Class;

(b) preliminarily finding that the Settlement Agreement is within the range of fair, reasonable, and adequate, and in the best interest of the Settlement Class;

(c) appointing Julie Barrett, Mark Hilliard, Derek Hoven, Talal Kaissi, Loretta A. Sansom, Scott Swenka, and Phillip Brown as Class Representatives;

(d) appointing Ben Barnow, Barnow and Associates, P.C., Lance A. Harke, Harke & Clasby, LLP, and Burton H. Finkelstein, Finkelstein Thompson LLP, as Co-Lead Settlement Class Counsel;

(e) appointing Hilsoft Notifications, of Souderton, Pennsylvania, as the Notice Specialist;

(f) authorizing the Notice of the settlement and preliminary approval of settlement to the Settlement Class in the manner set forth in the Settlement Agreement and in the Notice Plan submitted to the Court;

(g) appointing a claims administrator selected by Heartland and approved by Co-Lead Settlement Class Counsel as Claims Administrator;

(h) setting a date for the Final Fairness Hearing to consider entry of a final order approving the Settlement Agreement and the request for attorneys' fees, costs, and expenses; and

(i) granting such other relief as the Court may deem just and appropriate.

---

[10] A proposed Preliminary Approval Order has been filed concurrently herewith, and contains spaces for the Court to insert a date for a hearing on Representative Consumer Plaintiffs' motion, should the Court deem a hearing necessary.

Dated:  March 16, 2010                    Respectfully submitted,

                                          __/s/___Ben Barnow_____
                                          Ben Barnow
                                          Barnow and Associates, P.C.
                                          1 North LaSalle, Suite 4600
                                          Chicago, IL  60602
                                          Telephone: (312) 621-2000
                                          b.barnow@barnowlaw.com

                                          Lance A. Harke
                                          Harke & Clasby LLP
                                          155 South Miami Ave., Suite 600
                                          Miami, FL 33130
                                          Telephone: (305) 536-8220
                                          lharke@harkeclasby.com

                                          Burton H. Finkelstein
                                          Finkelstein Thompson LLP
                                          1050 30th Street, N.W.
                                          Washington, D.C. 20007
                                          Telephone:  (202) 337-8000
                                          bfinkelstein@finkelsteinthompson.com

                                          *Proposed Co-Lead Settlement Class Counsel and
                                          Attorneys for Representative Consumer Plaintiffs*

                                          Harold B. Gold
                                          Wisener Nunnally Gold, L.L.P.
                                          625 Centerville Rd., Suite 110
                                          Garland, TX 75041
                                          Telephone: (972) 840-9080

                                          *Plaintiffs' Liaison Counsel for the
                                          Consumer Track*

**Certificate of Service**

I, Ben Barnow, hereby certify that I caused copies of Representative Consumer Plaintiffs' Memorandum of Law in Support of Certification of a Settlement Class, Preliminary Approval of Settlement, Publication of Notice, and Scheduling of a Final Fairness Hearing to be served upon counsel of record via ECF on this 16th day of March, 2010.

___/s/  Ben Barnow_____

26